**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                                        **CIVIL NO. 20- cv-13293__**

**vs.**                                  **HONORABLE _____**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE AEROSPACE, AND**
**AGRICULTURAL IMPLEMENT**
**WORKERS OF AMERICA,**

        **Defendant.**
_____/

## ANTI-FRAUD COMPLAINT

THE UNITED STATES OF AMERICA, by and through its attorney, Matthew Schneider, United States Attorney for the Eastern District of Michigan, alleges:

## INTRODUCTION

This action is brought under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, to rid the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (hereinafter "UAW" or the "Union") and the constituent entities of the union (which are referred to hereinafter as including UAW

1

Regions, CAP Councils, other joint council, committee, bargaining council, district council, region, community action program, national department, or any subordinate body of the UAW International Union) of fraud, corruption, and illegality which have harmed the organization and its members and their families.

## JURISDICTION

1. Jurisdiction is based on Section 1345 of Title 18 of the United States Code and Sections 1331, 1345, and 1651 of Title 28 of the United States Code.

## VENUE

2. Venue for this action is predicated upon Section 1391 of Title 28 of the United States Code, in that the defendant herein can be found, has agents present, and/or transacts affairs in the Eastern District of Michigan and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district.

## THE PARTIES

3. Plaintiff United States of America is a sovereign and body politic.

4. Defendant UAW is a labor organization engaged in an industry affecting commerce within the meaning of Sections 142, 152, 402(i), and 402(j) of Title 29, United States Code. The UAW represents hundreds of thousands of non-managerial employees employed by automobile manufacturers and other employers at

numerous locations in Michigan and across the United States. The UAW is headquartered in Detroit, Michigan. All constituent entities are under the jurisdiction of the UAW and the UAW's International Executive Board. The UAW is named as a defendant herein in order to fully effectuate the relief sought by this action.

5. The UAW International Executive Board is the managing body of the UAW. The International Executive Board consists of the President, the Secretary-Treasurer, three Vice Presidents, and eight Regional Directors. The International Executive Board is and has been responsible for, inter alia, enforcing discipline within the UAW, approving and suspending local by-laws, and interpreting the UAW Constitution. The International Executive Board and its officer members have the authority and the obligation, under the UAW Constitution and under federal labor law, to investigate and discipline misconduct and violation of federal law in union affairs.

6. The objective of the UAW and its constituent entities is to organize and represent the interests of workers employed in the automobile manufacturing and other industries and to act as a collective bargaining agent for the benefit of those employees in relation to the regulation of wages, hours, and working conditions. The UAW is responsible for protecting and enforcing the rights of UAW members under collective bargaining agreements.

## FRAUD, CORRUPTION, AND ILLEGALITY

7. For over ten years, certain UAW officials, including certain former members of the International Executive Board, engaged in fraudulent, corrupt, and illegal conduct for their own benefit and to the detriment of the members of the UAW, their families, and the United States. Based on the prior conduct of certain former UAW officials, the circumstances, and past events, the parties want to ensure that similar acts of fraud, corruption, and illegality will not reoccur in the future within the UAW.

## STATEMENT OF CLAIM OF NEED FOR AN
## INJUNCTION TO HALT FRAUD IN THE UAW

8. Plaintiff realleges the allegations set forth in Paragraphs 1 through 7, as if fully set forth herein.

9. Since in or about 2010 and continuing to the recent past, in the Eastern District of Michigan and elsewhere, certain former senior members of the International Executive Board, being employed by and associated with the UAW, together with other individuals, including executives of Fiat Chrysler Automobiles and executives and owners of certain contractors, known and unknown to the plaintiff, unlawfully, knowingly, and willfully combined, conspired, confederated and agreed to commit various fraud offenses against the United States, including the

4

following:

a. Multiple acts indictable under Sections 1341, 1343, 1344, 1346, 1349, and 2 of Title 18, United States Code, including mail fraud, wire fraud, bank fraud, honest services mail and wire fraud, and conspiracy to commit such acts;

b. Multiple acts indictable under Section 501(c) of Title 29, United States Code and Section 2 of Title 18, United States Code, constituting the embezzlement of union funds which also amounts to mail, wire, and bank fraud, in violation of Sections 1341, 1343, and 1344, and 2 of Title 18, United States Code;

c. Multiple acts of receiving prohibited payments from employers and persons acting in the interest of employers indictable under Sections 186(b)(1) and (d) of Title 29, United States Code, and Section 2 of Title 18, United States Code, which also constitutes honest services mail and wire fraud in violation of Sections 1341, 1343, 1346, and 2 of Title 18, United States Code;

d. Multiple acts of making false statements to and filing false reports with the United States Department of Labor and the Internal Revenue Service indictable under Section 371 of Title 18, United States Code, which constitute acts in furtherance of a conspiracy to defraud the United States and impair the lawful functions of those agencies;

e. Multiple acts of money laundering indictable under Section 1956 of Title

18, United States Code, involving financial transactions committed with the intent to conceal and disguise the source of the proceeds of specified unlawful activity constituting mail, wire, and bank fraud offenses in violation of Sections 1341, 1343, 1344, and 2 of Title 18, United States Code;

f. Multiple acts indictable under Section 1001 of Title 18, United States Code, which consist of the making of materially false statements and filing of materially false reports with the United States Department of Labor and the Internal Revenue Service; and

g. Multiple acts indictable under Section 439, of Title 29, United States Code, involving the making of false statements and omissions of fact in union records and filing of LM financial reports required to be filed with the United States Department of Labor which consist of materially false statements and omission offenses, in violation of Sections 1001 and 2 of Title 18, United States Code.

10. All of the conduct set forth above in Paragraph 9 is actionable under Section 1345, of Title 18, United States Code.

## MANNER AND MEANS

## Honest Services Fraud—UAW and UAW-GM Training Center Contracts

11. It was a part of the fraud, corruption, and illegality that certain former members of the International Executive Board, while employed by and associated

with the UAW, unlawfully and knowingly implemented a scheme to defraud by mail and by wire the UAW membership's right to the honest services of the International Executive Board and of UAW officials, by accepting bribes and kickbacks in exchange for awarding contracts from the UAW-GM Center for Human Resources ("CHR"), a joint training center between the UAW and the General Motors Company to certain contractors, in violation of Sections 1341, 1343, 1346, and 2 of Title 18, United States Code.

a. Former senior UAW officials, including Joseph Ashton (UAW Vice President), Michael Grimes (top Assistant to the UAW's GM Department), and Jeffrey Pietrzyk (top Assistant to Ashton and Co-Director of the CHR), engaged in a multi-year conspiracy to defraud UAW members of their right to honest services, by engaging in a series of bribery and kickback schemes with vendors and contractors of the CHR.

b. From at least 2006, and continuing through 2018, former UAW officials, including Ashton, Grimes, and Pietrzyk, demanded and accepted kickbacks totaling over $1.5 million from Vendor A, a contractor to the UAW and the CHR for so-called "trinkets and trash," which included items like backpacks and jackets marked with the UAW trademark. The prohibited payments included cash and checks to third-party entities controlled by the conspirators. The conspirators' demands for

kickbacks were always in connection to Vendor A's business with the UAW and CHR which included in-plant stores controlled by the UAW GM Department, as well as contracts to provide various goods to the CHR. At the direction of Pietrzyk and Ashton, Grimes also demanded from Vendor A approximately $300,000 in kickbacks for Ashton. Grimes facilitated the payment of kickbacks to Ashton in that he accepted the periodic cash payments from Vendor A and gave the money to Pietrzyk. Pietrzyk would then deliver the kickbacks to Ashton.

c. Between 2013 and 2014, Grimes also benefited from the kickbacks Ashton received from Vendor B related to a 2013 contract with the CHR for the purchase of 58,000 watches marked with the UAW logo with the CHR at a cost of over $3.9 million.

d. From at least 2010 through 2016, Ashton demanded and accepted kickbacks totaling approximately $669,000 from Vendor B. Vendor B made the kickbacks to Ashton primarily in cash, however the vendor did write four checks to Ashton totaling $30,000. Ashton shared a portion of the kickbacks with Pietrzyk and Grimes. Ashton's demands for kickbacks were related to Vendor B's $3.9 million watch contract.

e. In exchange for the kickbacks and bribes accepted by these former UAW officials, the UAW officials awarded millions of dollars in UAW and CHR contracts

to Vendors A and B and thereby deprived UAW members of their right to the honest services of these UAW officials as fiduciaries of the UAW under Section 501(a) of Title 29, United States Code. During the course of the conspiracy, the United States mail and interstate wires were used to further the scheme.

f. On September 4, 2019, former senior UAW official Michael Grimes pleaded guilty to conspiracy to commit honest services wire fraud and money laundering, in violation of 18 U.S.C. §§ 1343, 1346, 1349, and 1956 based on his conduct described above.

g. On October 22, 2019, former senior UAW official Jeffrey Pietrzyk pleaded guilty to conspiracy to commit honest services wire fraud and money laundering, in violation of 18 U.S.C. §§ 1343, 1346, 1349, and 1956, based on his conduct described above.

h. On December 4, 2019, former UAW Vice President Joseph Ashton pleaded guilty to conspiracy to commit honest services wire fraud and money laundering, in violation of 18 U.S.C. §§ 1343, 1346, 1349, and 1956 based on his conduct described above.

### Fraud/Embezzlement of UAW Funds by Former Senior UAW Officials

12. It was further a part of the fraud, corruption, and illegality that certain former members of the International Executive Board, while employed by and

9

associated with the UAW, together with former officers and agents of UAW constituent entities, knowingly and willfully did embezzle, steal, and unlawfully abstract and convert to their own use and to the use of others, moneys, funds, securities, property, and other assets of the UAW (including its constituent entities), labor organizations engaged in an industry affecting commerce, as these terms are defined in Section 402(i) and (j) of Title 29, United States Code, by approving and permitting improper expenditures, which expenditures were not in the interest and not for the benefit of the UAW and its membership, resulting in the diminution of UAW assets, and by knowingly refusing and failing to exercise its investigatory and disciplinary authority to redress such corrupt activity within the UAW, in violation of Sections 1341, 1343, 1349, and 2 of Title 18, United States Code, which also constituted violations of Sections 439(a), (b), (c) and 501(c) of Title 29, United States Code. These former UAW officials used the United States mail and interstate wires to commit the scheme.

a. Over the course of at least ten years, certain former senior UAW officials, including members of the International Executive Board, including multiple former UAW Vice Presidents, multiple former UAW regional Directors, and two former UAW Presidents, engaged in a mail and wire fraud scheme to embezzle UAW funds for their own personal benefit. In total, former UAW officials embezzled over $1.5

million in UAW funds by using UAW members' dues money and other funds to make personal purchases with no legitimate union business purpose. For example, former senior UAW officials used UAW funds to purchase over $60,000 worth of cigars and cigar paraphernalia, sets of custom-made golf clubs, months-long stays in villas in Palm Springs, California, liquor, expensive meals, rounds of golf, over $100,000 in golf clothing and equipment, and hundreds of thousands of dollars in cash.

b. These former UAW officials used a "Master Account" billing arrangement with hotels to both divert and conceal the true nature, purpose, and destination of millions of dollars of UAW expenses. The arrangements with the hotels allowed certain former UAW officials to launder UAW funds through the hotels' accounts and use the money for lavish lodging, meals, liquor, cigars, greens fees, golf merchandise, and retail purchases far outside the scope of normal union business. To keep the accounting staff of the union in the dark, the corrupt UAW officials submitted false check requests/vouchers to cause the payments and neglected to maintain and provide records created during the scheme. To keep union members in the dark, the officials made material false statements, including material misrepresentations of the nature of the expenses and the levels of compensation of those involved in the scheme, on public disclosure reports required by the United

States Department of Labor and the Internal Revenue Service.

c. A review of dozens of financial accounts during the investigation details a double expense billing scheme tied to the "Master Account" scheme detailed above. Many of the receipts used in the "Master Account" scheme were later submitted by UAW official Edward Robinson to acquire over $500,000 in cash from a Missouri-based UAW Community Action Program ("CAP") fund. Robinson provided former UAW Regional Directors Jim Wells, Gary Jones, and other UAW officials with cash to cover gambling and other debts, for their personal use, and for the purpose of currying favor with higher-level UAW officials to secure a favorable electoral position within the UAW.

d. To conceal fraudulent financial transactions that would normally fall under the public disclosure requirements of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), contained in Sections 431 through 439 of Title 29, United States Code, the criminal elements within the UAW used wholly owned subsidiaries (like joint labor-management training programs) as hubs of criminal activity. Certain former union officials also knowingly refused and failed to exercise their investigatory and disciplinary authority to redress such corrupt activity within the UAW and its constituent entities contrary to their duties under the UAW Constitution and as union fiduciaries under Section 501(a) of Title 29, United

States Code.

e. As part of the misuse of union funds by former UAW President Dennis Williams, the UAW expended over $1 million for a "cabin" for the use and benefit of Williams. Ostensibly, certain expenditures for the "cabin" were approved by certain members of the International Executive Board, which had also been approved by the membership at a prior UAW convention. However, the true extent, nature, and purpose of these expenditures were concealed from certain members of the International Executive Board, the UAW members, and the United States Department of Labor by Williams' deliberate actions.

f. On February 7, 2020, Vance Pearson, the former Director of UAW Region 5, pleaded guilty to conspiracy to embezzle union funds and to further racketeering activity and conspiracy to defraud the United States, in violation of Sections 371 and 1952 of Title 18, United States Code, and contrary to Section 501(c) of Title 29, United States Code. Besides amounting to a conspiracy to embezzle union funds, Pearson's criminal conduct also constituted mail, wire, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 1349.

g. On March 2, 2020, Edward Robinson, the former President of the UAW Midwest CAP, pleaded guilty to conspiracy to embezzle union funds and conspiracy to defraud the United States. Besides amounting to a conspiracy to embezzle union

funds, Robinson's criminal conduct also constituted mail, wire, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 1349.

h. On June 3, 2020, Gary Jones, the former President of the UAW and former Director of UAW Region 5, pleaded guilty to conspiracy to embezzle union funds and to further racketeering activity, and to conspiracy to defraud the United States. Besides amounting to a conspiracy to embezzle union funds, Jones' criminal conduct also constituted mail, wire, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 1349.

i. On September 30, 2020, Dennis Williams, the former President of the UAW between 2014 and 2018 and the former Secretary-Treasurer from 2010 to 2014, pleaded guilty to conspiracy to embezzle union funds. Besides amounting to a conspiracy to embezzle union funds, Williams' criminal conduct also constituted mail, wire, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 1349.

## Illegal Taft-Hartley Payments and Honest Services Fraud
## Involving the UAW-Fiat Chrysler National Training Center

13. It was further a part of the fraud, corruption, and illegality that certain former members of the International Executive Board, while employed by and associated with the UAW, together with former officers and employees of the UAW and of various constituent entities, unlawfully, willfully, and knowingly did request,

demand, receive, accept and agree to receive and accept payments of money and other things of value, from employer Fiat Chrysler Automobiles United States ("Fiat Chrysler"), and persons acting in the interest of Fiat Chrysler, whose employees were represented and would have been admitted to membership in the UAW and its constituent entities. Such prohibited payments were received by the former union officials from monies contributed by Fiat Chrysler to the UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center ("NTC") in violation of the Labor Management Relations ("Taft-Hartley") Act at Section 186(b)(1) and (d)(1) of Title 29, United States Code. Besides violating the Taft-Hartley Act, this conduct consisted of a scheme to commit honest services mail and wire fraud by the receipt of bribes and kickbacks paid by Fiat Chrysler executives to certain former UAW officials, including multiple former members of the UAW's International Executive Board, in exchange for their agreement to perform official acts favorable to Fiat Chrysler and its executives, in violation of Sections 1341, 1343, 1346, and 2 of Title 18, United States Code.

a. The NTC was a tax-exempt corporation based in Detroit, Michigan. The NTC was established as a labor management committee subject to 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers and employees represented by the UAW.

b. Approximately every four years, Fiat Chrysler and the UAW engaged in national negotiations resulting in collective bargaining agreements that set wages, attendance policies, profit sharing, ratification bonuses, holidays, and other working conditions for Fiat Chrysler employees represented by the UAW.

c. In 2011 and 2015, Fiat Chrysler and the UAW held national negotiation sessions that resulted in ratified collective bargaining agreements covering tens of thousands of Fiat Chrysler employees represented by the UAW.

d. From 2008 until he retired in June 2015, Alphons Iacobelli was the Fiat Chrysler Vice President for Employee Relations. As the Fiat Chrysler Vice President for Employee Relations, Iacobelli was Fiat Chrysler's lead representative for labor relations and had lead responsibility for managing Fiat Chrysler's relationship with the UAW. Iacobelli was the senior Fiat Chrysler official responsible for negotiating with the UAW and for administering the collective bargaining agreements between Fiat Chrysler and the UAW, including the resolution of disputes and grievances that arose under the collective bargaining agreements between Fiat Chrysler and the UAW.

e. Between in or before January 2009 and continuing through in or after June 2015, certain former UAW officials conspired with Iacobelli, Fiat Chrysler, and other Fiat Chrysler executives and Fiat Chrysler employees agreed to pay and

16

delivered, and willfully paid and delivered, money and things of value to former officers and employees of the UAW. Iacobelli and other Fiat Chrysler executives and employees acting in the interest of employer Fiat Chrysler used the bank accounts and credit card accounts of the NTC to benefit certain former officers and employees of the UAW, knowing that those individuals were not permitted to receive the money and other things of value. This money was fraudulently embezzled through mail and wire fraud from the NTC for the benefit of certain former UAW officials and Iacobelli.

f. Over the course of the conspiracy, Fiat Chrysler Vice President Iacobelli, Fiat Chrysler Senior Manager Michael Brown, Fiat Chrysler Financial Analyst Jerome Durden, and other Fiat Chrysler executives and employees, unlawfully paid and delivered more than $3.5 million in prohibited payments and things of value directly and indirectly to UAW Vice President General Holiefield, UAW Vice President Norwood Jewell, UAW Assistant Director Virdell King, UAW Official Nancy Johnson, UAW Official Keith Mickens, and other former UAW officials. The prohibited payments and things of value included paying off the mortgage on the personal residence of former UAW Vice President Holiefield, personal travel, designer clothing, cases of custom-labeled wine, furniture, jewelry, and custom-made watches.

17

g. As part of the same conspiracy, Fiat Chrysler Vice President Iacobelli and other Fiat Chrysler executives and employees transferred hundreds of thousands of dollars in prohibited payments from Fiat Chrysler, through the NTC, into tax-exempt organizations controlled by certain former UAW officials, including the Leave the Light On Foundation and the Making Our Children Smile Foundation, among others.

h. As part of the same conspiracy, Fiat Chrysler Vice President Iacobelli and other Fiat Chrysler executives and employees authorized the regular transfer of hundreds of thousands of dollars from the NTC to the UAW, purportedly as reimbursement for the salaries of UAW employees assigned to the NTC. In fact, however, some of those UAW employees provided no services or only part-time services to the NTC. The salary reimbursements, along with a 7% administrative fee, were paid by the NTC using funds provided by Fiat Chrysler.

i. Fiat Chrysler Vice President Iacobelli, Fiat Chrysler Senior Manager Michael Brown, Fiat Chrysler Financial Analyst Jerome Durden, Fiat Chrysler, and other co-conspirators acting in the interest of employer Fiat Chrysler paid and delivered more than $3.5 million in prohibited payments and things of value to certain former UAW officers and UAW employees in an effort to obtain benefits, concessions, and advantages for Fiat Chrysler in the negotiation, implementation, and administration of the collective bargaining agreements between Fiat Chrysler

and the UAW.

j. Between 2012 and June 2015, Fiat Chrysler Vice President Iacobelli authorized the expenditure of more than $450,000 to pay for personal purchases made by former UAW Vice President Holiefield and other former UAW officials on their NTC-issued credit cards. Fiat Chrysler Vice President Iacobelli encouraged and authorized UAW Vice President Holiefield, UAW Vice President Jewell, UAW Assistant Director King, UAW Official Johnson, UAW Official Mickens, and other former UAW officials to purchase items such as jewelry, furniture, electronics, designer clothing, and other personal items using their NTC credit cards. The purchases of personal items and other personal expenses were paid for by the NTC using funds provided by Fiat Chrysler.

k. In June 2014, Fiat Chrysler Vice President Iacobelli authorized the expenditure of $262,219.71 to pay off the mortgage on the residence of former UAW Vice President Holiefield and Monica Morgan in Harrison Township, Michigan. The mortgage was paid off with a check issued by the NTC using funds provided by Fiat Chrysler.

l. Between 2003 and 2019, the UAW, through the NPC, NTC, and CHR, received over $300 million under a process known as a "chargeback." This process allowed the UAW to "assign" UAW officials to work at the training centers. This

process allowed the UAW to get reimbursed by the joint program centers, funded by Ford, GM, and Fiat Chrysler, to recoup the expenses of the UAW related to UAW employees working at the joint training centers. Many, if not all, of these "chargeback" expenses passed salary and fringe benefit costs of UAW employees (established through employment agreements between the employee and the UAW) to the joint program centers, which were funded by the automakers. As part of the improper conduct, certain former UAW officials caused the Ford Motor Company and Fiat Chrysler to pay certain "chargebacks" through their respective training centers to the UAW that were not appropriate and where some of the UAW employees either were not working at the assigned training center or were working less than full time at their training center. To remedy this, the UAW has refunded approximately $8.6 million in chargebacks to the Ford Motor Company training center based on improperly paid chargebacks for UAW employees who were not working full time at the assigned training center. In addition, the UAW has refunded approximately $6.4 million to the Fiat Chrysler/UAW joint training center for improperly charged chargebacks.

m. As part of the chargeback process, the UAW passed along a 7% fee on top of the "chargeback" invoices as an "administrative fee." Between 2004 and the present, the UAW obtained over $21 million in said fees. The plaintiff believes these

fees are excessive and do not properly reflect the true cost to the UAW of administering the chargebacks for the three training centers, with part of the administrative fees properly covering the UAW's cost in administering employees assigned to the training centers. Furthermore, this income was deposited directly into the union's general operating account and used to offset union expenses. Two former Presidents of the UAW, convicted of federal crimes as set forth above, considered a portion of the 7% administrative fee to generate a profit for the UAW. The UAW did not pay any taxes on and did not report the administrative fees as income to the Internal Revenue Service.

n. Former UAW President Dennis Williams directed the three training centers to make over $300,000 in payments to a company named Bluewater Technologies Group for the benefit of the UAW's Black Lake property in order to lessen the property's costs to the union and to make capital improvements on a wholly-owned UAW asset. Specifically, this money from the three joint program centers was used for "audio visual upgrades" to the conference center, purportedly to help with joint training activities conducted at the Black Lake Center. In truth and in fact, however, the money benefitted the UAW and its Black Lake property. The UAW has since refunded the more than $300,000 paid by the joint program centers, funded by the car companies, for the audio-visual upgrades.

o. On August 8, 2017, Fiat Chrysler Financial Analyst Jerome Durden pleaded guilty to conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the Internal Revenue Service from ascertaining, computing, assessing, and collecting taxes. Durden admitted that he and his co-conspirators had agreed to conceal more than $1 million in prohibited Taft-Hartley payments made to senior UAW officials by Fiat Chrysler and its executives, in violation of 18 U.S.C. § 371.

p. On August 29, 2017, former UAW Assistant Director Virdell King pleaded guilty to conspiracy to accept illegal Taft-Hartley payments. Besides amounting to an illegal Taft-Hartley conspiracy, King's criminal conduct also constituted mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

q. On January 22, 2018, Fiat Chrysler Vice President Alphons Iacobelli pleaded guilty to conspiracy to violate the Taft-Hartley Act. Besides amounting to an illegal Taft-Hartley conspiracy, Iacobelli's criminal conduct also constituted mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

r. On April 5, 2018, former senior UAW official Keith Mickens pleaded guilty to conspiracy to accept illegal Taft-Hartley payments. Besides amounting to an

illegal Taft-Hartley conspiracy, Mickens' criminal conduct also constituted mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

s. On July 23, 2018, former senior UAW official Nancy Johnson pleaded guilty to conspiracy to accept illegal Taft-Hartley payments. Besides amounting to an illegal Taft-Hartley conspiracy, Johnson's criminal conduct also constituted mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

t. On April 2, 2019, former UAW Vice President Norwood Jewell pleaded guilty to conspiracy to accept illegal Taft-Hartley payments. Besides amounting to an illegal Taft-Hartley conspiracy, Jewell's criminal conduct also constituted mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

### Scheme to Defraud the UAW and its Members of Property and Other Economic Benefits Involving UAW Elective Offices and Employment

14. It was a part of the fraud, corruption, and illegality that certain former members of the International Executive Board, while employed by and associated with the UAW, and other former officials of constituent entities of the UAW devised and intended to devise a scheme and artifice to defraud, and for obtaining money

23

and property by means of false and fraudulent pretenses, representations and promises, in violation of Sections 1341 and 1343 of Title 18, United States Code. Such money and property includes, but is not limited to, the following: (a) union offices, positions, employment, wages, and employee benefits; (b) the assets of the UAW, its Regions, CAP Councils, and other subordinate bodies of the UAW and their affiliated employee pension and welfare benefit plans; and (c) the economic benefits that UAW members would obtain but for corruption within the UAW.

15. It was a part of the scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, that certain former members of the UAW International Executive Board would and did permit various individuals, when acting as officers and employees of the UAW and its constituent entities and when acting as agents and representatives of the UAW in labor-management committees, employee pension and welfare benefit plans, and voluntary employee beneficiary associations affiliated with the UAW and its constituent entities, to deprive the union and its members of the money and property described in Paragraph 14 by means of acts and failures to act which include, but are not limited to violations of their duty to provide loyal and responsible representation to the members of the UAW by, among other things, failing to enforce the UAW Constitution; failing to investigate certain charges of corruption within the

24

UAW and its constituent entities; failing to redress proven instances of fraudulent practices and illegality; improperly influencing the UAW's election process for members of the International Executive Board and appointing to office and permitting to remain in office corrupt officials. Certain former members of the International Executive Board did so despite notice of continuing fraud, corruption, and illegality within the UAW through published reports, public investigations, and multiple criminal and civil charges against the officers and employees of UAW and its constituent entities such as the following:

a. While serving as UAW President, Gary Jones offered to further defraud the UAW by using UAW money to pay the salary of a relative of UAW official Edward Robinson in exchange for the agreement by Robinson to conceal from federal law enforcement the conspiracy and scheme to defraud the UAW and its constituent entities of property by Jones, Robinson, and other UAW officials.

b. While serving as the Director of UAW Region 5, Gary Jones, while engaging a scheme to defraud the UAW of property, directed embezzled UAW funds to the personal benefit of UAW President Dennis Williams, partly in an effort to secure the support of Williams for Jones to become UAW President.

c. While serving as Vice President of the UAW's Fiat Chrysler Department, Norwood Jewell, while engaging in a scheme to defraud the UAW and its members

25

of property and honest services of their officials, directed embezzled funds to the personal benefit of UAW President Dennis Williams, partly in an effort to secure the support of Williams for Jewell to become UAW President.

### Conspiracy to Defraud the United States and Make False Statements to the United States Department of Labor and Internal Revenue Service

16. It was further a part of the fraud, corruption, and illegality that certain former members of the International Executive Board, while employed by and associated with the UAW, aided and abetted by certain former officers and employees of the UAW and its constituent entities, did conspire and engage in schemes to defraud by making and causing to be made false and fraudulent statements in documents filed with the United States Department of Labor and the Internal Revenue Service by providing false information to both entities in an effort to obstruct their lawful administration of labor and tax laws and by seeking to evade the payment of taxes owed by the UAW and UAW officials and to defeat the collection of information from the UAW as a tax-exempt organization, in violation of Sections 371 and 1001 of Title 18, United States Code and Section 439(b) of Title 29, United States Code. It was part of the manner and means of the conspiracy and scheme to defraud that:

a. Certain former UAW officials who were embezzling money from the UAW

or its constituent entities or who were obtaining the proceeds of honest services fraud schemes would conceal the profits from their fraudulent schemes by failing to report such income on their personal federal income tax returns filed with the Internal Revenue Service. Those former officials who were convicted of embezzling UAW funds would conceal from the UAW additional compensation received from UAW sources. By concealment of the such compensation, the former UAW officials would also cause the UAW to make false statements and omit material facts in (1) union financial reports ("LM-2 Reports") that were prepared by the UAW, signed by the General President and Secretary-Treasurer of the UAW, and filed annually with the Department of Labor; and (2) informational reports ("Form 990 Reports") that were prepared by the UAW and filed annually with the Internal Revenue Service. These reports concealed the additional compensation that certain former UAW officials were receiving from union embezzlement schemes and the existence of any loss or shortage of funds or other assets of the UAW.

b. Certain former UAW officials established bank accounts known as "flower funds" in order to maintain electoral control of the union and to personally benefit themselves by causing UAW employees to make regular payments into the "flower funds" under the guise that the money so contributed was to be used for either union political purposes or for charitable purposes. In truth, however, some money from

these flower funds was often used for the personal benefit of certain former senior UAW officials and not for the claimed purposes. Those former UAW officials involved in establishing, maintaining, and exploiting these funds then failed to make adequate disclosures to both the Internal Revenue Service and the Department of Labor concerning compensation levels, income, and the use of UAW assets, systems, and resources for political ends prohibited by Title IV of the Labor-Management Reporting and Disclosure Act.

c. On January 22, 2018, among other crimes, Fiat Chrysler Vice President Alphons Iacobelli pleaded guilty to subscribing to a false federal income return, which failed to report income derived from the proceeds of criminal activity, in violation of Section 7206(1) of Title 26, United States Code. Besides the tax offense, Iacobelli's conduct in filing a false tax return with the Internal Revenue Service also constituted the making of materially false and fraudulent statements in a document submitted to a federal agency in violation of Section 1001 of Title 18, United States Code.

d. On February 6, 2018, Monica Morgan, the widow of former UAW Vice President General Holiefield, pleaded guilty to subscribing to a false federal income return jointly filed with Holiefield in violation of Section 7206(1) of Title 26, United States Code. Besides the tax offense, which involved the failure to report income

derived from the proceeds of a conspiracy with Holiefield to commit Taft-Hartley Act violations, Morgan's conduct in filing a false tax return with the Internal Revenue Service also constituted the making of materially false and fraudulent statements in a document submitted to a federal agency in violation of Section 1001 of Title 18, United States Code.

e. On February 7, 2020, former Director of UAW Region 5 Vance Pearson pleaded guilty to conspiring to embezzle union funds and to use an interstate facility to aid a racketeering offense consisting of embezzlement in violation of Section 371 and contrary to Section 1952 of Title 18, United States Code, and Section 501(c) of Title 29, United States Code. Besides these offenses, Pearson's failure to report additional compensation from the embezzlement would also cause his personal income tax return and the UAW's Form 990 return and LM-2 Reports to understate his compensation from UAW funds and contain false and fraudulent statements in violation of Sections 1001 and 2 of Title 18, United States Code.

f. On March 2, 2020, Edward Robinson, former President of the UAW's Midwest CAP, pleaded guilty to conspiring to embezzle union funds in violation of Section 371 of Title 18, United States Code, contrary to Section 501(c) of Title 29, United States Code. Robinson also pleaded guilty to having conspired to defraud the United States by impairing the Internal Revenue Service's collection of federal

income taxes due on income from the proceeds of embezzling union funds and the collection of accurate information due from tax exempt organizations in violation of Section 371 of Title 18, United States Code. By failing to report the additional compensation received from participation in the conspiracy to embezzle union funds, Robinson admitted to having defrauded the United States of personal taxes due on $66,805 of additional income not reported on his Form 1040 return filed for tax year 2017 and having caused the UAW to file a false Form 990 return and LM-2 Report filed for 2017 which underreported the co-conspirators' additional compensation from UAW funds of $290,852.

g. On June 3, 2020, former UAW President Gary Jones pleaded guilty to conspiring to conspiracy to embezzle UAW funds and use of a facility of interstate commerce to in aid of a racketeering offense consisting of embezzlement in violation of Section 371 and contrary to Section 1952 of Title 18, United States Code, and Section 501(c) of Title 29, United States Code. Jones also pleaded guilty to conspiring to defraud the United States by impairing the Internal Revenue Service's collection of federal income taxes due on income from the proceeds of embezzling UAW funds and the collection of accurate information due from tax exempt organizations in violation of Section 371 of Title 18, United States Code. By failing to report the additional compensation received from participation in the conspiracy

to embezzle union funds, Jones admitted that he had defrauded the United States of personal income taxes due on $66,805 of additional income not reported on his Form 1040 return filed for tax year 2017 and having caused the UAW to file a false Form 990 return and LM-2 Report filed for 2017 which underreported the co-conspirators' additional compensation from UAW funds in the amount of $290,852.

h. On September 4, 2019, former senior UAW official Michael Grimes pleaded guilty to conspiracy to commit honest services wire fraud in violation of Sections 1343 and 1349 of Title 18, United States Code, and conspiracy to commit money laundering in violation of Section 1956(h) and contrary to Section 1957 of Title 18, United States Code. In pleading guilty to the money laundering conspiracy, Grimes admitted that he had received bribes and kickbacks from UAW and CHR vendors as part of an honest services fraud scheme and deposited the proceeds of that scheme into his bank accounts in amounts greater than $10,000. The participants in the honest service fraud conspiracy and scheme also agreed that they would conduct financial transactions with the proceeds of the conspiracy and scheme with the intent to conceal the source of the proceeds and to violate Sections 7201 and 7206 of Title 26, United States Code, by filing false personal income tax returns and evading the payment of personal income taxes on the concealed fraudulent income. Under such circumstances the money laundering conspiracy also constituted a

conspiracy to defraud the United States in violation of Section 371 of Title 18, United States Code.

i. On October 22, 2019, former senior UAW official Jeffrey Pietrzyk pleaded guilty to conspiracy to commit honest services wire fraud in violation of Sections 1343 and 1349 of Title 18, United States Code, and conspiracy to commit money laundering in violation of Section 1956(h) and contrary to Section 1957 of Title 18, United States Code. In pleading guilty to the money laundering conspiracy Pietrzyk admitted that he had received bribes and kickbacks from UAW and CHR vendors as part of an honest services fraud scheme and deposited the proceeds of that scheme into his bank accounts in amounts greater than $10,000. The participants in the honest service fraud conspiracy and scheme also agreed that they would conduct financial transactions with the proceeds of the conspiracy and scheme with the intent to conceal the source of the proceeds and to violate Sections 7201 and 7206 of Title 26, United States Code, by filing false personal income tax returns and evading the payment of personal income taxes on the concealed fraudulent income. Under such circumstances the money laundering conspiracy also constituted a conspiracy to defraud the United States in violation of Section 371 of Title 18, United States Code.

j. On December 4, 2019, former UAW Vice President Joseph Ashton pleaded guilty to conspiracy to commit honest services wire fraud in violation of Sections

1343 and 1349 of Title 18, United States Code, and conspiracy to commit money laundering in violation of Section 1956(h) and contrary to Section 1957 of Title 18, United States Code. In pleading guilty to the money laundering conspiracy, Ashton admitted that he had received bribes and kickbacks from UAW and CHR vendors as part of an honest services fraud scheme and deposited the proceeds of that scheme into bank accounts in amounts greater than $10,000. The participants in the honest service fraud conspiracy and scheme also agreed that they would conduct financial transactions with the proceeds of the conspiracy and scheme with the intent to conceal the source of the proceeds and to violate Sections 7201 and 7206 of Title 26, United States Code, by filing false personal income tax returns and evading the payment of personal income taxes on the concealed fraudulent income. Under such circumstances the money laundering conspiracy also constituted a conspiracy to defraud the United States in violation of Section 371 of Title 18, United States Code.

All of the above was in violation of Section 1345 of Title 18, United States Code.

## THE NEED FOR INJUNCTIVE RELIEF

Over the past five years, the UAW has received notice of fraud, corruption, and illegality within the UAW through published reports, public investigations, and multiple criminal and civil charges against certain now former officers and

employees of UAW and its constituent entities. During this time, certain former members of the International Executive Board who have been convicted of criminal conduct publicly and repeatedly made statements minimizing and dismissing the pervasiveness of the fraud and corruption problems within the UAW. In addition to those former members of the board who have been convicted of crimes, the UAW had knowledge that certain other now former UAW officials and employees aided and abetted, conspired, or confederated with those UAW officials criminally convicted. Union records maintained by the organization detail other individuals who had a role in facilitating or obtaining fictitious approval for fraudulent UAW expense and records. Certain former members of the UAW neglected to remove certain individuals for their role in the criminal conspiracies or for, at minimum, violating the UAW's own internal rules and Ethical Practices Code. It is in this way that the UAW failed to address the fraud, corruption, and illegality problem within its own ranks and necessitates injunctive relief to protect the honest membership of the organization.

## **DEMAND FOR RELIEF**

WHEREFORE, the United States of America demands, pursuant to Section 1345 of Title 18, United States Code and the All Writs Act, Section 1651 of Title 28, United States Code, the following relief:

1. A permanent injunction prohibiting all current and future officers, agents, employees, representatives, members, and persons holding positions of trust in the UAW and its constituent entities or any employee benefit plan, labor-management committee, or voluntary employee beneficiary association in which such persons act on behalf of the UAW or its constituent entities:

a. from committing mail fraud, in violation of 18 U.S.C. § 1341;

b. from committing wire fraud, in violation of 18 U.S.C. § 1343;

c. from committing bank fraud, in violation of 18 U.S.C. § 1344;

d. from committing honest services mail or wire fraud, in violation of 18 U.S.C. § 1346;

e. from engaging in a conspiracy to commit any of these offenses, in violation of 18 U.S.C. § 1349;

f. from committing any type of mail or wire fraud that would also constitute embezzlement of union funds, in violation of 29 U.S.C. § 501;

g. from committing honest services mail or wire fraud that would also constitute the acceptance of illegal Taft-Hartley payments under 29 U.S.C. § 186;

h. from committing conspiracy to defraud the United States or any agency thereof, in violation of 18 U.S.C. § 371;

i. from committing any violations of 18 U.S.C. § 1001 in any of the UAW's

35

filings with any agency of the United States government;

j. from conspiring to commit any of the above referenced offenses;

k. from committing any crime involving the establishment or operation of a labor organization, employee benefit plan, labor management committee or voluntary employee beneficiary association;

l. from knowingly associating with any member or associate of any criminal group or with any barred person;

m. from knowingly permitting any member or associate of any criminal group or any barred person to exercise any control or influence, directly or indirectly, in any way or degree, in the conduct of the affairs of the UAW and its constituent entities; and

n. from obstructing or otherwise interfering, directly or indirectly, with the efforts of anyone effectuating or attempting to effectuate the relief ordered or attempting to prevent any criminal groups or barred person from exercising influence on the conduct of the affairs of the UAW and its constituent entities. The term "knowingly associating" means that: (a) an enjoined party knows or should know that the person with whom he or she is associating is a member or associate of any criminal group or is a barred person; and (b) the association is more than fleeting or casual.

A "barred person" is any person prohibited from participating in union affairs pursuant to or by operation of the injunction or other court order or statute.

2. The appointment of an independent Monitor and an Adjudications Officer (hereinafter "Officers") with investigatory, review, and disciplinary powers, including the power to:

a. investigate, audit, and review all aspects of the UAW and its constituent entities, other than negotiating and administering collective bargaining agreements, in order to advance the remedial objective of this action, including the power to conduct investigatory interviews and sworn depositions to advance the remedial objective of this action;

b. request the United States Attorney or any agency of the United States to provide legal, audit and investigative personnel to assist in the execution of the Independent Monitor's duties, including the authority to request the United States Attorney to seek additional relief from the Court in order to protect or advance the interests of the union in achieving the remedial objective of this action;

c. retain legal, investigative, accounting, and other support personnel at the UAW's expense and delegate any of his/her powers or duties to such persons, where, in the Officers' discretion, such personnel and delegation are necessary to execute the Officers' duties;

d. attend all UAW Executive Board meetings and UAW committee meetings (with the exception of privileged portions of such meetings, portions of such meetings discussing collective bargaining strategy, and/or bargaining committee meetings);

e. refer matters to the UAW or the United States Attorney for appropriate action;

f. disapprove the hiring, appointment, reassignment or discharge of any person or business entity by the UAW or its constituent entities if the Officer finds conduct which (i) violates the injunctive prohibitions described in any Court order arising from this Complaint, (ii) violates any criminal law involving the operation of a labor organization or employee benefit plan, labor management committee or voluntary employee beneficiary association, or (iii) furthers the direct or indirect influence of any barred person;

g. disapprove or terminate any contract (including, but not limited to, contracts with service providers or vendors), lease, or other obligation of the UAW or its constituent entities if the Officer finds conduct which (i) violates the injunctive prohibitions described in any Court order arising from this Complaint, or (ii) violates any criminal law involving the operation of a labor organization or employee benefit plan, labor management committee or voluntary employee beneficiary association,

38

or (iii) furthers the direct or indirect influence of any barred person;

h. remove, suspend, expel, fine or forfeit the benefits (with the exception of vested employee retirement benefits subject to title I of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq.) of any officer, representative, agent, employee or person holding a position of trust in the UAW and its constituent entities when such person engages or has engaged in actions or inactions which (i) violate the injunctive prohibitions described herein, or (ii) violate any criminal law involving the operation of a labor organization or employee benefit plan, labor management committee or voluntary employee beneficiary association;

i. impose discipline up to and including expulsion from union membership when a member of the UAW or its constituent entities engages or has engaged in actions or inactions which: (i) violate the injunctive prohibitions described herein, or (ii) violate any criminal law involving the operation of a labor organization or employee benefit plan, labor management committee or voluntary employee beneficiary association;

j. review and approve candidates for elective and appointive office; and

k. perform all such functions and duties not specifically enumerated herein in order to fulfill his/her/their duties as Officers.

3. An Order that the reasonable costs of the Officers and any support personnel

be borne by the UAW.

4. An Order that the UAW shall indemnify the Officers and any person hired by or acting on his/her/their behalf from such personal liability and costs incurred to defend against any claim of such liability (except for fraud, willful or intentional misconduct, workplace harassment, or gross negligence), and that the Officers and his/her/their designees shall have all of the powers, privileges and immunities of a person appointed pursuant to Rule 66 of the Federal Rules of Civil Procedure and which are customary for court appointed offices performing similar assignments.

5. An Order that the UAW conduct a binding referendum of the UAW's membership so that the membership will have an opportunity to determine if the UAW's system for electing members of the International Executive Board will be changed.

6. And such further relief as may be necessary and appropriate to prevent and restrain future fraudulent conduct and to ensure that the UAW and its constituent

entities be free from fraud, corruption, and illegal conduct or the threat of such now and in the future.

MATTHEW SCHNEIDER
United States Attorney


s/David A. Gardey                                     s/Steven P. Cares
David A. Gardey                                        Steven P. Cares
Assistant United States Attorney             Assistant United States Attorney
Chief, Public Corruption Unit


Date: December 14, 2020