UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

        Defendant.
_____/

Case Number 20-13293
Honorable David M. Lawson

## **ORDER GRANTING JOINT MOTION FOR ENTRY OF CONSENT DECREE**

On December 14, 2020, the government filed its complaint in this case pleading claims against the defendant labor unions under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345. Shortly thereafter, the parties filed a joint motion for entry of a consent decree to resolve the matter. The Court has reviewed the allegations of the pleadings and the representations made in support of the parties' joint motion, and now finds that the terms of the proposed consent decree are a fair, adequate, and reasonable resolution of the claims pleaded. The joint motion therefore will be granted, and the proposed consent decree separately shall enter.

The defendants are the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), which represents hundreds of thousands of auto workers, and its International Executive Board (IEB), which is the union's governing body. The complaint alleges that for more than ten years certain UAW officials — including former members of the IEB and two former union presidents — engaged in fraudulent and corrupt behavior that harmed the interests of both the union and its members. The fraudulent conduct included: schemes by which union officials received more than $1.5 million in kickbacks for

"steering" contracts to certain vendors; concealment of personal expenses — including lavish, months-long resort vacations — as "business expenses" that were paid from union accounts via bogus invoices; receipt of illegal "chargeback" payments from automakers ostensibly meant to defray salaries and benefits of employees assigned to a "training center," where the employees did little or nothing in the way of actual work, and union officials pocketed most of the "chargeback" payments; and routing of funds surreptitiously to former union officers in exchange for their support in union election campaigns by current officials.

In related criminal proceedings arising from the same fraudulent schemes, fifteen persons were convicted on numerous federal criminal charges including wire fraud, embezzling, money laundering, tax evasion, and various violations of the Taft-Hartley Act. While the criminal proceedings were pending, attorneys for the government's civil enforcement divisions engaged alongside criminal prosecutors in negotiations with the defendants, which eventually culminated in an agreement for a global resolution of both the criminal matters and the contemplated claims for civil sanctions, which are embodied by the claims pleaded in this matter. The terms of the settlement include, among other things, appointment of an independent monitor to keep tabs on the union's financial affairs, a member referendum to ratify new methods of electing IEB members, and payments by the former union officials to satisfy their unpaid tax liabilities.

When reviewing a consent decree, the Court must determine that the settlement is fair, adequate, and reasonable. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). However, unlike in cases involving only private parties, where the government is a party to the case the concern that the plaintiff's "pecuniary interests will tempt it to agree to a settlement unfair to represented persons" is somewhat lessened. *United States v. City of Miami*, 614 F.2d 1322, 1332 n.18 (5th Cir. 1980). Consent decrees typically arise from the parties' mutual resolve to give some

ground in their respective positions, in order to "save themselves the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1981). A consent decree essentially is a contract between the parties that binds them to perform obligations independent of any duties under the law, which are defined by the terms of their mutual agreement. *City of Warren v. City of Detroit*, 495 F.3d 282, 287 (6th Cir. 2007); *Blakely v. United States*, 276 F.3d 853, 867 (6th Cir. 2002). The Court should not rubber stamp a proposed consent decree, but the level of scrutiny afforded is relatively minimal. *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986). In particular, searching scrutiny of the balance of value between the respective concessions generally is not required, and the Court may rely on the representations of informed counsel to that effect. *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986). The Court also "need not inquire into the precise rights of the parties nor reach and resolve the merits of the case or controversy." *Village of Arlington Heights*, 616 F.2d at 1014. Where the Court is sufficiently assured that the agreement is the result of arms-length negotiations, the "decree is [regarded as] presumptively reasonable." *Williams*, 720 F.2d at 921.

The Court has reviewed the record of the proceedings and the terms of the proposed consent decree and finds that the settlement represents a fair, adequate, and reasonable agreement to resolve substantial claims for civil liability premised on the same fraudulent conduct for which various individuals already have been criminally convicted. The terms of the settlement include significant financial sanctions for the harm caused and provisions that should deter the repetition of similar conduct. There are no circumstances suggesting that the agreement is not the product of good-faith, arms-length negotiations between counsel for the parties. The Court therefore will grant the joint motion for approval of the consent decree.

Accordingly, it is **ORDERED** that the joint motion for entry of a consent decree (ECF No. 3, 7) is **GRANTED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   January 29, 2021