UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

vs.

Civil No. 20-cv-13293

Hon. David M. Lawson

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,**

    **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO MOTION TO INTERVENE

After a well publicized period of negotiation, the United States and the UAW agreed to settle criminal and civil liability against the union through a civil consent decree. Prior to finalizing the agreement, the United States spoke with many interested parties, including members of the UAWD group. Then, last December, the United States and UAW held a press conference and announced the deal and its parameters, including the imposition of a monitor, how that monitor would be selected, and the plan to hold a referendum on UAW's election process.

After this Court granted the parties' motion to enter the consent decree, UAWD and Scott Houldieson moved to interene in the lawsuit to undo the parties' agreement and have the Court add or change its terms. But their motion is

1

untimely. Even this district's local rules would not permit a party to move for reconsideration now. And there is no legal basis that gives the Court authority to enter new terms to the agreement. But the motion to intervene fails for other reasons too, including because the United States has and can adequately represent the rights of UAW members. So the motion should be denied.

## BACKGROUND

On December 14, 2020, after months of arms-length negotiations, the United States filed a civil complaint against the Internatnional Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (or the "UAW"). (ECF No. 1, PageID.1). The complaint was brought under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, which permits the Attorney General to commence a civil action to enjoin certain federal criminal violations. 18 U.S.C. § 1345(a)(1).

But this complaint was not filed to start an adversarial battle. Rather, as mentioned above, the parties had been negotiating for some time. And these negotiations were not secret. In fact, more than six months before the complaint was filed, both sides announced they "had a productive and helpful first meeting to begin negotiations." And the government attorneys and agents did not just speak to top officials at UAW. They also spoke with union members, including representatives from the group United All Workers for Democracy Movement or

UAWD. (ECF No. 12, PageID.142).

So at the same time the complaint was filed, the parties also proposed a resolution. They filed a motion with an attached proposposed consent decree. (ECF No. 6, PageID.89). While this filing was struck from the docket (*id.*), as before, the parties' proposal was not secret. Indeed, the UAWD posted both the parties' motion and proposed consent decree (available to the public before the the Court's order) on their website. *See* https://uawd.org/wp-content/uploads/2020/12/USA-vs-UAW-motion-for-consent-order.pdf (last visited March 8, 2021). The government and the UAW also held a joint press conference and announced the general parameters of the deal. For instance, as part of the proposal, there would be an independent monitor "chosen by the government from a slate of candidates suggested by the union." And another part required the UAW to hold a referendum that would allow the UAW members to vote on their method of election—that is, whether to change from the current delegate election system to a direct election one, sometimes called "one member, one vote."

Prior to this proposal, UAWD had itself been trying to change UAW's election system by following the requirements for such a change in the UAW constitution. So when the local media reported on the proposed Consent Decree, they asked Scott Houldieson, the chairperson of UAWD, his reaction—what he thought that the proposed agreement didn't change the UAW election method, but

3

instead allowed UAW members to vote to determine if there would be a change. Houldieson commented that he is "all for democracy" and simply wanted "the opportunity to educate the membership" on the direct elections.

Three weeks later, the parties filed a second joint motion for entry of a consent decree. (ECF No. 7, PageID.91). In its order striking the parties' initial motion, the Court indicated that attaching the proposed order was improper. (ECF No. 6, PageID.89). So the new motion did not attach the parties' proposed consent decree as an exhibit. But it did discuss the important settlement terms. *See* ECF No. 7, PageID.100 (explaining that the proposed resolution contemplated "a referendum by UAW members to choose whether to keep the current method of electing members of the [UAW's International Executive Board], or to change to a one-member, one-vote, direct election method"). And the proposed order contained the same terms that were discussed at the press conference, in numerous media reports, and contained in the proposed order UAWD posted on its website.

On January 7, 2021, counsel for UAWD entered an appearance, noting she was "preparing a motion for leave to interevene." (ECF No. 8, PageID.103). More specifically, UAWD sought to intervene "to address the Court's exercise of its discretion with respect to approval and subsequent implementation and enforcement of the parties' jointly proposed Consent Decree." (*Id.*).

Three weeks later, the UAWD had still not filed any motion to intervene.

And on January 29, 2021, this Court granted the parties' motion for entry of a consent decree. (ECF No. 9, PageID.104). The Court explained that, given the arms-length negotiations that occurred, the agreement was "presumptively reasonable." (ECF No. 9, PageID.106). But the Court nevertheless conducted an independent review to determine if the terms were "fair, adequate, and reasonable" and found that they "should deter the repetition of similar [criminal] conduct" by UAW officials. (ECF No. 9, PageID.105-106). So immediately after granting the parties' motion, the Court also entered the Consent Decree. (ECF No. 10, PageID.108).

Nealy a month after the Court's order, UAWD and Scott Houldieson finally filed a motion to intervene. (ECF No. 12, PageID.139). They asserted the reason was to "identify[ ] key weaknesses" in the Consent Decree and "propos[e] ways to fix them." (ECF No. 12, PageID.139-140). They also seek to "remain[ ] engaged" in the process and be given the ability to "appeal." (ECF No. 12, PageID.140). In their motion, UAWD also argues that "[t]he consent decree *must* establish direct . . . election of officers." (ECF No. 12, PageID.142, emphasis in original). And they "seek[ ] to suggest candidates for appointment" of the monitor. (ECF No. 12, PageID.143).

5

## ARGUMENT

Rule 24 sets the boundaries when an outsider can "intervene" in a lawsuit. *See* Fed. R. Civ. P. 24. There are two types—intervention as of "right" and "permissive" intervention. *Id.* But before analyzing whether intervention is appropriate in either context, it is first helpful to consider what relief the outsiders are seeking. *See, e.g., United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005) (to evaluate one of the factors related to pending motion to intervene, the court explained that "it is necessary to identify the claims currently pending before the district court").

Here, UAWD and Houldieson want this Court to reconsider its order granting the parties' motion for a consent decree and substantially restructure the parties' settlement. But the local rules would not even permit *a party* to make such a belated motion for reconsideration. *See* E.D. Mich. L.R. 7.1(h)(1) (noting that a motion must be filed within 14 days after entry of an order). Furthermore, even if UAWD and Houldieson were successful in convincing this Court to re-visit its ruling, they cannot obtain what they ultimately want—having this Court change the consent decree's provisions, e.g., with respect to the selection of the monitor. *See, e.g., Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 630 (9th Cir.1982) (court cannot "delete, modify, or substitute certain provisions of the consent decree," but instead must "give[ ] or with[o]ld" approval); *Pettway v.*

6

*American Cast Iron Pipe Co.*, 576 F.2d 1157, 1172 (5th Cir. 1978) (court "may not unilaterally change the [proposed consent] decree"). Especially in this context then, the proposed request to intervene should be denied.

I. ***UAWD and Houldieson are not permitted to intervene as a matter of right.***

An outsider seeking to intervene as a matter of right must show that (A) its motion is "timely," (B) it has a "substantial legal interest" at issue in the case, (C) its ability to protect this interest may be impaired, and (D) the current parties may not adequately represent this interest. *Michigan*, 424 F.3d at 443.

A. ***The motion to intervene is not timely.***

UAWD's and Houldieson's motion is not timely. The court considers five different factors when evaluating timeliness: (1) the point or stage of the suit, (2) the purpose for intervening, (3) the length of time where the outsiders knew or should have known of their interest in the case, (4) the prejudice to the parties, and (5) any unusual circumstances. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

This Court ruled on the parties' motion for the entry of the consent decree, and entered the consent judgment over a month ago. And courts frequently deny requests to intervene that are made after a judgment is entered. *See Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000) (motion to intervene filed after final judgment was untimely); *Cuyahoga*

*Valley Ry. Co. v. Tracy*, 6 F.3d 389, 396 (6th Cir. 1993) (proposed intervenors were not entitled to "enter the proceedings after the case has been fully resolved, in an attempt to achieve a more satisfactory resolution").

In *Stotts v. Memphis Fire Dept.*, 679 F.2d 579, 580-81 (6th Cir 1982), for instance, the district court denied an intervention attempt that came weeks after the consent decree. The lawsuit occurred when a group of minority firefighters filed a lawsuit against the Memphis Fire Department alleging racially discriminatory hiring and promotion practices. *Id.* The media followed the dispute and a number of front-page newspaper stories tracked the litigation. *Id.* Eventually, the parties reached a settlement and proposed a consent order to the district court. *Id.* The court approved it. *Id.* Weeks later, a group of non-minority firefighters filed a motion to intervene to delay approval of the consent decree. *Id.* The district court denied the request, noting that the outsiders adopted a "wait-and-see" posture and their motion was untimely. *Id.*

The Sixth Circuit affirmed. *Id.* at 585. As to the purpose for the proposed intervention, the court explained that the proposed intervenor's requests were "substantively unavailable as a matter of law." *Id.* at 582. The outsiders should have known about the possibility that the department's promotional procedure could be changed—it was "inherent from the outset of the litigation." *Id.* at 583. And in part from the media coverage that occurred "months before" the consent

8

order, the proposed intervenors had sufficient notice. *Id.* The court also found that the city adequately protected the interests of the non-minority firefighters, the delay in implementing the relief would cause prejudice, and certain unsual circumstances (including the "months of settlement negotiations") did not warrant intervention. *Id.* at 584-85; *see also Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981) (affirming denial of motion to intervene that came months after inception of litigation and one month after entry of consent order); *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (affirming denial of intervention by union that came three weeks after motion because there was "no reason . . . apparent from the record" why the union could not have sought intervention before the district court's ruling).

So too here. Counsel for UAWD and Houldieson filed her appearance while the parties' motion was pending. Nothing prevented a timely motion to intervene. And months before this, both UAWD and Houldieson knew of the negotiations and the proposed settlement—as noted above, they posted the initial proposed consent decree on their website. Furthermore, given that they had been "closely following the publicity," (ECF No. 12, PageID.161), the media covererage alone provided UAWD and Houldieson with sufficient notice about the substantive aspects of the parties' proposed resolution. Indeed, at the time of the press conference, Houldieson was even pointedly asked about his thoughts that the parties'

9

settlement did not change the election rules.

As explained above, UAWD and Houldieson are seeking to undo a decision that has already been made and to improperly inject provisions into the consent decree without any legal basis to do so. Their veiled request for reconsideration is late. And they point to no law that permits them to change the UAW's method of electing its officers. So like in *Stotts*, their proposals are "substantively unavailable as a matter of law."

The other factors likewise weigh against intervention. The parties would be prejudiced by delay, including because the terms of the consent order require them to select a monitor by April 11, 2021. And relying on this requirement, the process is already well under way. Further, like in *Stotts*, the consent decree occurred after months of highly publicized negotiations.

While not explicitly addressing the issue of timeliness, UAWD and Houldieson do cite to *United States v. City of Detroit*, 712 F.3d 925 (6th Cir. 2013). This case involved one chapter in a decades-long battle to bring the City of Detroit's water department into compliance. *Id.* at 926-27. At numerous points throughout the litigation, the city did not follow the requirements of the consent decree. *Id.* at 927-28. At a point of non-compliance, the district court created a committee to propose a long-term plan, and noted that this would likely require "structural changes" including overriding the city's charter and existing contracts.

*Id.* at 929. This committee subsequently created such a plan that, e.g., enjoined unions that were not part of the lawsuit from filing grievances or arbitration demands and that struck parts of the collective bargaining agreements. *Id.* The district court entered an order adopting portions of the recommended plan, including those restricting unions' rights. *Id.* Within a few weeks, some unions moved to intervene, alleging certain Constitutional violations. *Id.* at 929-30. The district court denied the motions as untimely. *Id.*

But the Sixth Circuit reversed. *Id.* at 933-34. It recognized there was a "close balance of fact-specific considerations." *Id.* at 931. But given the "potential prejudice [to the unions] from complete denial," the district court did not properly consider "[l]imited intervention." *Id.* at 932-33. The district court was properly concerned with "late stage" requests where outsiders sought to "re-litigate issues that they watched from the sidelines." *Id.* at 932. But this could be remedied by limiting intervention to a "prospective basis." *Id.*

There are a number of important factual differences here. To begin with, UAWD and Houldieson have not set forth the same type of legal interests or prejudice that would have occurred to the unions in *City of Detroit*. Moreover, as explained above, they are requesting intervention for things, like in *Stotts*, that are "unavailable as a matter of law." To the extent they could articulate a different purpose at a later date, the issue of intervention could be revisited. But for the

11

purposes they seek, their motion is untimely and should be denied.

### B.   UAWD and Houldieson have not shown a "substantial legal interest" that would be impaired though the consent decree.

Although the "interest" that is permissible for intervention is "rather expansive," *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), it is not limitless. *See, e.g., Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (public interest group challenging enforcement of a statute was not sufficient for intervention). Unlike the Constitutional violations alleged by the intervenors in *City of Detroit* or even the reverse-discrimination claims by the proposed intervenors in *Stott*, neither UAWD nor Holdesion identify any statutory, constitutional or other legal right they hold that is at issue.

In any case, even if UAWD or Holdesion had a sufficient interest, they have not articulated how such a right is being infringed. Their group has sought, through the UAW constitution, to change the method for electing officers. This remains unchanged. Indeed, the consent agreement merely speeds up what they have been trying to do all along—get a union-wide vote on the "one member, one vote" issue.

### C.   The United States adequately represents the interests of UAW members.

The United States has and can adequately represent the interests of UAW members. Unlike class action settlements where there is the concern about the possibility of collusion, "[w]hen the Department of Justice advocates a settlement," there is not the same concern. *United States v. City of Miami*, 614 F.2d 1322, 1332

n.18 (5th Cir. 1980).

In any case, UAWD and Houldieson have the burden to demonstrate that the current parties do not adequately represent their interests. *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). They fail to meet this burden if (1) "no collusion is shown" between the government and opposition, (2) the government "does not have any interests adverse" to the outside party, and (3) the government "has not failed in the fulfillment of its duty." *Id.*

And they have failed to meet that burden here. There is no collusion between the United States and the UAW. The United States does not have an adverse interest to the UAWD or Houldieson. And it has not failed to fulfill its duty.

## II. UAWD and Houldieson are not entitled to permissive intervention.

Permissive intervention likewise requires a "timely" motion. As explained above, the UAWD and Houldesion motion is not.

Permissive intervention is within the discretion of the district court. And where an outsider's "position is being represented" already, the court is "counsel[ed] against granting permissive intervention." *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018). Here, as explained above, the United States has and will continue to represent the interest of union members. Without certainty, there will not be unanimity in a group of hundreds of thousands of union workers. But that doesn't mean that the United States cannot represent the

13

general interest of union workers in having a clean union.

Furthermore, the outsider must set forth "a claim or defense" that has a "common question of law or fact" that is at issue in the litigation. Fed. R. Civ. P. 24(b)(1)(B). And UAWD and Houldieson have not articulated any such claim or defense that is presently at issue here. *See United States v. District Council of New York City*, 972 F. Supp. 756, 762-65 (S.D.N.Y. 1997) (because consent decree was already entered, only issues before the court related to "the proper implementation," so proposed intervenors must, "at the very least articulate a theory that [the proposed] implementation . . . would violate a provision of the Consent Decree," and denying relief to local unions that had not done so); *cf. United States v. International Bhd. of Teamsters, In Re: Application XX by the Teamsters Administration*, 765 F. Supp. 1206, 1210 (S.D.N.Y. 1991) (denying Teamsters' president's motion to intervene to challenge finding by a court administrator that allegedly "damage[d] his reputation" was not cognizable interest).

This Court has already ruled on the proposed consent order, which includes the method for determining the monitor. So the issues that UAWD and Houldieson seek to address are not before the Court. *See, e.g., Law Offices of David Efron, P.C. v. Candelario*, 842 F.3d 780, 784 (1st Cir. 2016) (no right for permissive intervention in part because "all of the questions of law or fact in the [underlying]

14

litigation have already been settled").

While not necessary to the decision, it is nonetheless important to clear up UAWD's and Houldieson's mischaracterization of the monitor selection process—that it is "reminiscent of the fable about the fox and the chicken coop." (ECF No. 12, PageID.144). The UAW does not have "sole responsibility" to select the monitor. (ECF No. 23, PageID.143). Instead, the union proposes a slate of candidates to the United States, who can select someone from this list or ask for more candidates. (ECF No. 10, PageID.117). Importantly, this is the same process that occurs with regularity in selecting corporate monitors, and is the protocol recommended by the United States Department of Justice. *See* DOJ Memorandum, [Selection of Monitors in Criminal Division Matters](#) (10/11/18).

UAWD and Houldieson argue that they should be allowed to intervene because they are just like parties who have an interest in public and union elections. But in each of these cases that they cite, the intervenor wanted to enter the litigation so the court could consider its position of a *pending* issue. *See Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 798 (E.D. Mich. 2020) (plaintiff sought to compel City of Detroit to undertake more aggressive measures to purge voter rolls of ineligible voters and, at the time of the intervenor's motion, this Court had not yet ruled on plaintiff's claims or the defendant's motion to dismiss); *Powell v. Benson*, No. 20-11023, 2020 WL 5229104, *5 (E.D. Mich.

15

Sept. 2, 2020) (although court had entered a consent order, there was a pending motion for contempt and, because the intervenor's interest "arose from the … purported failure to comply with the Consent Decree," there was still a pending issue); *King v. Whitmer*, No. 20-13134, 2020 WL 7053810, at *2 (E.D. Mich. Dec. 2, 2020) (claims were unresolved and intervenor would be "subject to the same briefing schedule" as the parties on those issues); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 529 (1972) (Secretary of Labor initiated action to set aside union election alleging violations of LMRDA that was still pending). That is not the case here, at least with respect to UAWD's and Houldieson's requests.

Put differently, like in *City of Detroit, supra,* there may be a specific issue that could allow for UAWD, Houldieson, or some other third party to intervene. But UAWD and Houldieson should not be permitted to intervene to accomplish the express purposes that they seek—to have this Court set aside or re-structure the consent order.

## CONCLUSION

The Court should deny UAWD's and Houldieson's motion to intervene.

Respectfully submitted,

Saima S. Mohsin
Acting United States Attorney

/s/ Steven P. Cares
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9139
Email: steven.cares@usdoj.gov

/s/ David A. Gardey (with consent)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9591
Email: david.gardey@usdoj.gov

Dated: March 8, 2021

## Certificate of Service

I hereby certify that on March 8, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/ Steven P. Cares
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9139
Email: steven.cares@usdoj.gov