UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                               Case Number 20-13293

v.                                                      Honorable David M. Lawson

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

                    Defendant.

_____/

## OPINION AND ORDER DENYING MOTION BY UNITE ALL WORKERS FOR DEMOCRACY AND SCOTT HOULDIESON TO INTERVENE

More than two months after this lawsuit was commenced and approximately three weeks after the Court entered a consent decree in this case, Unite All Workers for Democracy (UAWD) and Scott Houldieson filed a motion to intervene for legal reasons that they have found difficult to articulate. Their stated intention is to join the lawsuit, presumably as a defendant, so that they can "identif[y] key weaknesses in the consent decree" and propose modifications; "provide membership feedback" in proceedings to enforce the consent decree; and participate in an "appeal" — although at this stage of the proceedings it is not apparent on what grounds any appeal might be taken.

The motion is untimely because it was submitted more than two months after the suit was commenced and the original joint motion for entry of a consent decree was filed; more than six weeks after counsel for the proposed intervenors appeared in the case, and after the second motion for entry of a consent decree was presented, which clearly spelled out the terms of the proposed decree; and more than three weeks after the matter was closed by issuance of the consent decree. The proposed intervenors also have not identified a tangible legal interest that they hold in dictating

who will be selected to serve in the position of Monitor under the consent decree, or in mandating the adoption of a particular method for electing union officers. Moreover, any generalized interest in "fair elections" and "union integrity" that the movants may have adequately will be guarded by the government as the plaintiff in this case. Contrary to the proposed intervenors' position, the consent decree does not "cede to the union" any undue influence over the selection of the Monitor, since the candidates for the position must be first vetted by the government, and then reviewed and formally appointed by the Court. Finally, the proposed intervenors can voice an interest in any formal action the Court might take to enforce the consent decree by seeking to file a brief as *amicus curiae* when a party files a motion for enforcement or seeks approval under the decree. The motion to intervene will be denied.

I.

The parties stipulated to the accuracy of the allegations pleaded in the government's complaint filed December 14, 2020 under the Labor-Management Relations Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.*

The defendant in this matter is the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW). It represents hundreds of thousands of non-managerial workers in automobile manufacturing and other industries throughout Michigan and the United States, and in other countries. The UAW's International Executive Board is the managing body of the UAW, which is comprised of a president, secretary, three vice presidents, and eight regional directors. The board governs the union's affairs by, among other things, imposing discipline, approving or suspending by-laws of local bargaining units, and interpreting and enforcing the UAW's constitution. UAW locals, aided and overseen by the umbrella authority

of the international union, negotiate collective bargaining agreements on behalf of members in workplaces around the country and the world, according to local circumstances.

According to the complaint, since 2010, certain members of the executive board have engaged in fraudulent and illegal transactions that included money laundering, receipt and payment of union funds for goods and services that never actually were delivered, and receipt and payment of kickbacks and bribes by certain employers of union members.  Among other things, members of the executive board accepted bribes and kickbacks for steering contracts that were awarded by the UAW-GM Center for Human Resources, which was a member training center jointly operated by the Union and General Motors Corporation and its successor (GM).  Other union executives conspired over several years to embezzle for their personal use more than $1.5 million in union funds, by subterfuges such as submitting vouchers for travel and lodging expenses that never were incurred.  Also, union executives accepted payments from employers, including FCA, LLC (Chrysler) in exchange for compromising negotiations over bargaining agreements in ways that favored the employer over union members.  Still other executive board members were aware of the fraud, embezzlement, and bribery crimes, but took no action to stop them, contrary to their obligations under federal law to investigate and redress any violations of applicable federal laws by union officials.  To conceal the proceeds of their schemes, union executives also made, or caused the union to make, deceptive representations to the Department of Labor and the Internal Revenue Service (IRS) in various financial reports and disclosures.

The complaint enumerates in exhaustive detail these and other fraudulent and illegal schemes and identifies the former union officials who conspired to carry them out.  In 2019 and 2020, more than a dozen executives who were involved in the schemes pleaded guilty to a variety of federal crimes including wire fraud, mail fraud, embezzlement, violations of the Employee

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*, and violations of the Labor-Management Relations Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 *et seq.*

On December 14, 2020, the government filed its complaint alleging various violations of federal law and seeking injunctive relief prohibiting the union and its elected officers from committing future similar violations of federal law.  On the same date, the parties jointly filed a motion for entry of a consent decree embodying terms of an agreement that they had reached, before the suit was filed, which provides for injunctive restrictions against the union and its officers, and also for the appointment of a Monitor and other officials to keep tabs on the union's activities and report on the defendant's compliance with the consent decree and applicable federal laws.  The Court struck the proposed consent decree that had been attached as an exhibit of the motion because it was filed in violation of procedural rules.

On January 5, 2021, the parties filed a revised joint motion with a brief that included more expansive details on the terms of the proposed consent decree.  On January 7, 2021, counsel for the proposed intervenors file a notice of appearance.  On January 29, 2021, after it had received no opposition to the motion for entry of the consent decree, the Court entered the proposed consent decree.  On February 22, 2021, more than three weeks after the matter was closed by entry of the consent decree, the proposed intervenors filed their motion to intervene.

Proposed intervenors UAWD and Scott Houldieson assert in their motion that they stand for the interests of a caucus of union members that has tried unsuccessfully in the past to have candidates elected to the UAW executive board, and that they oppose the "Administration Caucus" of incumbent officers, who they say historically have been elected and re-elected with no significant opposition.  They assert that they want to intervene in this case to "protect their interest in bringing democratic governance to the UAW" in the ways mentioned above.

- 4 -

The proposed intervenors contend that the consent decree that was entered by the Court is "flawed" in various ways, but the principal concerns emphasized in their motion are (1) the intervenors' belief that fair elections of union officers only can be achieved via a "one member, one vote" method of voting, and their disappointment that the consent decree does not mandate such a method for elections, and (2) their apprehension that if the Monitor and other positions which the consent decree provides for are filled by persons nominated initially by the UAW, then those watchdogs merely will become "foxes guarding the henhouse," since they believe that the union, which is the subject of the consent decree's strictures, will seek to nominate only candidates that would turn a blind eye to any future misdeeds.

The government and the UAW each oppose the motion, arguing that it is untimely, and the movants seek relief that the Court cannot grant. For example, they assert the Court is not empowered to modify the terms of any consent decree upon the motion of an interested person, but only either to grant or withhold approval for terms that the parties to the case have proposed. They also argue that they would be prejudiced by interference with the enforcement of the decree at this late date, because they must comply with the deadline to submit candidates for the monitor position for the Court's approval. They also insist that there is no significant concern of "collusion" between the United States and the defendant, and the government is able adequately to represent the proposed interest in ensuring the integrity of union elections. The union also points out that the proposed intervenors can direct their concerns to the independent monitor, who will be charged with ensuring that the defendant respects the terms of the decree, and they can do so without the need to complicate the proceedings by allowing every union member who disagrees with particulars of the decree to become a party to this litigation.

II.

Federal Rule of Civil Procedure 24 provides two procedural avenues for a person or entity that was not named as a party to a lawsuit to seek to insert itself into the proceedings.  Those are designated under the rule as "intervention of right," Fed. R. Civ. P. 24(a), and "permissive intervention," Fed. R. Civ. P. 24(b).

"To intervene as a matter of right in a lawsuit under Federal Rule of Civil Procedure 24(a), a proposed party must establish that: '(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest.'" *Kirsch v. Dean*, 733 F. App'x 268, 274 (6th Cir. 2018).

Federal Rule of Civil Procedure 24(b)(1), on the other hand, allows for "permissive" intervention under more relaxed conditions: "'On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018). In deciding whether to allow a party to intervene [on a permissive basis], 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Ibid.* (quoting Fed. R. Civ. P. 24(b)(3)). "'So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion.'" *Ibid.* (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)).

Timeliness of the motion is evaluated "in the context of all relevant circumstances [by consideration of] the following five factors: '(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during

- 6 -

which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.'" *Kirsch*, 733 F. App'x at 274-75 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

The proposed intervenors' motion is not timely. The proceedings have terminated by entry of the final consent decree. It is widely acknowledged that post-judgment attempts to intervene are untimely. *See Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000) ("The IBT did not file its motion for intervention until after the district court issued its final judgment concerning the attorney's fees and costs award. We find that the IBT's failure to intervene before final judgment was entered renders the motion untimely.").

The putative purpose for the intervention is improper, because the intervenors assert that the primary goal of the intervention is to move the Court to reconsider its decision to approve the decree. But the time for seeking reconsideration of that decision had long passed when the motion to intervene was filed. *See* E.D. Mich. LR 7.1(h). Moreover, as the government points out, the Court is not authorized to alter the terms of a negotiated compromise at the suggestion of a non-party to the litigation; rather, its role is to consider and either approve or reject the proposed resolution. *Officers for Justice v. Civil Service Comm'n San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982) ("Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must then be given or withheld."). The proposed

intervenors have not suggested any factual basis or legal authority for a conclusion that the Court's discretionary decision to accept the proposed consent decree was made improvidently.

The proposed intervenors argue that they had no "advance opportunity" to review any of the filings in this case that were docketed last December, they were not solicited to "sign off" on the proposed decree, and the specimen of the decree that was docketed was stricken from the public record. However, there was ample time during which the motion to intervene could have been presented, but the proposed intervenors waited until weeks after the case was closed to file their request. The intervenors have not rebutted the government's representations that the negotiations preceding the filing of the case occurred over months and were publicized widely. The movants also affirmatively represent that they personally were consulted by government counsel about the proposed resolution of the government's claims against the union at least six months before this case was filed. The complaint and motion for approval of the consent decree were made a matter of public record in mid-December 2020. Proposed intervenors' counsel appeared in the matter in early January, two days after a revised and more thoroughly briefed motion for approval was filed. The consent decree was entered three weeks later, after no opposition was presented by anyone. The proposed intervenors waited a further three weeks before filing their motion. No excuse has been presented for the delay, and the undisputed information presented shows that the proposed intervenors were well aware of the litigation and any interest they might have in it for months before the case was closed.

The proposed intervention at this late stage materially would prejudice the interests of the parties — and the union's entire membership — in securing prompt compliance with the terms of the consent decree, including by the timely appointment of a qualified independent monitor to

audit the union's affairs, and by the timely commencement of plans to hold a member referendum to decide whether the method of electing union officers should be changed prospectively.

Finally, there are no extraordinary circumstances that otherwise mitigate in favor of indulging the tardy intervention.

The proposed intervenors also have not identified any substantial legal interest that they hold in the subject matter of the case, *see* Fed. R. Civ. P. 24(a), nor have they identified any legal claim or defense sharing a common nucleus of fact with the claims pleaded in the complaint, *see* Fed. R. Civ. P 24(b).  The sole claim brought in this case was filed by the government under the authority of the Anti-Fraud Injunction Act, 18 U.S.C. § 1345.  That statute, however, confers a right to sue solely on the Attorney General, and does not authorize any private right of action for union members or any other aggrieved individual.  *Bush v. Chancery Court of Knox County*, No. 15-524, 2016 WL 1737096, at *2 (E.D. Tenn. May 2, 2016) ("[T]he complaint relies on 18 U.S.C. § 1345 — a criminal statute authorizing the Attorney General to enjoin certain fraudulent conduct — as the private cause of action. However, numerous courts have held that 18 U.S.C. § 1345 does not confer a private cause of action and, as a result, cannot serve as a basis for federal question jurisdiction.") (collecting cases).  Thus, the proposed intervenors have no tangible legal interest in the adjudication of the pleaded claims, and there is no legally recognized claim or defense that they could assert having any overlapping facts with the pleaded claims.  The intervenors' mere desire to advocate for what they view as more suitable terms for a compromise between the parties is not a substantial legal interest that warrants allowing their interjection into the litigation as a party.  *Cuyahoga Valley Railway Co. v. Tracy*, 6 F.3d 389, 396 (6th Cir. 1993) ("[The proposed intervenors] [are not] entitled to . . . enter the proceedings after the case has been fully resolved, in an attempt to achieve a more satisfactory resolution.").

The proposed intervenors' expressed desire to see the union adopt what they view as a more desirable method of electing officers is not founded in any recognized legal right that is not already adequately vindicated by these proceedings, because the federal statutes on point do not mandate the adoption of the particular method for electing offices which the movants endorse. *See* 29 U.S.C. § 481(a) ("Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years *either* by secret ballot among the members in good standing *or* at a convention of delegates chosen by secret ballot.") (emphasis added); 29 U.S.C. § 481(e) ("The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this title."). Moreover, the consent decree expressly mandates that a question promptly must be put to a democratic vote by *all* union members, to decide whether the "one member, one vote" procedure should be adopted. The requirement that the union poll a fresh ballot to determine the method of its elections goes beyond the rights guaranteed by federal law, and the decree already guarantees that a fulsome deliberation on exactly the question that the movants urge will be afforded and will involve all of the UAW's members.

Moreover, any generalized interest in union election integrity and the union's compliance with all applicable federal laws likely will be protected by the government. The movants have not identified any circumstances suggesting that the government unfairly has compromised its duty diligently to enforce the federal laws at issue in this case. The government's role as the principal enforcer of those regulations in which the suit is grounded is sufficient assurance that the interests of union members in "fair elections" and "union integrity" will not be overlooked. *United States v. City of Miami*, 614 F.2d 1322, 1332 (5th Cir. 1980) ("[T]he plaintiff here is a department of the United States government. Unlike the situations in which we fear that a party may be attempting

to profit at the expense of unrepresented individuals, e.g., class actions and shareholder derivative suits, we here have as plaintiff the government department charged with seeing that the laws are enforced.  We therefore need not fear that the pecuniary interests of the plaintiff and defendant will tempt them to agree to a settlement unfair to unrepresented persons, but can safely assume that the interests of all affected have been considered.").

The motion also is founded on factual misapprehensions which are belied by the actual provisions of the decree.  First, the decree does not cede "sole authority" to the union to dictate who will be appointed as the Monitor.  The decree vests the ultimate authority to appoint the Monitor with the Court, which is equipped to examine independently any nominee's qualifications and background and to ensure that he or she will be both free of any potential conflict of interest and sufficiently experienced to diligently discharge the duty of supervising the defendant's conduct and publicizing any transgressions.  Second, the decree does not deprive the movants — or any other individual union members — of established rights that they have to present any complaints about the fairness of any union election or referendum.  The movants may, just like any other member, present any such complaints to the OLMS, which is obligated fully and fairly to review and adjudicate their grievances.  *See* 29 U.S.C. § 482(A).  If they are unsatisfied with the agency's resolution of the grievance, then they may seek judicial review of the administrative ruling via the usual process under the Administrative Procedure Act.  *See* 29 U.S.C. § 526.  Those robust procedures for administrative and judicial review are supplemented, not obstructed, by the additional scrutiny and review that will be provided through the office of the Monitor that will be appointed under the consent decree.  And, as the defendant points out, nothing stands in the way of the movants presenting any grievances they may have to the Monitor as well, who may follow

up on them under the auspices of the broad supplemental enforcement authority that the decree vests in that position.

Last, although the intervenors have given reasons for their concern over the manner in which the consent decree may be enforced, and they have attempted to identify ways that the intended purpose of the decree might be foiled, they have not offered a valid reason why they should be allowed to appear as a party in this case. As a caucus within the UAW, the UAWD will have ample opportunity to participate in the union's democratic procedures. The UAWD also will have the opportunity to seek the ear of the Monitor. And when either party to the case seeks relief from or approval by the Court to carry out the terms of the consent decree, the UAWD can ask permission to file a submission as *amicus curiae* to let its voice be heard. The proposed intervenors, however, have not made a convincing case that their interest in good and honest union governance cannot be protected by government monitoring and court oversight. *See Jordan v. Michigan Conf. of Teamsters Welfare Fund,* 207 F.3d 854, 863 (6th Cir. 2000) (affirming denial of a motion to intervene as of right, because the motion was untimely and the proposed intervenor's interests were adequately represented); *see also Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (citing *Bradley v. Milliken,* 828 F.2d 1186, 1194 (6th Cir. 1987) (affirming denial of motions to intervene permissively and as of right, in part because "the district court has already taken steps to protect the proposed intervenors' interests by inviting [their counsel] to appear as amicus curiae in the case").

III.

The only proposed action on the table at the moment is a motion to approve the selection of a Monitor. At oral argument, counsel for the intervenors did not voice a clear opposition to the parties' recommendation. But based on the concerns expressed in the briefs and at oral argument,

the Court anticipates that they may want to take a position on that motion.  However, they may not intervene as a party by right or by permission.

Accordingly, it is **ORDERED** that the motion by Unite All Workers for Democracy (UAWD) and Scott Houldieson to intervene (ECF No. 12) is **DENIED**.

It is further **ORDERED** that if Unite All Workers for Democracy (UAWD) or Scott Houldieson wishes to file a brief as *amicus curiae* addressing the motion for appointment of a Monitor (ECF No. 28), they may do so **on or before May 11, 2021**.  The brief may not exceed ten pages.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   April 27, 2021