IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-cv-13293 |
| | ) | |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE, AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA, | ) | Hon. David M. Lawson |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF THE INTERNATIOINAL UNION, UAW**
**IN CONNECTION WITH THE MONITOR'S FIRST REPORT**

The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), by its attorneys, Terence H. Campbell and Eric S. Pruitt of Cotsirilos, Tighe, Streicker, Poulos & Campbell, respectfully submits the following Statement in Connection with the Monitor's First Report.

**UAW Statement In Connection with the Monitor's First Report**

Since November 2019 – starting with then International President Rory Gamble and continuing under the current leadership of the International Executive Board ("IEB") - the UAW has taken strong, decisive, and consistent actions to address past misconduct; reform and remediate the UAW's ethical and financial policies; and re-establish a culture at the UAW where unethical conduct of any sort will not be tolerated.  For the past two years, the IEB has proactively embarked on a course of instituting substantive reforms that included enacting new policies and establishing new departments specifically designed to address ethics, financial operations and compliance issues.  The IEB hired outside experts to review and enhance our internal controls, audit, and accounting policies and processes from top to bottom.  And the IEB has and consistently reaffirmed its commitment to ethical behavior at all levels of our Union.  The IEB's sole purpose and goal in this effort is to put into place protections, policies and mechanisms to ensure that the financial and ethical misconduct committed in the past cannot happen again, and restoring the UAW to its rightful place as the most ethical labor union in the world.

Those actions by the current leadership over the past two years include, among other things:

1. Establishing an Ethics Hotline to confidentially receive complaints about financial or ethical misconduct;

2. Hiring an external Ethics Officer to oversee the Ethics Hotline process;

3. Hiring an external Ethics Ombudsman to independently investigate complaints made to the Ethics Hotline, without any oversight or direction from UAW officials;

4. Hiring outside experts to assist the UAW to analyze and improve its accounting and financial controls systems, policies, and processes from top to bottom;

5. Establishing an Internal Audit Department at the UAW, and hiring outside experts in internal audit to help perform that function so it could get up and running immediately;

6. Leading the charge during 2019 collective bargaining with the Detroit automakers to completely restructure the Joint Program Centers in response to the misconduct that occurred at those centers;

7. Bringing charges against those who engaged in misconduct under Articles 30 and 31 of the UAW Constitution and permanently removing those individuals from the Union;

8. Hiring a new and more robust independent outside auditor to conduct the quarterly and annual audits of the International Union's financial operations;

9. Taking action to hire a dedicated Compliance Director to oversee and direct a centralized compliance function;

10. Directing that a new, comprehensive Code of Conduct be created encompassing all the rules and policies governing ethical and workplace behavior – and requiring annual certifications of compliance with that Code of Conduct;

11. Mandating more systematic annual training on ethics and workplace behavior issues;

12. Directing that all CAP and PAC funds be moved under the oversight of the Accounting Department at Solidarity House;

13. Enacting numerous new policies governing financial transactions, accounting processes, and workplace behavior; and

14. Consistently reaffirming the current IEB's commitment to ethical conduct and accountability for those who violate our ethical code.

These reform efforts are substantial and have been initiated, enacted, and supported consistently by the current IEB throughout the past two years, during which time the leadership of the UAW has continued to faithfully carry out its primary responsibility to represent our members every single day in their workplaces. And all of this has been accomplished despite the severe limitations imposed on everyone's lives by the COVID pandemic and the additional obstacles imposed by the fire at Solidarity House.

A number of the reform measures already proactively pursued by the current leadership are discussed briefly below – and additional new policies, reform measures, and ethics initiatives will continue to be rolled out in cooperation with the Monitor.

**Ethics Hotline**

In November 2019, shortly after taking office, then-President Rory Gamble and the IEB announced a series of ethical reforms and sent an unequivocal message that unethical conduct would not be tolerated from that point forward. One of those measures was to create an Ethics Hotline through which members could confidentially report suspected financial or ethical misconduct of any UAW International official or staff.

Soon after announcing the Ethics Hotline, COVID hit in early 2020 and brought with it all the work disruptions and stay-at-home havoc everyone well knows. Despite that, the current leadership of the UAW was able to get the Ethics Hotline fully in place and operational as of March 31, 2020.

The current leadership of the UAW believed it was essential that complaints made to the Ethics Hotline were investigated and reviewed independently, and that those complaints would be treated as confidential unless otherwise agreed. So, the IEB decided that the Ethics Hotline would be run by third-party professionals, *not* by UAW International employees; and that complaints received by the Ethics Hotline would be investigated and evaluated by independent parties – specifically, by an external Ethics Ombudsman (a role currently filled by Exiger, a nationally-known compliance and ethics firm, discussed below), and the UAW's external Ethics Officer, Wilma Liebman (also discussed below).

**Ethics Officer**

In early 2020, the current leadership of the UAW decided it wanted to establish a new and independent office that UAW members could bring concerns or allegations of ethical or financial misconduct to that was outside of the normal reporting lines. The IEB directed the hiring of an external Ethics Officer, and the UAW was able to retain Wilma Liebman for that position. Ms. Liebman served on the National Labor Relations Board for many years, having been appointed and reappointed by both Republican and Democratic Presidents. She was first

appointed to the NLRB by President Clinton and reappointed by President Bush.  Under President Obama, Ms. Liebman was appointed the Chair of the NLRB.  Ms. Liebman brings a wealth of labor experience and unquestioned ethics to the job.

Ms. Liebman's primary task is to work with the external Ethics Ombudsman (Exiger) to investigate and act on complaints received through the Ethics Hotline (discussed above). To ensure the independence and credibility of her Office, her work with Exiger on the investigations of complaints made to the confidential Ethics Hotline is done independently.  Neither Ms. Liebman nor Exiger operate under the direction or control of the UAW IEB or the UAW's General Counsel in carrying out her duties as the external Ethics Officer.

In addition to this role, the current UAW leadership established an Ethics Advisory Committee made up of rank-and-file members who were chosen at random from members expressing interest in serving after the Committee and its purpose was publicized.  The IEB believes that receiving input directly from the membership on issues of concern about – or suggested improvements to – the UAW's Ethics policies and practices is another important part of the comprehensive reform efforts they have undertaken.  Ms. Liebman also chairs this member-driven Committee and their recommendations are reported by her *directly to the IEB* – another sign of the significance that current leadership places on Ethics issues.


**Ethics Ombudsman**

To ensure complaints made to the Ethics Hotline would be reviewed and investigated independently, the current leadership of the UAW directed that an external Ethics Ombudsman would be hired to receive and investigate complaints received through the Ethics Hotline.  Exiger, a nationally-recognized expert in compliance issues and investigations, was hired to fill that role, and Exiger is fully empowered to conduct its investigations without oversight or direction from the UAW.  Exiger works with the external Ethics Officer, Wilma Liebman, to investigate and address any complaints made to the Ethics Hotline.


**Expert Work on Accounting Policies and Internal Controls**

The IEB, then Secretary-Treasurer Ray Curry, and Accounting Department personnel have been working with an experienced team from a nationally recognized accounting and audit firm to review UAW accounting and internal controls policies and procedures, and to recommend improvements for the UAW to implement.  The scope of this work has been quite comprehensive.  The new policies which are in various states of review and approval include new and/or enhanced versions of:

1. Procurement Policy
2. Travel and Expense Policy
3. Benefits and Insurance Policy

4

   4. CAPs and PACs Policy
   5. Cash Policy;
   6. Credit Card Policy;
   7. Financial Close and Reporting Policy;
   8. Fixed Asset Policy;
   9. I.T. Change Management Policy;
   10. I.T. Operations Policy;
   11. I.T. User Access Policy;
   12. Payroll Policy; and
   13. Overall Policy Framework

The Accounting and Controls expert also conducted a Technology Assessment to understand the available functionality and capabilities of the Union's existing in-house applications in support of potential control enhancements as compared to commercially available technologies.

**New Hires**

At the direction of the IEB and to support greater compliance efforts, the UAW has added new personnel in Internal Audit; the Audit Department; and the I.T. Department, with more resources to be devoted in the coming weeks and months.

**Restructuring the Joint Program Centers**

The UAW's current leadership was the driving force behind entirely reforming the structure of the Joint Program Centers to ensure that (1) there would be far greater and more stringent financial oversight and accountability; and (2) there would not be an ability to misuse funds in the manner that certain former officials misused joint program monies.

**Internal Audit Department**

In 2019, the IEB and then Secretary-Treasurer Ray Curry established a brand-new Internal Audit Department at the UAW, again to enhance the Unions compliance functions and to create yet another check on potential abuses of UAW monies.  There had not previously been an Internal Audit department at the UAW, and therefore in order to get the Internal Audit Department up and running as quickly as possible, the IEB directed that outside internal audit experts be retained to help guide and direct that function, with the help of individuals within the UAW who were assigned to work specifically on that project and nothing else.

**New Independent Auditor Retained**

In 2019, the current leadership of the UAW under Rory Gamble and Ray Curry hired a new, more robust external auditor to conduct the regular independent financial audits of the UAW and ensure that the UAW's financial house is put in order and stays that way. That new audit firm, Calibre, has extensive experience auditing other large labor unions and has enhanced the quarterly and annual audit work done on the UAW financial statements and operations. Calibre has been conducting the independent audits of the UAW since late 2019.

**Article 30 and Article 31 Charges Brought Against Wrongdoer UAW Officials**

Long before the Union's settlement agreement with the government or the appointment of the Monitor, the IEB unanimously voted to initiate internal disciplinary actions under Article 30 or Article 31 of the UAW Constitution against the individuals who engaged in misconduct – no matter what their position – and to kick those wrongdoers out of our Union. Filing these charges was an important statement by the IEB that the current leadership will not tolerate misconduct and will act swiftly and decisively to address misconduct by any Union official.

Specifically, the IEB long ago independently filed charges under either Article 30 of Article 31 of the UAW Constitution against the following individuals:

1. **Gary Jones**, charging that Jones "embezzled substantial funds from the UAW; hid and disguised certain expenditures of UAW funds made for his (and others') personal benefit; failed to accurately account for certain expenditures of UAW funds made for his (and others') personal benefit; caused false, inaccurate, and/or misleading financial records to be made available to UAW's Accounting Department; and attempted to cover up and hide his misconduct after the fact."

2. **Vance Pearson**, charging that Pearson "embezzled substantial funds from the UAW; hid and disguised certain expenditures of UAW funds made for his (and others') personal benefit; failed to accurately account for certain expenditures of UAW funds made for his (and others') personal benefit; caused false, inaccurate, and/or misleading financial records to be made available to UAW's Accounting Department; and attempted to cover up and hide his misconduct after the fact."

3. **Eugene "Nick" Robinson**, charging that "Robinson misappropriated, for his own benefit, funds that belonged to the UAW, the UAW Midwest CAP Fund, and/or the UAW Southwest CAP Fund; [that] Robinson stole, misappropriated, and/or misused funds that belonged to and/or were intended for legitimate UAW and CAP purposes, and kept those purloined funds for his personal use and benefit; [and] Robinson falsely and fraudulently claimed those expenditures were legitimate UAW and/or CAP expenses in documents he caused to be created and submitted to the UAW and/or CAP entities."

4. **Joseph Ashton**, charging that "Ashton solicited and received monetary bribes and/or kickbacks, which he kept for his personal benefit, from a vendor to the UAW-GM Joint Program Center, known as the Center for Human Resources, … that he engaged in money laundering with respect to the proceeds of his kickback scheme; … [and] that by engaging in the conduct described above, he had defrauded the UAW and the CHR out of his honest and faithful services."

5. **Mike Grimes**, charging that "Grimes solicited and received monetary bribes and/or kickbacks, which he kept for his personal benefit, from a vendor to the UAW-GM Joint Program Center, known as the Center for Human Resources, … that he engaged in money laundering with respect to the proceeds of his kickback scheme, [and] that by engaging in the conduct described above, he had defrauded the UAW and the CHR out of his honest and faithful services."

6. **Jeffrey Pietrzyk**, charging that "Pietrzyk solicited and received monetary bribes and/or kickbacks, which he kept for his personal benefit, from a vendor to the UAW-GM Joint Program Center, known as the Center for Human Resources, … that he engaged in money laundering with respect to the proceeds of his kickback scheme, [and] that by engaging in the conduct described above, he had defrauded the UAW and the CHR out of his honest and faithful services."

7. **Nancy Johnson**, charging that "Johnson misappropriated, for her own benefit, funds that belonged to the UAW-Chrysler Joint Training Program Center, known as the National Training Center ("NTC"); Johnson stole, misappropriated, and/or misused funds that belonged to and/or were intended for legitimate NTC purposes, and used those funds to buy a number of personal items for her personal benefit, including designer dresses, electronics, jewelry, handbags, and other items; [and] Johnson falsely and fraudulently claimed those expenditures were legitimate NTC expenses, and caused NTC funds to be used to pay for those personal items."

8. **Virdell King**, charging that "King misappropriated, for her own benefit, funds that belonged to the UAW-Chrysler Joint Training Program Center, known as the National Training Center ("NTC"); King stole, misappropriated, and/or misused funds that belonged to and/or were intended for legitimate NTC purposes, and used those funds to buy a number of personal items for her personal benefit, including designer clothing, designer shoes, handbags, and other items; [and]  King falsely and fraudulently claimed those expenditures were legitimate NTC expenses, and caused NTC funds to be used to pay for those personal items."

9. **Norwood Jewell**, charging that "Jewell misappropriated and or misused funds that belonged to the UAW-Chrysler Joint Training Program Center, known as the National Training Center ("NTC") [and] was responsible for misusing funds that belonged to

7

and/or were intended for legitimate NTC purposes, and used those funds for certain non-NTC expenses."

10. **Keith Mickens**, charging that "Mickens misappropriated, for his own benefit, funds that belonged to the UAW-Chrysler Joint Training Program Center, known as the National Training Center ("NTC"); Mickens stole, misappropriated, and/or misused funds that belonged to and/or were intended for legitimate NTC purposes, and used those funds to buy a number of personal items for his personal benefit, including electronics, clothing, golf clubs, and other items; [and] Mickens falsely and fraudulently claimed those expenditures were legitimate NTC expenses, and caused NTC funds to be used to pay for those personal items."

11. Finally, **Dennis Williams** permanently resigned his membership in the UAW after the Union communicated its intent to file charges under these Articles of the UAW Constitution.

As noted above, every single one of the Article 30 and Article 31 charges was unanimously supported by every member of the IEB. This unanimity by the IEB emphasized the strong and unwavering commitment of the current leadership to reform, ethical conduct, and making sure the financial misconduct of these individual wrongdoers will neither be tolerated nor allowed to be repeated.

Most recently, UAW internal auditors discovered more than $2 million in improper personal expenditures by the now-former UAW Local 412 Financial Secretary, Tim Edmunds. That elected local officer was suspended by the UAW and the auditors' findings were sent to law enforcement authorities, including the U.S. Department of Labor. The federal government has now filed criminal charges against the former Local 412 Financial Secretary, acting on the evidence uncovered by the UAW's enhanced auditing practices. Additionally, the UAW has initiated internal proceedings against the former Local 412 Financial Secretary under Article 48, Section 5 of the UAW Constitution to obtain financial restitution and other relief.

In addition, and further demonstrating its commitment to openly addressing and eradicating workplace misconduct of all types – regardless of who has engaged in the misconduct – last year the IEB brought Article 30 charges against a sitting IEB member, Regional Director Richard Rankin, alleging that he had engaged in conduct that violated the UAW's policy Against Sexual or Sex-based Harassment in the UAW Workplace and the UAW's policy against Retaliation. Mr. Rankin fully resigned his position with the UAW rather than face trial before a UAW Trial Committee on these charges.

**Summary of Compliance Initiatives Adopted by the IEB on Oct. 28, 2021**

The IEB has continued to act promptly, proactively and consistently to further its concerted efforts toward substantively reforming and enhancing the ethics and compliance

systems at the UAW. At its meeting on October 28, 2021, the IEB promptly moved to adopt a significant number of the recommendations made by Exiger in its June 11, 2021 report.

Those items the IEB formally adopted at that October meeting are summarized as follows:

**Compliance Director**. The IEB directed that a centralized compliance function be established, headed by a newly-created position of Compliance Director, with the following additional specifcs:

- Establish a Compliance Director or equivalent function with specific roles and responsibilities to ensure adherence to applicable federal, state, and local rules and regulations.

    o Provide adequate authority and autonomy to the Compliance Officer or equivalent function to make meaningful decisions.

    o Ensure that the appointed individual has significant and relevant compliance expertise and knowledge of applicable federal, state, and local rules and regulations.

- Establish a risk-based and right-sized Compliance function, whether a department or functional group, run by the Compliance Director or equivalent function that is separate from the President's office and ultimately reports to the Compliance and Ethics Committee, described below.

- Create a Compliance and Ethics Committee with autonomy and a direct reporting line to the International Executive Board ("IEB"), with overall responsibility to prevent or correct corruption and unethical behavior. The Compliance and Ethics Committee would consist of individuals such as the Compliance Director (as the head/owner of the Compliance and Ethics Committee), General Counsel, Head of Human Resources ("HR"), Head of Audit, the UAW Ethics Officer, the top Administrative Assistants to the President and Secretary-Treasurer and three IEB member.

- Work to define the mission, roles and responsibilities of the newly created Compliance and Ethics Committee.

- Ensure that the UAW has the appropriate resources devoted to compliance, leveraging the results of the risk assessment and identification of key risk areas.

**Code of Conduct**: The IEB directed that a new and comprehensive Code of Conduct be created which will incorporate the UAW's existing Ethical Practices Code, Administrative

Letters and other internal guidance and any other relevant policies. This Code of Conduct may be expanded to include reference to discrimination, harassment, non-retaliation, with any such expansion to involve IEB review and approval of any such underlying new policies. The IEB also called for appropriate training on the Code of Conduct and mandating annual certification by International Union employees that they have read the Code and agree to abide by it. This directive is consistent with some of the other centralization of financial policies the UAW has begun in its work both internally and with outside professionals.

**Policies and Procedures Relating to Governance and Responsibility**: The IEB adopted additional policies and procedures relating to the Code of Conduct and governance, specifically:

- The new UAW Code of Conduct be readily accessible to all UAW International personnel in MyUAW.

- When any changes/additions/edits are made to the Code of Conduct, the President's Office shall send out a notice to all UAW International officials and employees noting that a change has been made and directing people to review the change in the Code of Conduct which will be readily accessible on MyUAW. All policies and procedures will include elements such as version control, policy owners, approvers and responsible parties, again much like we have begun on the financial side.

- Have Exiger perform a review to identify any processes or regulatory filing requirements that are not documented in a policy or procedure, and to work with the UAW to make sure those are organized and maintained in a centralized repository.

- Have Exiger update the UAW policies and procedures to ensure all regulatory filing and certification requirements are being met.

**Policy Detail**: The IEB directed that the UAW:

- Ensure all policies and procedures clearly detail the role that is responsible for performing and approving all processes, including the roles and responsibilities of the various Administrative Assistants and department heads involved in the processes.

- Ensure all policies and procedures clearly document the required segregation of duties and appropriate delegation of authority to ensure there is clear delineation between process performers and approvers. Employees responsible for approving

elements of policies and procedures should not be subordinate to any requesters to avoid potential conflicts of interest and undue influence.

**Compliance Culture**: The IEB directed the following actions related to enhancing a Culture of Compliance:

- Holding an annual "Town Hall" hosted by the President and other IEB members conveying the core tenets of the Ethical Practices Codes and the culture of compliance expected of each and every official, employee and member of the UAW.

- Make compliance and ethics a standing item on the agenda for every IEB meeting, with information obtained from a new Compliance and Ethics Committee.

- Create and track management information and metrics on compliance related complaints made to the UAW and the ultimate resolution.

- Have regular compliance updates and ethics messaging by the President, the newly appointed Compliance Director and the Ethics Officer.

**Anti-Retaliation**: Furthering the goal of fostering a Culture of Compliance, the IEB directed that the UAW adopt and incorporate a Non-Retaliation Policy within the new Code of Conduct that provides examples of retaliation and a statement on disciplinary action for retaliation. The non-retaliation and disciplinary message would be reiterated in applicable policies such as the UAW's EEO Policy and the UAW No Harassment and Discrimination Policy in a consistent manner and management and staff training would be conduct on anti-retaliation and hostile work environments. Some of this work has begun in other areas, such as the IEB sub-committee working on harassment identifying sources for training on harassment and hostile work environments, and all of this is consistent with the IEB's goal of creating a working environment within the Union which promotes tolerance and seeks to avoid punitive and retaliatory behavior.

**Outside Activities**: While the International Union already restricts outside employment and addresses conflicts of interests related to outside activities, the IEB directed actions to enhance those policies and add certification by employees. Specifically, the IEB adopted the following measures:

- Implement a periodic self-certification of all outside business activities, including employment, board appointments and investments for all International staff, including spouses and minor children.

- Clearly define the term "substantial financial interest" in UAW policy.  The Legal Department, in consultation with the President's Office and Secretary-Treasurer's Office, will work on that and present it to the IEB for consideration.

- Have Internal Audit conduct periodic testing on a sample of International staff to ensure the certifications are accurate.

- Have the Compliance Director keep and the list of all staff appointments to boards and whether they have received and donated any salaries.

**Operations of the UAW**:  Recognizing the need to formalize a Union policy on record keeping and document retention beyond that contained in the Labor Management Reporting and Disclosure Act, the IEB adopted the following directives:

- Adopt a UAW-wide recordkeeping and retention policy.

- The IT Department will report to the IEB within the next three (3) months on the ability to keep electronic information stored in a cloud-based system, which would be accessible in an emergency.

**Bribery and Corruption:**  The IEB reiterated that existing UAW policies and federal labor laws already prohibit UAW employees from receiving gifts and other things of value from employers, vendors and other third parties.  However, the IEB directed the preparation and formal adoption of a separate and distinct anti-bribery and corruption policy which would provide clear guidance and thresholds to UAW officials, staff, and members on those topics.

In addition, the IEB directed that the UAW implement an annual compliance certification by all UAW employees.  Both of these new directives further the UAW's commitment to avoiding arrangements which might compromise the Union's mission to serve all UAW members.

**CAP Activities and Internal Audit:**  The IEB directed increased monitoring and testing of the International and Regional CAP activity reporting requirements as defined in the CAP Election Guide Policy by making that topic a part of Internal Audit's scope and testing plan.

The IEB also directed that monitoring and oversight of regional fundraising activity be increased by including that topic in the scope of Internal Audit's annual review process.

**Background Checks:** The International Union has for many years conducted criminal background checks on individuals being considered for employment by the International.  The IEB will now have background checks run on elected IEB members and International Trustees.

**Nepotism/Favoritism:** The IEB discussed the possible adoption of a policy on nepotism. While there is no existing federal law that requires such a policy, some labor unions have adopted such policies. The IEB directed that the UAW work with Exiger on preparing recommendations on a possible nepotism policy for IEB consideration.

**Harassment and Discrimination:** The UAW issued an Equal Employment Opportunity (EEO) policy issued in March 2020. While the Civil and Human Rights Department has existing guidance in their training materials on what constitutes discrimination, including definitions and procedures, the International Union policy does not. The IEB will expand the International Union's EEO policy to provide examples of discriminatory behavior that is actionable to better guide individuals.

**The Attorney-Client and Work-Product Privileges**

One final issue that bears brief mention is that of the Attorney-Client and Work-Product privileges. The Attorney-Client and Work-Product privileges have routinely been described by Courts as "fundamental" to our legal system and "sacrosanct". Indeed, even the Department of Justice specifically prohibits federal prosecutors from seeking to invade those privileges. Thus, the DOJ's policy states, ***"prosecutors should not ask for such waivers [of the Attorney-Client or Work-Product privileges] and are directed not to do so."*** See "Principles of Federal Prosecution of Business Organizations" (9-28.000 *et seq., available at* https://www.justice.gov/jm/jm-9-28000-principles-federal-prosecution-business-organizations#9-28.710). Those fundamental privileges are treated very seriously by the UAW's counsel, as they should be.

### Conclusion

The UAW's IEB and current leadership is committed to continuing its work to make sure the UAW will never again fall victim to the types of misconduct that were committed by a number of individuals who betrayed our collective trust. We look forward to continuing down that path with the Monitor and all our members.

Respectfully submitted,

*/s/ Terence H. Campbell*
Terence H. Campbell
Eric S. Pruitt
Cotsirilos, Tighe, Streicker, Poulos & Campbell
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
(312) 263-0345
tcampbell@cotsiriloslaw.com

epruitt@cotsiriloslaw.com
State Bar ID 6228959 (Illinois)

*Attorneys for Defendant UAW*