# OFFICIAL RULES FOR THE 2022 INTERNATIONAL OFFICER ELECTION OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA

PREPARED BY THE OFFICE OF THE MONITOR

NEIL M. BAROFSKY

JENNER & BLOCK LLP

AS OF MAY 11, 2022

# TABLE OF CONTENTS

**INTRODUCTION**

**ELECTION TIMELINE**

**SECTION 1:**     Role and Authority of the Monitor

**SECTION 2:**     Overview of the UAW International Officer Election

**SECTION 3:**     Nomination of Candidates for the UAW International Officer Election

**SECTION 4:**     Campaigning and Access

**SECTION 5:**     The Electorate

**SECTION 6:**     Ballots and Slates

**SECTION 7:**     Inspection and Observers

**SECTION 8:**     Campaign Contributions and Disclosures

**SECTION 9:**     Protest and Appeal Procedures; Remedies; Rerun Elections

**SECTION 10:**    Election-Related Conduct Subject to Disciplinary Charges

**SECTION 11:**    Rights and Duties Under Labor-Management Reporting & Disclosure Act of 1959

**SECTION 12:**    Administration of the Rules and UAW Constitution

**SECTION 13**:    Forms

**SECTION 14:**    Effective Date

**DEFINITIONS**

**MONITOR ELECTION TEAM**

OFFICIAL RULES FOR THE
**2022 INTERNATIONAL OFFICER ELECTION**
OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE, AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA

*The UAW Constitution is the living law of our Union.  It guarantees basic trade union rights to all members.  It is intended to protect equally the rights of individual members, and of the Union as a whole.*

*The most important of these trade union rights is the right of the membership to fair, democratic election procedures in all instances when they vote to choose their officials.  In order to guarantee this right, the UAW Constitution provides basic regulations for the conduct of elections for local union office, convention delegates and stewards and committee members.*

– Preface to the UAW Guide for Local Union Election Committees

**INTRODUCTION**

On January 29, 2021, the United States District Court for the Eastern District of Michigan (the "Court"), issued a Consent Decree in the matter of *United States v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 20 Cv. 13293 (DML-RSW) (the "Consent Decree"), concluding civil litigation previously brought by the Department of Justice ("DOJ") against the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW" or the "Union").  On May 12, 2021, pursuant to the terms of the Consent Decree, and by Order granting the Government's unopposed motion, Neil M. Barofsky of Jenner & Block LLP was appointed to serve as Independent Monitor of the UAW ("Monitor").

Among its provisions, the Consent Decree required that the UAW hold a Union-wide referendum (the "Referendum") on the question of how the UAW's International President and other members of the International Executive Board ("IEB"), including the International Secretary-Treasurer and all International Vice Presidents, as well as all Regional Directors (collectively, the "International Officers") were to be elected in the Union's future International Officer elections, including the International Officer election that will occur within the coming year (the "2022 UAW International Officer Election" or the "2022 Election").[1]  The Referendum was held in late 2021 and UAW members were asked whether the UAW should maintain its then-existing delegate election process—in which Local Unions' delegates to the UAW Constitutional Convention (the "Convention") nominated and then voted for the International Officers—or switch to a direct election system where the UAW members would vote directly for the International Officers.[2]

On December 1, 2021, the vote tabulation was completed with 63.7% of votes in favor of adopting a direct election system.  Pursuant to the Consent Decree, on January 7, 2022, the Monitor submitted his report on the Referendum results ("Referendum Report") to the Department of Labor's Office of Labor-Management Standards ("OLMS"), and on January 19, 2022, OLMS endorsed the results, determining that the UAW's Referendum vote was "conducted in a manner consistent with the standards

---

[1] Consent Decree ¶ 8.

[2] *Id.*

applicable to the union officer election provisions set forth in Title IV of the LMRDA along with the Referendum rules set forth by the Monitor."  On January 31, 2022, on an uncontested motion by the Monitor and joined by the Government and the UAW, the Court approved the Referendum results based on the Monitor's Referendum Report and the endorsement by OLMS.[3]  The Court ordered the UAW Constitution to be "amended to incorporate the 'one member, one vote' principle with respect to IEB elections prior to the next IEB elections taking place at or following the next UAW Constitutional Convention in July 2022."[4]  The Court directed the Monitor to "confer promptly with the UAW to draft language amending the UAW Constitution affirming the 'one member, one vote' principle for inclusion in the UAW Constitution at the next UAW Constitutional Convention."[5]  The Court also directed the "amendment of the UAW Constitution and all associated proceedings necessary to implement the change of election method" to be "carried out according to the law and all applicable provisions of the [C]onsent [D]ecree," and ordered that "the change of election method must be implemented fully on or before July 31, 2022."[6]

In light of the Referendum result, the Monitor, in consultation with the UAW, developed these rules and methods for holding the 2022 Election (the "Rules").[7]  These Rules will also remain in effect for future UAW International Officer elections unless and until modified by the Monitor, in consultation with the UAW.

---

[3] Order Granting Joint Motion to Approve Referendum Results, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (January 31, 2022), No. 20-cv-13293 (E.D. Mich.), ECF No. 53.

[4] Order Amending Deadlines for Completion of Change in Election Method and Amendment of UAW Constitution, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (March 16, 2022), No. 20-cv-13293 (E.D. Mich.), ECF No. 56; *see also* Order Granting Joint Motion to Approve Referendum Results, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (January 31, 2022), No. 20-cv-13293 (E.D. Mich.), ECF No. 53.

[5] Order Granting Joint Motion to Approve Referendum Results, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (January 31, 2022), No. 20-cv-13293 (E.D. Mich.), ECF No. 53.

[6] *Id* at 2-3; Order Amending Deadlines for Completion of Change in Election Method and Amendment of UAW Constitution, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (March 16, 2022), No. 20-cv-13293 (E.D. Mich.), ECF No. 56 (emphasis removed).

[7] Consent Decree ¶ 13.

Three important principles will guide the 2022 Election:

First, the 2022 Election will be run in a fair and impartial matter, and the Monitor will neither endorse nor give the appearance of endorsing any Candidate or Slate of Candidates over another, nor promulgate or enforce any discriminatory rule.

Second, the oversight of the 2022 Election will be conducted in strict adherence with the applicable provisions of the Consent Decree, the UAW Constitution (including forthcoming amendments thereto), applicable federal laws and regulations including the LMRDA, and these Rules.

Third, consistent with American democratic traditions, the right of every qualified member of the electorate to vote in this 2022 Election by secret ballot will be protected. This principle mandates the improvement of membership mailing information to ensure the enfranchisement of as many members as possible; the broad education of members on the fact of the 2022 Election to facilitate as broadly as possible their participation in it; and the fair counting of ballots and certainty around the accuracy of the 2022 Election results. It further requires that to the extent that any participants in the 2022 Election engage in any anti-democratic efforts or policies, they will be swiftly addressed and eradicated.

**Prior to the completion of the 2022 UAW International Officer Election, the Monitor, in consultation with the UAW, may issue supplemental guidelines or advisories with respect to the counting of ballots and/or other matters relating to the Rules.**

Following the publication of the Rules, the Monitor and the UAW will confer to draft language amending the UAW Constitution to adopt the direct election system at the next Convention (scheduled for July 25-28, 2022). It is anticipated that two additional sets of amendments to the UAW Constitution will be proposed to the delegate body: one which requires a traditional run-off election by mail of the top vote-getters in any given race in the event no Candidate has secured a majority of the votes, and one which requires the use of ranked-choice voting ballots (also known as an "instant run-off"), which establishes the winner by voters ranking the Candidates in order of their preference. The Rules have been drafted to encompass both potential systems. The Convention delegates

will select between the two sets of amendments, and the Rules will subsequently be amended to reflect such decision.

*     *     *

## ELECTION TIMELINE

The following schedule shall apply to the 2022 nominations and elections of the UAW International Officers:

**January 31, 2022**

- Convention Call letter issued to all Local Union Officers and members; the beginning of delegate election season.

**March 4, 2022**

- Administrative Letter Volume 61, No. 2 issued to all Local Unions, providing detail to members regarding the process for election of delegates to the Thirty-Eighth UAW Constitutional Convention.

**May 11, 2022**

- Issuance of Rules for the 2022 UAW International Officer Election.
- Date on which prospective candidates for the 2022 UAW International Officer Election may begin to seek vetting by the Monitor to run for office pursuant to Section 3-2 of these Rules.

**May 13, 2022**

- First version of mailing list from UAW central database (LUIS) provided by the UAW to the Election Vendor to be used by Candidates seeking to communicate with the members.  The mailing list will continue to be updated, as discussed below.

**July 25-28, 2022**

- Thirty-Eighth UAW Constitutional Convention to be held at Huntington Place in Detroit, Michigan, at which Convention delegates will nominate individuals to run for UAW International Office.

**September 2022**

- 2022 UAW International Officer Election Candidate Forum(s).

**September 1, 2022**

- Deadline for all Slate Declaration Forms to be submitted to the Monitor.

**September 16, 2022**

- Updated mailing list from LUIS provided by UAW to the Election Vendor.

**October 7, 2022**

- Updated mailing list from LUIS provided by the UAW to the Election Vendor.

**October 17, 2022**

- First formal mail distribution of mail-in ballots distributed to the electorate.

**October 18, 2022**

- Final mailing list from LUIS provided by the UAW to the Election Vendor.

**October 24, 2022**

- Second formal mail distribution of mail-in ballots distributed to additional potential voters.

**October 25, 2022**

- First official date when requests for replacement ballots may be made directly to the Election Vendor.

**October 31, 2022, at 5 p.m. EDT**

- Deadline by which members must be in "good standing" in order to have their vote counted in the 2022 UAW International Officer Election ("Voter Eligibility Deadline").

**November 7, 2022**

- Deadline by which Local Unions must update LUIS with updated member status as of Voter Eligibility Deadline.

**November 9, 2022**

- Final voter eligibility status as of Voter Eligibility Deadline provided by the UAW to the Election Vendor.

**November 11, 2022**

- Final date by which replacement ballots can be requested from the Election Vendor.
- Final formal mail distribution of mail-in ballots to any eligible voters not previously sent a ballot.

**November 18, 2022**

- Recommended last day by which members should place their ballots in the mail to best ensure their arrival by the November 28, 2022 deadline.

**November 28, 2022, at closing time of designated U.S. Post Office or Postal Facility**

- Deadline for all ballots to be received by the designated U.S. Post Office or Postal Facility.

**November 29, 2022, at 9 a.m. EST**

- Tabulation begins.

**As soon as practicable after November 29, 2022**

- Once the tabulation of ballots is complete, the unofficial results will be announced by the Monitor.
- If the delegates at the 2022 Constitutional Convention choose to adopt a ranked-choice (instant run-off) system, the Candidates who received a majority of the vote will be announced as the unofficial victors of their races at this time.
- If the delegates at the 2022 Constitutional Convention choose to adopt a traditional run-off system, with separate balloting, there will be a run-off election ("Run-Off Election") for any race where no Candidate received a majority of the vote.  The Candidates who did receive a majority of the vote will be announced as the unofficial victors of their races at this time.

**December 2022 (date to be determined)**

- All official victors of International Officer races by this time will be sworn in.
- If the delegates at the 2022 Constitutional Convention choose to adopt a traditional run-off system with separate balloting for any unresolved offices, where no Candidate received a majority of the votes, a Run-Off Election will be held to determine the winner.

**<u>Run-Off Election</u>**

If the delegates at the 2022 Constitution Convention choose a traditional run-off election system, the Monitor will issue specific rules and a timeline for a Run-Off Election, should one be necessary.  It is anticipated that the Run-Off ballots will be distributed no later than January 2023, and the ballots returned and counted in February 2023.

\* \* \*

## SECTION 1:  Role and Authority of the Monitor

### 1-1     Responsibility of the Monitor

The Monitor will supervise all phases of the 2022 UAW International Officer Election under the authority given to him by the Consent Decree.  Specifically, as the Consent Decree sets forth, because the Referendum vote will result in a change to a direct election system for the UAW's International Officers, "the Monitor, in consultation with the UAW, shall develop all election rules and methods for the election of members of the IEB during the period of oversight."[8]  The Monitor is also directed to "help implement any such change."[9]  Further, the Consent Decree requires the Monitor to "ensure that the election of the members of the IEB of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and [the Consent Decree]."[10]  Accordingly, the Monitor has the authority to interpret, to enforce, and, when necessary, to amend the Rules in consultation with the UAW; and consistent with these Rules, to take all necessary actions to ensure a fair, honest, open, and informed 2022 Election.  The Monitor and his designees and representatives shall at all times discharge their duties and responsibilities faithfully and impartially.

### 1-2     Appeals and Protests

Traditionally, the UAW served as the final internal authority resolving issues and adjudicating protests in UAW elections.[11]  The Consent Decree requires the Monitor to issue these Rules, and to then ensure that they, along with other constitutional and legal requirements, are complied with by those participating in the 2022 Election.  Under that authority, the Monitor will continue in the role that he played during the Referendum in which he stood in the shoes of the UAW to hear and adjudicate allegations and protests of potential violations of the Rules or the other constitutional or legal standards for which

---

[8] Consent Decree ¶ 13.

[9] *Id.* at ¶ 45.

[10] *Id.* at ¶ 45.

[11] While the Consent Decree has granted authority to the Monitor over the 2022 Election, the Monitor is not overseeing the election of delegates to the 2022 Constitutional Convention.  For the delegate elections, the UAW retains its traditional responsibilities supervising the delegate elections and, as such, remains the final authority on those elections.

the Monitor is required to ensure compliance.[12]  The Consent Decree makes clear that the authority bestowed upon the Monitor for the 2022 Election is not intended to "eliminate or limit a union member's right to seek relief from the Secretary of Labor and OLMS pursuant to the LMRDA, 29 U.S.C. § 401, *et seq.*"[13]  Thus, an aggrieved member has the right to file a protest with the Secretary of Labor and OLMS for potential violations of the LMRDA, <u>after</u> exhausting such "internal" remedies.[14]  The Rules related to internal complaints and protests to be resolved by the Monitor are set forth in Section 9 below.

*      *      *

---

[12] Ultimately, the goal is for the UAW to take the predominant role in overseeing election protests.  The UAW's existing protest system, however, is not adequately designed for the type of election being conducted as a result of the Referendum.  Thus, the Rules currently allocate responsibility for election protests to the Monitor, who will work with the UAW to devise a system for adjudicating protests which can then be implemented with oversight by the Monitor in a manner that meets the Monitor's obligations to ensure compliance with the Consent Decree.

[13] *Id.* at ¶ 13.

[14] According to Section 402(a) of the LMRDA, a "member of a labor organization – 1. who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or 2. who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers).  The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide."

## SECTION 2:  Overview of the 2022 UAW International Officer Election

**2-1      2022 UAW International Officer Election**

In accordance with the Consent Decree and the results of the Referendum, the International Officers of the UAW will no longer be elected by Convention delegates, but rather through a Union-wide direct election in which UAW members will cast votes for nominated Candidates.  The 2022 UAW International Officer Election will be conducted by secret mail-in ballot.  An election vendor selected by the UAW in consultation with the Monitor (the "Election Vendor") will oversee all mailings, collections, and tabulations of the secret ballots.[15]

The offices to be filled through the 2022 UAW International Officer Election will include the offices of one (1) International President, one (1) International Secretary-Treasurer, three (3) International Vice Presidents, and all nine (9) Regional Director positions (previously defined as the "International Officers").  The term of office for all elected International Officers shall be from the date of their swearing-in after the 2022 UAW International Officer Election through the next election cycle and swearing-in.  Along with other amendments to the UAW Constitution, Article 10, Section 3 of the UAW Constitution shall be amended to reflect that the term of office will no longer run from Convention to Convention but rather for approximately four years from the date of swearing in to the swearing in of the International Officers elected upon the subsequent four-year election cycle.  The International Officers whose terms would have ended in July 2022 under the prior delegate election system will have each of their terms extended until the swearing in of the respective International Officers who prevail in the 2022 UAW International Officer Election.

Section 3 of these Rules sets forth the qualifications for running for office in the 2022 UAW International Officer Election, both under the UAW Constitution and the Consent Decree.  As discussed therein, an individual seeking International Office will be considered a bona fide candidate ("Bona Fide Candidate" or "Candidate") as defined by Section 452.80 of Title 29 of Code of Federal Regulations, by submitting to the Monitor a

---

[15] Multiple vendors may be needed to undertake the various tasks necessary to facilitate the 2022 UAW International Officer Election.  Nonetheless, the term "Election Vendor" is utilized throughout the Rules even if it may ultimately refer to multiple vendors.

sworn declaration on certain qualifications to hold International Office, which can be done at any time prior to or immediately following the Convention. An individual's Bona Fide Candidate status will not be final until vetted by the Monitor team.[16] Even a Bona Fide Candidate will not be assured of a place on the ballot in the 2022 Election unless they are officially nominated at the Convention. If an otherwise qualified and vetted member is not nominated at the Convention, then they will no longer be a Candidate. As described herein, Candidates will have certain rights of access to enable them to conduct an effective election campaign. These opportunities apply <u>only</u> to Candidates as defined herein.

As discussed in Section 6-3 below, each Candidate shall have the right to seek nomination, be nominated, campaign, and appear on the ballot for an International Officer position as a member of a slate of Candidates ("Slate"). No Candidate shall be compelled to run as a member of a Slate.

## 2-2    Nominations

As discussed in Section 3-3 of these Rules, the nominations process for prospective Candidates in the 2022 UAW International Officer Election shall proceed as provided by the UAW Constitution. Specifically, delegates to the Constitutional Convention will nominate Candidates for International Office by proposing a Candidate at the appointed time during the Convention. A nominated Candidate or, if not present, an authorized representative, will accept or decline the nomination.

If neither the nominated Candidate nor an authorized representative is present to accept or decline the nomination, it will be the responsibility of the individual nominating the prospective Candidate to contact the prospective Candidate and instruct the prospective Candidate to contact the presiding officer of the Convention to formally accept or decline the nomination within 24 hours. The presiding officer, in turn, will immediately notify the Monitor. Only (1) if the nomination is accepted; (2) the Candidate meets the qualifications to hold office (*see* Section 3-1); and (3) the Candidate is successfully vetted as satisfying those qualifications (*see* Section 3-2), will the nominee's name be placed on the official ballot.

---

[16] As discussed below in Sections 3-2 and 4-7, prospective Candidates who have submitted Candidate Declarations which, on their face, meet the criteria for eligibility set forth in Section 3-1, will be presumed Bona Fide Candidates and immediately be afforded all relevant access rights set forth in Section 4.

**2-3      Election Process**

Following completion of the nominations process at the UAW Convention, the 2022 UAW International Officer Election shall be conducted by mail-in ballot.  Soon after these Rules are issued, the Monitor will post on the Monitor's website and provide to be posted on the UAW website an informal notice of the 2022 UAW International Officer Election and an overview of relevant information.  Through the voter eligibility deadline of **October 31, 2022,** the UAW shall regularly provide information from the UAW's centralized membership database (also known as the Local Union Information System or "LUIS") regarding voter eligibility.  The Local Unions are responsible for ensuring that LUIS is up to date with information regarding their respective members' eligibility.

The Election Vendor will be responsible for printing, distributing, collecting, and tabulating ballots.  Ballots and instructions for voting will be mailed to members starting on or about **October 17, 2022**.  Voters are strongly encouraged to place their ballot in return mail no later than **November 18, 2022,** but ballots <u>must</u> be received through the mail by no later than **November 28, 2022**.  The next day, on **November 29, 2022, at 9 a.m. EST**, the tabulation process will commence with observers present as prescribed by these Rules.

As of the time of the issuance of these Rules, it is expected that, in connection with their ratification of constitutional amendments related to the 2022 Election, the delegates to the 2022 UAW Constitutional Convention will resolve the question of how to account for the possibility that no Candidate in any given race reaches a majority of votes in their favor—specifically, whether to use ranked-choice (instant run-off) voting ballots, or to hold a traditional Run-Off Election, which would require a second wave of printing, mailing, collection, and tabulation of ballots.  These Rules contemplate both scenarios.  If the delegates choose a traditional Run-Off Election system, a Run-Off Election will be held for any office for which the victor does not receive a majority of votes.  Any Run-Off Election will be held on a schedule to be set by the Monitor in consultation with the UAW.

**2-4      Notice of Election**

Federal law and the UAW Constitution require that "not less than fifteen days prior to the election, notice thereof shall be mailed to each member at his last known

home address." 29 U.S.C. § 481(e); UAW Constitution, Article 38, Section 2. For purposes of the 2022 Election, the "official" notice will be fulfilled by the mailing of the ballot itself. Prior to the mailing of the ballot, the Monitor shall also post an informal notice of the 2022 Election on the Monitor's website, and the UAW shall post the same informal notice on their website. Local Unions shall either post the informal notice or a link to the UAW's or Monitor's website regarding the Election.   The informal notice shall (1) provide members with key information concerning the 2022 Election, including the nomination process, schedule, and other relevant information; and (2) direct members to the websites, where they may view these Rules and obtain up-to-date information regarding the 2022 Election. The informal notice will be posted in both English and Spanish. The Monitor may provide, in conjunction with the UAW, additional notice of election as may be deemed appropriate to fully inform all Union members of the 2022 Election.

**2-5      Eligibility to Vote**

All UAW members in good standing as of **October 31, 2022,** are eligible to vote in the 2022 UAW International Officer Election, including members who are part-time workers, reinstated members, and retired members. Further details on eligibility to vote detailing what constitutes "good standing" are provided in Section 5 of these Rules. Ballots will be mailed to all potentially eligible voters, but if any member who is not in good standing with the UAW as of October 31, 2022, receives and returns a ballot, their vote will not be counted.

**2-6      Printing and Handling of Ballots**

Ballots shall be printed in a legible manner, with clear instructions on how to properly fill them out.   Ballots and return ballot envelopes shall contain encodings or other markings to prevent forged or otherwise fraudulent ballots from being used, voted, or counted in the 2022 Election.   Ballots shall state the offices open for election and the number of Candidates to be elected for each office.

The names of all Candidates for International President, International Secretary-Treasurer, and International Vice President shall be printed on all ballots. The names of all Candidates for Regional Director from a particular UAW Region shall be printed on the ballot for all members within that Region.   In sum, each ballot will have candidates for six offices in total (President, Secretary-Treasurer, Vice Presidents (3), and Regional Director).   If Candidates are running with other Candidates on a Slate, the identification

of the associated Slate will be referenced next to, below, or above the Candidates' names. Further rules regarding Slates are set forth in Section 6-3 of these Rules.

The ballots shall be printed by the Election Vendor.  Ballots for members of Local Unions in Puerto Rico shall be printed in both Spanish and English.

## 2-7    Mailing of Ballots

The Election Vendor shall mail ballot packages from a specified location or locations in the United States to all members eligible or potentially eligible to vote in the 2022 Election and residing in the United States and its territories.  Ballot packages shall be mailed from a separate, single location in Canada to all members eligible or potentially eligible to vote in the 2022 Election and residing in Canada.  Each mail ballot package shall contain a ballot (providing notice of the 2022 Election and containing instructions on how to fill out the ballot), a secret ballot envelope, a pre-paid return envelope containing the member's name and address and other data sufficient to identify the member, and instructions regarding the procedure for mail ballot voting.

Candidates and/or their observers shall be permitted to inspect the ballot mailing list, as described below in Section 7.  Should any Candidate or observer claim that a member eligible to receive a ballot has been omitted from the list, such person shall be sent a ballot.  Similarly, any member requesting a ballot via the Monitor or Election Vendor will be sent one.  As described in Section 2-11 below, supplemental guidelines will be issued prior to the vote count regarding the counting of such ballots if cast.

## 2-8    Casting of Votes

Once mail ballot materials are received by a UAW member, the member shall cast their vote, place the ballot in the secret ballot sleeve (without making any mark on that sleeve), place the secret ballot sleeve in the pre-paid return envelope, and then place the return envelope in the mail.  Any ballot cast without full identification information included on the return envelope or received after the deadline for receipt of ballots will not be counted.  No write-in votes will be counted.

## 2-9    Receipt of Ballots

The Election Vendor shall obtain and secure a site in the United States for the counting of ballots (the "Secure Site").  Ballots shall be transported from the receiving

U.S. Post Offices or Postal Facilities by the Election Vendor to the Secure Site with security protocols established by the Election Vendor and approved by the Monitor in consultation with the UAW. Mail ballot packages returned as undeliverable will also be transported by the Election Vendor to the Secure Site using the same security protocols. The Election Vendor shall make all reasonable efforts to verify and correct the addresses on the ballot packages returned as undeliverable and re-mail them to the respective UAW members prior to the ballot receipt deadline so that they may have the opportunity to cast a ballot.

Any member who does not receive a ballot should contact the Election Vendor or a representative of the Monitor immediately if they wish to receive one. Any member who spoils or loses a ballot should contact the Election Vendor or a representative of the Monitor immediately if they wish to obtain a replacement ballot. The Election Vendor shall immediately send such person a ballot package, regardless of any question(s) concerning the individual's eligibility to vote. Candidates' observers shall be provided access to the process for distributing replacement ballots. As described in Section 2-11 below, supplemental guidelines will be issued prior to the vote count regarding the counting of such ballots if cast.

All ballots must be received by the designated U.S. Post Office or Postal Facility by the time that facility closes on **November 28, 2022.**

## 2-10   Verification of Voter Eligibility

Prior to commencement of the ballot count, the Election Vendor shall verify the eligibility to vote of each person who cast a ballot in the 2022 Election, in accordance with Section 5 of the Rules.

## 2-11   Counting of Ballots

The Election Vendor shall begin counting the ballots on or about **November 29, 2022, at 9 a.m. ET.** All ballots shall be counted by the Election Vendor under the direct supervision of the Monitor in coordination with the UAW. **The Monitor in coordination with the UAW will issue supplemental guidelines prior to the vote count detailing the rules and procedures for the vote tabulation process.**

**2-12    Observers**

Each Candidate for International Office in the 2022 UAW International Officer Election and each full or partial Slate may observe or may designate others to observe the process for nomination and election of the International Officers, in accordance with Section 7 of these Rules.

**2-13    Invasion of Ballot Secrecy**

No person or entity shall limit or interfere with the right of any UAW member to vote, including, but not limited to, the right to independently determine how to cast their vote, the right to mark their vote in secret, and the right to mail the ballot themselves.  No person or entity may encourage or require a UAW member to mark their ballot in the presence of another person or to give their ballot to any person or entity for marking or mailing.  No person or entity may demand or require any UAW member to give their ballot to any other person or entity, or demand or require any UAW member to mark their ballot in the presence of any other person.  And moreover, no UAW member may give their ballot, marked or unmarked, to any other person or entity, except a voting UAW member may give a completed and sealed ballot to an immediate family member (as long as that immediate family member is not a Candidate) in order to mail it back to the Election Vendor, or give a ballot to the Monitor in the course of an investigation if requested.  A voting UAW member may also have someone assist them in marking the ballot in the member's presence if necessary due to disability or illiteracy.

Any violation of this rule may result in disciplinary charges, referral of the matter to appropriate law enforcement authorities for consideration of action under law, or such other remedy as the Monitor deems appropriate.  The instructions for balloting included in ballot packages shall contain these prohibitions and shall urge members to vote and return their ballots promptly.

**2-14    Announcement of the Election Results**

The counting of the ballots will commence on **November 29, 2022, at 9 a.m. EST**, and continue until complete.  When complete, the unofficial 2022 Election results will be announced as follows:  If the delegates at the 2022 Constitutional Convention choose to adopt a ranked-choice (instant run-off) voting system, the UAW and the Monitor shall immediately announce the unofficial election results to all Candidates and observers present upon completion of the vote count.  If the delegates at the 2022 Constitutional

Convention choose to adopt a traditional run-off system, the UAW and the Monitor shall immediately announce the unofficial election results for any race where a Candidate received a majority of the vote. As described below, in that case, a Run-Off Election will be held for the races where no one has received a majority of the vote. In either event, the Monitor and the UAW shall also post the unofficial election results on their respective websites as soon as is practicable. Announcement of the unofficial election results does not constitute certification, which is required before the results are official.

**2-15    Certification of the Election Results**

After the 2022 Election process is completed in accordance with the Rules, and where no timely objections to the 2022 Election are raised, or upon completion of the internal protest and appeal procedure, including the conclusion of any investigation the Monitor may undertake with respect to the 2022 Election, the Monitor shall certify the 2022 UAW International Officer Election results, post a copy of the 2022 UAW International Officer Election certification on the Monitor's website, and provide a copy of the 2022 UAW International Officer Election certification to be posted to the UAW website.

**2-16    Installation of Officers**

The 2022 Election results will be presumed valid pending certification by the Monitor as described in Section 2-15 above, and/or any final decision by the Secretary of Labor and OLMS, should they be asked to review any aspect of the 2022 Election.[17] Accordingly, newly elected UAW International Officers shall be installed on or about a date to be determined in or about **December 2022** within 7 days of the unofficial announcement of the results, irrespective of the final certification of the 2022 Election.

If a Run-Off Election is required, those International Officers elected in the Run-Off Election shall be installed on or about a date to be determined in **February 2023** within 7 days of the unofficial announcement of the Run-Off Election results, irrespective of the final certification of the 2022 Election.

---

[17] Pursuant to Section 402 of the LMRDA, "[t]he challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide."

**2-17   Run-Off Election**

If the delegates at the 2022 Constitutional Convention choose a traditional run-off election system, the Monitor, in consultation with the UAW, will issue specific rules and a timeline for a Run-Off Election, should one be necessary.  It is anticipated that any Run-Off ballots will be distributed no later than January 2023, and the ballots returned and counted in February 2023.

**2-18   Preservation of the Election Materials**

All ballots, including those that are challenged, voided, spoiled, or unused; all ballot envelopes; and all copies of all tally sheets shall be preserved for one (1) year following the date the tabulation is complete and the unofficial results announced and posted.  In the event that violations of the Rules or applicable law occurred that may have affected the outcome of the 2022 Election, the Monitor shall not certify the 2022 UAW International Officer Election results and shall immediately order that a rerun election be held and, in consultation with the UAW, promptly promulgate a schedule for a rerun election.

*       *       *

**SECTION 3:  Nomination of Candidates for the UAW International Officer Election**

**3-1     Candidate Eligibility (Qualifications) Under the UAW Constitution, Federal Law, and the Consent Decree**

Subject to the below limitations, a member is eligible to run for International Office in the 2022 UAW International Officer Election if **they have been a member of the UAW in good standing for twelve (12) consecutive months preceding the first day of the 2022 Convention, and continue in good standing thereafter.**[18]   Additionally, per official constitutional interpretation by the International President, retired members are not eligible to run for International Union Office.[19]   *See* Interpretation of International President R. Curry, attached as Exhibit A.

The UAW Constitution identifies several additional limitations on eligibility to run for UAW International Office:

- No member shall be eligible to serve as a UAW International Officer if they are a member of or subservient to any political organization, such as the Communist, Fascist, or Nazi Organization which owes its allegiance to any government other than the United States or Canada, directly or indirectly. *See* UAW Constitution, Article 10, Section 7.

- No member shall be eligible to serve as a UAW International Officer if they are affirmatively engaged in the promotion, implementation, furtherance,

---

[18] The Constitution currently provides that "[n]o member shall be nominated or elected as an elective officer of the International Union, as set forth in Section 1 of this Article, who has not been in continuous good standing for a period of one (1) year preceding the date of nomination."  Article 10, Section 6.  Among other amendments to the Constitution, this will be amended to require good standing for 12 months preceding the Convention (at which nominations will occur) as well as continuing in good standing thereafter (during the period preceding the vote).

[19] On March 24, 2022, the International President issued an opinion that the UAW Constitution does not allow retired members to hold, and thus may not run for, International Office.  *See* Article 13, Section 8 of the UAW Constitution.  On April 1, 2022, the IEB agreed with the International President's analysis and adopted the interpretation of the UAW Constitution.  *See* Article 12, Section 6 of the UAW Constitution; *see also* Monitor's Second Status Report, *United States v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America* (May 11, 2021), No. 20-cv-13293, at 12-17.

or support of organized workplace rackets, such as numbers, bookmaking, etc.  *See* UAW Constitution, Article 10, Section 8.

- No member shall be eligible to serve as a UAW International Officer if they have affirmatively engaged in: the promotion, implementation, furtherance or support of any other union or collective bargaining group with the purpose or intent of supplanting the UAW, or any subordinate body thereof, as the recognized collective bargaining agent; in efforts to decertify the UAW or any subordinate body thereof as the recognized collective bargaining agent; or aiding or abetting an employer or another Union to thwart organizing efforts by the UAW to become the bargaining agent.  *See* UAW Constitution, Article 10, Section 12.

- No member shall be eligible to serve as a Regional Director unless they have worked at least 90 working days in a workplace(s) located within the region, and whose Local Union must be located within the region.  *See* UAW Constitution, Article 10, Section 2.

Finally, pursuant to Paragraph 46 of the Consent Decree, one must meet the following criteria to run for UAW International Office:

- The individual must not have been found guilty of fraudulent or corrupt activity, either in court or in a UAW disciplinary proceeding.  The Monitor may excuse fraudulent or corrupt activity determined to be *de minimis*.

- The individual's election must not violate the Consent Decree's injunctive prohibitions.

- The individual's election must not be a crime involving the establishment or operation of a labor organization, employee benefit plan, labor-management cooperation committee, or voluntary employee beneficiary association.  This requirement means, among other things, that the individual must not have been convicted of a crime that would make them ineligible to hold union office under federal labor law.  *See* 29 U.S.C. § 504.

Section 504 of the LMRDA prohibits individuals convicted of certain crimes from holding union office or employment or serving in other prohibited capacities for a period of 13 years after such conviction or after the end of such imprisonment, whichever is later.[20]  Several types of crimes will bar a person from serving in prohibited capacities, including, but not limited to, the following examples:

- Non-labor union specific criminal offenses, specifically: murder, assault with intent to kill, assault that inflicts grievous bodily injury, rape, arson, extortion, burglary, grand larceny, robbery, bribery, embezzlement, or violation of narcotics laws;[21]

- Violations of Title II or Title III of the LMRDA, which include knowingly making a false statement of material fact or failing to disclose a material fact in any labor organization report, labor organization officer or employee report, or other report required by the LMRDA; willfully failing to file a required report; willfully violating the recordkeeping requirements in Title II or Title III; willfully making a false entry in labor organization records or other documents required to be kept by the LMRDA or willfully concealing, withholding or destroying such records; willfully and improperly transferring funds from a trusteed local to the parent body imposing the trusteeship; or willfully counting the votes of delegates from a trusteed local under certain circumstances;

- Any felony involving abuse or misuse of an individual's position or employment in a labor organization or employee benefit plan in order to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan;

- Conspiracy or attempt to commit any of the above crimes, any crime in which any of the above crimes is an element, or any crime that is equivalent

---

[20] Please review 29 U.S.C. § 504 for a description of the crimes for which conviction or imprisonment for such conviction within the last 13 years would prevent a member from holding office.  *See also* https://www.dol.gov/agencies/olms/laws/labor-management-reporting-and-disclosure-act#t4.

[21] *See supra* footnote 20.  Regarding narcotics offenses, the U.S. Drug Enforcement Administration Office of Diversion Control publishes on its website (http://www.deadiversion.usdoj.gov/schedules/index.html) a list of controlled substances, which explains whether a controlled substance is or is not a narcotic drug.

to the above crimes (for example, obtaining money by false pretenses in certain cases can be equivalent to the listed crimes of grand larceny or embezzlement).

## 3-2    Vetting Procedure by the Monitor

The Consent Decree specifically requires the Monitor to evaluate the eligibility of an individual to run for International Office under the UAW Constitution and the Consent Decree itself (both sets of requirements set forth in Section 3-1 above).[22]  On the constitutional qualifications—including the individual's standing within the Union—the Monitor will request that the UAW promptly determine whether a Candidate meets these criteria.  If necessary, the Monitor may take additional steps to verify the constitutional eligibility of a Candidate, but will presume that the UAW's initial determination is accurate and will rely on the UAW and its data in formally verifying a Candidate's eligibility to run for office.  The Consent Decree further requires the Monitor to perform an additional assessment to confirm that the individual seeking International Office is otherwise qualified to run for that office, under the specific criteria contained therein.

Anyone seeking to run for UAW International Office may submit their information to the Monitor at any time following publication of these Rules, but no later than three (3) calendar days after nominations are made at the Convention, and must proceed through the following steps:

(a)    **Candidate Declaration Form.**    Available on the Monitor website at www.uawmonitor.com is a Candidate Declaration Form.  Any member wishing to be vetted for International Officer candidacy must review, execute, and submit the Candidate Declaration Form to the Monitor, under penalty of perjury, attesting to eligibility under the criteria set forth in Paragraph 46 of the Consent Decree and the UAW Constitution, and consenting to the Monitor's receipt and review of relevant information. Candidate Declarations may be submitted by email to UAWMonitor-Election@jenner.com, by mail to an address provided on the Candidate Declaration Form, or in person to members of the Monitor's Elections Team at the Convention.  As stated in the Candidate Declaration Form, the

---

[22] *See* Consent Decree ¶¶ 45-46.

member will have an ongoing obligation to update the Candidate Declaration Form if any information changes at any time prior to the conclusion of the 2022 Election or their swearing-in (if elected). A prospective candidate can be disqualified from running for International Office if the circumstances around their eligibility change or new information comes to light.

**An individual will be presumed to be a Bona Fide Candidate (as defined above in section 2-1 and in 29 CFR 452.80) if they meet the criteria for eligibility on the face of the Candidate Declaration Form.**

(b)     **Records Review.**  Upon receipt of an executed Candidate Declaration Form, the Monitor will (a) run a state and federal background check, relying on vendor services available to the Monitor; and (b) obtain the Candidate's disciplinary record, if any, from the UAW.  The Monitor may choose to seek additional files, including, but not limited to, records from any prior vetting, on a case-by-case basis.  The UAW will assess the prospective Candidate's eligibility under the UAW Constitution based on a review of Union records.  The UAW will promptly advise the Monitor of the prospective Candidate's eligibility and provide supporting data if requested.

(c)     **Interview and Follow Up.**  The Monitor may choose to interview any prospective Candidate.  The Monitor may also choose to consult with DOJ or other government agencies about individual candidates, and will do so on a case-by-case basis.

(d)     **Determination.**  Based on the foregoing, the Monitor will verify whether a prospective Candidate meets the criteria necessary to run for office:

(1)     In the event that the prospective Candidate is not disqualified, the Monitor will communicate that decision to the Candidate.  As discussed in more detail in Section 4-3, **the Monitor's determination that a Candidate has been vetted and is not disqualified is in no way an "endorsement" of the Candidate and may not be advertised as such.**

      (2)     An otherwise Bona Fide Candidate who has been cleared through the Monitor's vetting process but is not nominated at the Convention will not appear on the ballot and will not be eligible to participate in the UAW International Officer Election. Only nominated Candidates will appear on the ballot.

      (3)     In the event the Monitor prohibits any prospective candidate from running for International Office, the Monitor will communicate that decision to the prospective candidate, the UAW, and DOJ in writing. The Monitor shall make available to the disqualified prospective candidate, upon request, the "papers or other material relied upon by the Monitor," which will include the materials used by the UAW in its review of constitutional eligibility, if applicable. Such information will be kept confidential by the Monitor if the prospective candidate ceases to pursue nomination and does not appeal the Monitor's determination. A prospective candidate may appeal the Monitor's determination to the Court-appointed Adjudications Officer. *See* Consent Decree ¶ 47. The appeals process for such a determination by the Monitor is set forth in Section 9 of these Rules.

      (4)     As set forth above, the Consent Decree makes clear that nothing in the Consent Decree—including the role of the Monitor and the Adjudications Officer in the eligibility process—is intended to "eliminate or limit a union member's right to seek relief from the Secretary of Labor and OLMS pursuant to the LMRDA, 29 U.S.C. § 401, *et seq.*"

The Monitor will not opine on the suitability of any prospective Candidate beyond the criteria set forth above and does not have the ability under the Consent Decree to disqualify a prospective Candidate who is under investigation but has not yet been found guilty of wrongdoing. The Monitor's only authority with respect to the eligibility of members to run for office to determine whether the prospective Candidate is disqualified under the objective prohibitions indicated above. The Monitor reserves the right to seek

to decertify any candidate, even after that candidate is successfully vetted, if new information comes to light or circumstances change.

**3-3      Nominations Process**

During the scheduled and publicized time on the agenda at the UAW Convention, the presiding official will ask if there any nominees for the Office of International President.   Any delegate seeking to nominate an individual to run for International President will step up to the microphone and propose that individual in a nominating speech that will be limited to five minutes with no exception.  Once all of the nominations for the Office of International President are complete, the presiding official will close the nominations.    Following completion of nominations for International President, nominations shall be polled in reverse order of nomination for acceptance or declination. Nominees who are present, or their authorized representatives, will be permitted to accept or decline the nomination, but no acceptance or declination speeches will be permitted.   If neither the nominated Candidate nor an authorized representative is present to accept or decline the nomination, it will be the responsibility of the individual nominating the prospective Candidate to contact them and instruct the prospective Candidate to contact the presiding officer of the Convention to formally accept or decline the nomination within 24 hours.  The presiding officer, in turn, will immediately notify the Monitor.  If the prospective Candidate or their authorized representative does not formally accept the nomination within 24 hours, the nomination will be automatically declined.

This process will continue for each of the remaining UAW International Offices. The nominations for individuals to run for Regional Director positions will be held in the same manner during Region-specific meetings.  An individual being nominated to run for Regional Director and their nominating delegate must be a member of a Local Union in the Region in question.

On February 22, 2022, the IEB voted to change the composition of Regions 4 and 8, and to create a new (rechartered) Region 6 comprising the states of Washington, Oregon, California, Nevada, Idaho, Utah, Arizona, Hawaii, and Alaska.[23]  The state of

---

[23] *See* https://uaw.org/uaw-international-executive-board-form-new-region-fast-growing-western-states/.

Colorado will be moved from Region 8 to Region 4.[24]   The IEB determined that the nominations for the Region 6 Regional Director will occur at the July 2022 Constitutional Convention and the election for that position will occur with the elections for all other International Officer positions.[25]   The newly established Region 6 will exist on its own once the Regional Director for Region 6 is sworn into office.[26]   For purposes of the 2022 UAW International Officer Election, only members of Local Unions in states that will be in the new Region 6 will nominate individuals for, and vote for, the Region 6 Regional Director position; only members of Local Unions in states that will be in Region 4 after the re-composition will nominate individuals for, and vote for, the Region 4 Regional Director position; and only members of Local Unions in states that will be in Region 8 after the re-composition will nominate individuals for, and vote for, the Region 8 Regional Director position.

### 3-4    Post-Convention Finalization of Candidate Roster for the Ballot

After the UAW Convention, the process for finalization of the roster of International Officer Candidates on the official ballots will begin.   Any nominated individual whose qualification for International Office under the Consent Decree and the UAW Constitution (as summarized in Section 3-1 above) has not yet been vetted must formally seek to be vetted no later than three (3) calendar days after nominations are made at the Convention, and initiate the procedure set forth in Section 3-2 of these Rules. To the extent that a nominated Candidate wishes to be part of a Slate, and has not yet been designated as such, Slate Declaration Forms for the 2022 UAW International Officer Election must be submitted to the Monitor by no later than **September 1, 2022**, as set forth in Section 6-3 of these Rules.

*        *        *

---

[24] Feb. 22, 2022 IEB Meeting.
[25] *See* https://uaw.org/uaw-international-executive-board-form-new-region-fast-growing-western-states/.
[26] *See* https://uaw.org/uaw-international-executive-board-form-new-region-fast-growing-western-states/.

## SECTION 4:  Campaigning and Access

**4-1      Candidates**

The criteria for qualifying to run for International Office is set forth in Section 3-1 of these Rules, as is the process for becoming a Candidate.  As described herein, Candidates will have certain rights of access to enable them to conduct an effective election campaign, but these opportunities apply only to Candidates as defined herein.

**4-2      Credentialed Representatives**

Each Candidate or Slate may authorize up to five (5) members in good standing to serve as their Credentialed Representative for the purpose of acting on behalf of the Candidate or Slate when the Candidate or Slate is not present or is otherwise unable to do so for themselves.  Authorization shall be given on a form issued by the Monitor (*see* Section 13).  The Credentialed Representative shall have the same rights as are permitted the Candidate and Slate in this Section.

**4-3      Campaigning in General**

For the purpose of these Rules, "campaigning" is defined as affirmatively advocating for or against the election of a particular Candidate or Slate.  Campaigning can be conducted through oral or written speech.  Campaigning can be conducted directly or by facilitating or managing others who campaign and engage in related activities.

The Monitor will not endorse or otherwise support any Candidate or Slate running for International Office in the 2022 Election.

**4-4      Freedom to Advocate**

All Union members shall have the right to participate in campaign activities, including the right to openly support or oppose any Candidate or Slate and to make personal contributions to any Candidate or Slate, subject to the limitations described in Section 8 of these Rules.

Union members will be permitted to post or distribute leaflets, literature, or flyers; to solicit support; to conduct rallies; to hold fundraising events; or to engage in similar activities, except as otherwise prohibited or limited by any employer's rules, the UAW Constitution, these Rules, Title IV of the LMRDA, or other state or federal law.

Members will also be permitted to distribute campaign literature and to otherwise solicit support for a Candidate or Slate outside a meeting hall before, during, and after a Union meeting.  With respect to campaigning at the workplace, campaigning members must comply with all employer rules or policies.  Any discrimination by an employer between or among Candidates or Slates in permitting access to its property shall constitute an improper contribution to the Candidate(s) or Slate(s) who benefit from such discrimination and a potential Rules violation for the Candidate(s) or Slate(s).

Any threats, intimidation, retaliation, penalty, discipline, or improper interference or reprisal of any kind, or any similar conduct is strictly prohibited, and reports of such violations shall be investigated by the Monitor.

## 4-5     Retaliation and Discrimination

Retaliation or threat of retaliation by the UAW and/or its Local Unions; any officer, employee, or member of the UAW and/or its Local Unions; any employer; or other person or entity against a Union member, officer, or employee for exercising any right guaranteed by this or any other Section of the Rules is prohibited.  This specifically includes each member's freedom to advocate for or against any Candidate or Slate, to run for or seek to run for International Office as a Candidate and/or to join any Slate, to donate funds to any Candidate or Slate, and to vote for or against any Candidate or Slate.  Any rules or practices of any caucus or group within the Union that are contrary to this provision will be considered a violation of these Rules.  Any and all appropriate disciplinary remedies may be imposed individually or collectively to groups, Slates, or other individuals, on a case-by-case basis, for such violation.

The UAW and/or its Local Unions; any officer, employee, or member of the UAW and/or its Local Unions; and any employer shall not discriminate or permit discrimination in favor of or against any Candidate or Slate in conjunction with its meetings or granting access to resources.  Any discrimination between or among

Candidates or Slates in permitting access to its property shall constitute an improper contribution to the Candidate(s) or Slate(s) who benefit from such discrimination and a potential Rules violation for the Candidate(s) or Slate(s).

**4-6     Prohibition on Use of Union/Employer Resources**

Federal law prohibits the use of any union or employer resources to promote the candidacy of any person in a union election, and Union officers and employees may not campaign for a Candidate on time paid for by the Union. *See* LMRDA, Title IV, Section 401(g). This prohibition on the use of union or employer resources in candidate elections extends beyond funds to include things such as (but not limited to) computer equipment and networks, facilities, vehicles, paid time, and contact lists or systems that were created or compiled as part of official duties or functions. This prohibition extends to resources of the UAW or *any other union*, including the national/international, state association, local, and any other level. This prohibition extends to resources of any employer, whether or not they employ union members. This prohibition includes, by way of example, the following non-exhaustive list of expenditures:

- **Union or employer funds.** Union or employer funds cannot be used to pay for any expenditures in connection with advocating for or against any Candidate or Slate. This includes, but is not limited to, expenditures relating to mailings (whether postal or email), phone calling or text banking, hard copy literature distributed in any form, merchandising, promotional events or items, and advertising buys in any medium or jurisdiction.

- **Union or employer equipment**. Union or employer equipment (including copiers, computers, printers, telephones, cellular telephones, email, etc.), office space, office supplies, websites, newsletters, social media, membership lists, facilities, cash, or any other financial or in-kind resources cannot be used to advocate for or against any Candidate or Slate.

- **Union or employer information and data.** Data possessed by the Union or employers including, but not limited to, mailing lists, calling lists, worksite lists, and certified delegate lists <u>do</u> constitute resources of the Union or employers. They are excepted from the Title IV prohibition only under the

circumstances as described below in Sections 4-7, 4-8, 4-9, 4-10, and 4-11, provided that equal access to these resources is afforded to each Candidate and Slate as permitted by the Rules.

- **Union or employer time.** Advocacy for or against any Candidate or Slate— through oral or written speech—cannot be conducted on Union or employer time (including during Union meetings or training events). The sole exception to this rule is set forth below in Section 4-12 regarding a Candidate seeking access to Local Union meetings for campaigning. As described therein, this will be permitted, but other Candidates for the same office who are not members of that Local Union must be afforded an equal opportunity to access the Local Union meeting to campaign.

The Rules <u>do not</u> prevent Union officers and employees from advocating for or against a Candidate or Slate outside of working hours. Further, campaigning during paid vacation, paid lunch hours or breaks, or similar paid time off is also <u>not</u> a violation of this Section. Any official or employee doing so should be careful to document that these efforts are outside of working hours in order to be able to justify these efforts if there is a future inquiry.

For the purposes of the Rules, "incidental" advocacy is not prohibited, such as responding to a direct question or statement regarding the 2022 Election, or correcting a misstatement. However, if such a response is protracted or otherwise interferes with the work of the Union, it may be deemed as advocacy using Union resources.

This list of prohibitions is not meant to be exhaustive.

To avoid any possibility of confusion, the Rules around advocacy for or against a Candidate or Slate set forth above <u>do not</u> apply to conversations around potential constitutional amendments or the Rules themselves.

**4-7    Right to Access to the Global Mailing List**

All Bona Fide Candidates, including Slates of Candidates, before or after being nominated at the UAW Convention, will have the opportunity to apply to make reasonable use of the list of the last known names, mailing addresses, and email addresses

of all members maintained by the Union (the "Global Mailing List," referring to the entire list and any subset thereof). This includes individuals who are presumed to be Bona Fide Candidates based on the face of their submitted Candidate Declaration, pending factual determination by the Monitor. The Global Mailing List will be maintained by the Election Vendor and updated as per a schedule to be set forth by the Monitor at a later date. Requests from Candidates to use the Global Mailing List will be accepted by the Election Vendor at any time after the Election Vendor has commenced its work on this Election.

At no time will the Global Mailing List be released to any individual member or group. All mailings—whether postal mail or email—will be facilitated by the Election Vendor. Processes and procedures for utilizing membership mailing lists through the Election Vendor will be established. All costs for mailings will be the responsibility of the requesting Candidate or Slate of Candidates, and the Election Vendor will apply a uniform pricing schedule for all mailings associated with the 2022 Election.

The Global Mailing List may not be used for any purpose other than advancing the Candidate's or Slate's campaign for nomination and/or election. With the exception of Candidates and Slates of Candidates (pre- or post-nomination), no persons or entities will be permitted access to membership lists at any time, for any purpose. There shall be no discrimination in favor of or against any Candidate or Slate of Candidates with respect to the foregoing.

**4-8    Phone Banking and Mass/Robo Texting**

The Monitor has received requests for campaign access to include UAW members' telephone numbers to the extent they are included on the LUIS database. Campaigning involving telephone calls and text messages will be permitted to the extent both feasible and lawful under various federal laws around telemarketing, including the Telephone Consumer Protection Act of 1991. The Monitor is looking into these issues, and additional guidance on this topic will follow.

**4-9    Right to Inspect Worksite Lists**

All Candidates shall have the right to obtain a current list of all sites, with corresponding addresses, where any and all Union members work. Requests to inspect or make notes from worksite lists shall be made to the Local Union leadership (including

the Local Union Recording Secretary) and shall be honored within a reasonable period. For Candidates seeking Regional Director offices, they may only obtain worksite lists covering members of those Local Unions within the jurisdiction of the regional area in which they are a Candidate.  For Candidates seeking Regional Director offices in Region 4 or 8 or the to-be-rechartered Region 6, they may only obtain such materials covering members of those Local Unions which *will be* within the jurisdiction of the applicable regional area as it will exist once the new Region 6 has been chartered, *see* Section 3-3 herein.  Such inspection is not to be used for any purpose other than campaigning for UAW International Office.

**4-10    Right to Inspect Global Mailing List**

All Candidates or Slates of Candidates have a right to inspect the Global Mailing List, as described further in Section 7-1 of these Rules.  No membership list may be used for any purpose other than to advance the Candidate's campaign for nomination and/or election.  There shall be no discrimination in favor of or against any Candidate with respect to the foregoing.

**4-11    Right to Access Certified Delegate List**

All Candidates or Slates of Candidates have the right to request and receive from the Office of the UAW Secretary-Treasurer a list of the names and Local Union numbers of all Convention delegates.  All Candidate or Slate of Candidates have the right to make reasonable use of the list of the mailing/email addresses of all Convention delegates.  At no time will the address list for Convention delegates be released to any individual member or group.  All such mailings—whether postal mail or email—will be facilitated by the Election Vendor as per the same process and procedures set forth for the Global Mailing List referenced in Section 4-7 above.

**4-12    Right to Access Membership Meetings**

The Local Union leadership is responsible for ensuring that the Local Union complies with the Rules governing access by Candidates to regular meetings of a Local Union and for maintaining order at such meetings.  With respect to access to Candidates, a Local Union shall not discriminate or permit discrimination in favor of or against any Candidate in conjunction with speaking at its meetings or otherwise.  This requirement

shall apply not only to formal presentations by or on behalf of Candidates but also to informal campaign activities, such as, for example, comments on Candidates during meetings, literature distribution at meetings, literature distribution tables, etc.

Each Candidate for International Office has the right to request from any Local Union a list of the dates, times, and places of its regularly scheduled general or special membership meeting(s), excepting meetings for limited purposes such as voting on contracts or strikes, handling of grievances, etc.  Such requests shall be made in writing to the Local Union leadership and shall be honored within a reasonable period of time. A Local Union need not allot time for campaigning during any of its meetings.  However, if campaigning during such meetings is permitted, the Local Union shall notify all Candidates for the positions for which such campaigning will be permitted of the opportunity to speak at least five (5) days prior to the meeting and shall divide the allotted time equally between those Candidates (or their Credentialed Representatives) who request an opportunity to speak.

## 4-13   Candidate Forums

The Monitor shall have the authority to conduct voluntary International Officer Candidate forums.  The forums shall be conducted to promote the fair, honest, open, and informed participation of the Union membership in the election of the International Officers.

The Monitor shall conduct at least one Candidate forum for all nominated Candidates for the position of International President.  The Monitor may conduct other Candidate forums for Candidates nominated for any of the other International Officer positions.  Candidates will be encouraged but not required to participate.

The forum for Candidates nominated for the position of International President shall be held in September 2022.  The date, time, location, and format of the forum shall be determined by the Monitor, after consultation with the nominated Candidates or their representatives.  The Monitor shall ensure that the forum is recorded and that the recording is posted on the Monitor website, and will provide the forum for posting on the website of the UAW.

The Monitor shall broadly publicize notice of the forum to the Union membership in advance of the forum, and shall distribute information about the forum and the recording of the forum to the Union membership.  The manner of distribution shall be determined by the Monitor, after consultation with the Union and the nominated Candidates or their Credentialed Representatives.  In making this determination, the Monitor shall consider how best to use available resources and technology to reach the broadest possible audience of the Union electorate at a reasonable cost.

**4-14**   *Solidarity* **Magazine**

All nominated Candidates or Slates of Candidates for International Office shall be presented the opportunity to have campaign literature in the summer 2022 edition of *Solidarity* magazine, which shall be mailed to all members in September 2022.  The details around specific rules related thereto, including the apportionment of space for each of the nominated Candidates or Slates of Candidates, will be issued in advance of publication, including the deadline for nominated Candidates to have their submissions printed in the summer 2022 edition of *Solidarity* magazine.

**4-15**   **UAW Websites and Other UAW Communication**

Each nominated Candidate or Slate of Candidates has the right to have campaign literature published on the UAW website pursuant to these Rules.  The campaign literature shall be accessible through a prominent link that reads "2022 International Election Campaign Literature" and appears on the homepage of the UAW website.  All campaign literature to be published on the UAW websites shall be submitted no earlier than August 15, 2022.  Campaign literature will be published within three (3) business days from the time it is received.  The details around specific rules related thereto, including the apportionment of space for each of the nominated Candidates or Slates of Candidates, will be issued well in advance of the August 15 date.  Local Unions may publish Candidate campaign literature on their websites, but if they do so, they must provide equal space for all Candidates in that race.  Local Unions may also link to the UAW website.  If a Candidate or Slate of Candidates wishes to request modification of its online campaign literature it may do so, and the content will be changed as soon as is reasonably possible.

No publication or communication financed, sponsored, or used, directly or indirectly, by the UAW and/or its Local Unions (including communications on any website or social media site) may be used to advocate for or against any Candidate or Slate of Candidates.   The UAW and its Local Unions are permitted to issue communications containing **<u>factual</u>** information about the 2022 Election.  To the extent there are any questions or concerns about the application of this rule, they may be advanced to the Monitor.

*      *      *

## SECTION 5:  The Electorate

**5-1    Rules for Determining Voter Eligibility**

All UAW members in good standing as of **October 31, 2022**, are eligible to vote in the 2022 Election, including members who are part-time workers, reinstated members, and retired members (the "Electorate").  *See* LMRDA, Title IV, Section 401(e); UAW Constitution, Article 38, Section 10(a).  A member's dues obligation must be current in order to be in good standing and be eligible to vote.  This means that a member must not be delinquent in the payment of dues as of **October 31, 2022**.  A member in good standing whose dues have been checked off by the employer may not be disqualified from voting because of any delay or failure by the employer to send the dues to the Local Union.  A member who has failed to pay dues in a timely manner can lose good standing without any notice.

Members who work only part time but pay the required dues may not be denied the right to vote.  Reinstated members who have regained good standing lost because of a previous dues delinquency cannot be restricted from voting.  Any member in good standing who is retired shall be entitled to a "retired membership status" which, without being required to pay membership dues during the period of such retirement, shall entitle them to all of the privileges of membership (with certain enumerated exceptions), including the right to vote in this 2022 UAW International Officer Election.  *See* UAW Constitution, Article 6, Section 19.

To have a vote counted in the UAW International Officer Election, however, members must ensure that they are in good standing by **October 31, 2022, at 5 p.m. EDT**.  To be clear, only the votes of members in good standing as of the deadline will be counted.  All Local Unions will have the responsibility of updating the UAW central database as to updated member standing **no later than November 7, 2022, at 5 p.m. EST.**

**5-2    Verification of Voter Eligibility**

The Election Vendor will prepare a database of eligible members for all ballot counts (the "Election Control Roster").  Prior to the commencement of any count of ballots, the eligibility to vote of each member who cast a ballot shall be verified by the Election Vendor.  As referenced in Section 2-11 above, the Monitor, in consultation with

the UAW, will issue supplemental guidelines prior to the vote count detailing the procedures around creating and utilizing the Election Control Roster.

\*       \*       \*

## SECTION 6:  Ballots and Slates

**6-1     Ballots**

Ballots will be mailed out to the Electorate on **October 17, 2022**.  The ballots will include instructions which clearly state the manner in which members should mark their ballots.  Any Candidate shall submit in writing by email to the Monitor how they wish their name to appear on the ballot.  As described below, if a Candidate is a member of a Slate, there will be a designation of that Slate next to, below, or above the Candidate's name.

The Election Vendor will account for all ballots printed.  Adequate controls and safeguards will be adopted to protect the ballots, such as counting the number of ballots received from the printer, maintaining ballots in a secure place prior to use, and keeping control of ballots and the ballot box at all times on election day.  All used and unused ballots and other records pertaining to the 2022 Election will be maintained for one (1) year following the date the tabulation is complete and the unofficial results announced and posted.  Election records include voter eligibility lists, sign-in registers, tally sheets, and any other documents or records used in the nominations and election.

**6-2     Format of Ballot**

If the delegates at the 2022 Constitution Convention choose a traditional Run-Off election system, the ballots shall instruct the voter to vote for no more than the number of vacancies in the specified Office (which is one (1) for all the Offices except Vice President, which is three (3)).  If the delegates at the 2022 Constitutional Convention choose a ranked-choice (instant run-off) voting system, the ballots shall instruct the voters as to their option to rank the Candidates for each office, marking the Candidates in their order of preference.

**6-3     Slates**

Each Candidate shall have the right to seek nomination, be nominated, campaign and appear on the ballot for an International Officer position as a member of a Slate of Candidates.  No Candidate shall be compelled to run as a member of a Slate.  A Candidate

may associate themselves with more than one Slate, but they must provide notice that they intend to appear on multiple slates and receive written consent from each of the members of each Slate with which they plan to associate that they agree that the Candidate can do so, and they assume all the responsibilities for any and all Slates of which they are a member.

Any Candidate associating with more than one Slate must complete a Multiple Slate Affiliation Declaration Form (*see* Section 13). The number of Slate members shall not exceed a single Candidate for each open office (1 for International President, 1 for International Secretary-Treasurer, 3 for Vice President, and 1 for each of 9 Regional Director positions, totaling 14 Candidates).

To form a Slate, there shall be mutual consent between and among all Candidates running on the Slate. Such mutual consent shall be evidenced by the signing of a Slate Declaration Form (*see* Section 13) by all members of the Slate, providing the position that each Candidate seeks and the name of the Slate to be formed. Slate Declaration Forms for the 2022 Election shall be submitted to the Monitor at the earliest possible date but in no event later than **September 1, 2022**. Amended declarations may be submitted adding additional Candidates to the Slate, provided that the deadline of September 1, 2022 is met.

The Slate Declaration shall include the designation of a treasurer for the Slate who will be the point of contact for the Slate and have primary responsibility for any financial disclosures being submitted on behalf of the Slate. The Slate treasurer must be a member of the Union, but need not be a Candidate.

Should one or more members of a Slate be found ineligible to run, such ineligibility shall not affect the eligibility of remaining members of the Slate.

Since unanimity is required to be on a Slate, if a Slate of Candidates wishes to remove one or more previously-declared Candidates from the Slate, they may do so at any time by emailing the Monitor and copying all other members of the Slate. Similarly, if a candidate wishes to leave a Slate, they may do so in the same fashion. All Slate designations need to be finalized no later than September 1, 2022, as after that date, it should be presumed that the Ballot will reflect the Slate designations as of September 1, 2022.

**6-4     Prohibition of Binding Slates**

Notwithstanding the ability for Candidates to join Slates for the purpose of campaigning and recognition on the ballot, voters will not be required to vote for Candidates by Slate.  Instead, voters must vote for individual Candidates for the different offices, and accordingly may select Candidates from various Slates if desired.

*     *     *

## SECTION 7:  Inspection and Observers

### 7-1    Inspection by Candidates

Each Candidate has the right, once within thirty (30) days prior to the casting of ballots in any election in which they are a Candidate, to inspect a list containing the last known names and addresses of all members of the Union who are to participate in the 2022 Election (also referenced above as the "Global Mailing List").  The right of inspection does not include the right to copy or reproduce the list in any manner (including by taking a photograph of the list) but does include the right to compare it with a personal list of members.  The Union shall not, in any way, discriminate in favor of or against any Candidate with respect to access or use of the membership list.  *See* LMRDA, Title IV, Section 401(c); UAW Constitution, Article 37, Section 9.  Any request to inspect the Global Mailing List must be made via email to the Election Vendor, and it will be honored as soon as is practicable.

### 7-2    Observers

Each Candidate or Slate of Candidates shall have the right, at their expense, to have at least one (1) individual present to observe the printing, mailing, and counting of ballots.  *See* LMRDA, Title IV, Section 401(c); UAW Constitution, Article 38, Section 10(g). Only a member in good standing may serve as an election observer.  The Monitor reserves the right to limit the number of observers for each Candidate or Slate of Candidates. Candidates or Slates must inform the Monitor in writing by **September 1, 2022**, of the names of those individuals whom they have chosen to serve as observers for the printing and mailing of ballots; and by **November 1, 2022**, for those who will serve as observers for the counting of ballots.  The Monitor shall provide reasonable notice to all Candidates or Slates of the dates, times, and places of all events or activities which Candidates or Slates may have the right to observe.

### 7-3    Observation of Ballot Printing and Mailing

Observers shall be permitted to inspect the ballot prototype prior to printing and the printer's certification of the number of ballots printed.

Observers shall be permitted to observe the entire mailing process. Observers shall be permitted to accompany the ballots to the U.S. Post Office or U.S. Postal Facility and to observe the mailing of the ballots. Observers shall be permitted to be present at the time(s) when those ballots returned as undelivered are picked up from the prescribed U.S. Post Office or U.S. Postal Facility and when the envelopes containing those ballots are inspected and counted. Observers shall further be permitted to be present when the cast ballots are picked up from the U.S. Post Office or U.S. Postal Facility and to accompany the transfer of such ballots to the location where they are to be counted. Notice shall be given to all Candidates of the times of such mail ballot pick-ups.

**7-4      Observation of Vote Count**

Observers shall be permitted to observe the election count. Observers shall be permitted to be present at the Secure Site. Observers may challenge the eligibility of any voter to vote and offer evidence in support of that challenge. Observers shall not interfere with the Monitor, members of the Monitor team, or the Election Vendor in their performance of duties, and must comply with all safety protocols issued by the Monitor, including those related to Covid-19. The Monitor may limit the number of observers otherwise permitted for each Candidate where security, space limitations, or other considerations so require, and may expel and bar any observers who do not comply with these rules. All Candidates and Slates shall be treated without discrimination.

The right to observe includes the right to inspect the opening and setup of the counting machine(s) before the count of the ballots commences and to observe the verification of the eligibility of members who have cast ballots; the determination of eligibility of those members whose right to vote is challenged; the opening of the returned ballot envelopes; the count of the votes; the recording of the final vote count; and the counting of the unused, voided, and spoiled ballots.

*      *      *

## SECTION 8:  Campaign Contributions and Disclosures

**8-1     Overview**

Section 8 of these Rules, which governs campaign contributions and political donations related to and in connection with the 2022 UAW International Officer Election, applies to Candidates, Slates of Candidates, and any other individual or group seeking to raise, donate, and/or expend resources in connection with the 2022 UAW International Officer Election (a "Covered Party").  **Funds raised by or donated to Candidates, Slates of Candidates, or Covered Parties can be used only for bona fide expenses related to the 2022 UAW International Officer Election and for no other purpose (or, with respect to leftover campaign funds, treated as set forth in Section 8-10 below—but at no time shall such funds be used for personal use).**

**Funds raised, donated, or spent in connection with the 2022 UAW International Officer Election (including campaign contributions to a Candidate or Slate of Candidates or political donations raised or spent by a Covered Party, as defined below in Section 8-2 of the Rules) must comply with the requirements of Title IV of the LMRDA.**  Under Title IV of the LMRDA,

> *No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this title.  Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.*

LMRDA, Title IV, Section 401(g).  Put simply, federal law prohibits the use of any union or employer resources to promote the candidacy of any person in a union election.  These Rules apply to all contributions received and all expenditures spent by a Candidate or Slate of Candidates seeking nomination or election as a UAW International Officer that they intend to expend in support of their candidacy, or all funds raised, donated or spent

by a Covered Party in connection with the 2022 Election, even if such funds were received prior to the effective date of the Rules.[27]

Candidates, Slates of Candidates, and Covered Parties are strictly liable to ensure that any funds received, raised, donated, or spent are permitted under these Rules. Ignorance by a Candidate, a Slate of Candidates, or a Covered Party that union or employer funds were used to promote a candidacy or otherwise influence the 2022 Election shall not constitute a defense to an allegation of a violation of these Rules. It is the responsibility of the Candidate, Slate of Candidates, or Covered Party when raising, donating, or spending such funds to determine that:

- the contribution/funds came solely from the identified individual or entity disclosed to the Monitor (*see* Section 8-8 below), and not from any other person or entity, whether or not that person or entity is otherwise prohibited from making campaign contributions under these Rules (the **"True Source Rule"**); and

- the contribution/funds were collected, raised, donated, or spent voluntarily and for the unambiguous and express purpose of either (1) supporting a Candidate or Slate of Candidates in the 2022 UAW International Officer Election; or (2) furthering a political cause or goal in connection with the 2022 Election (the **"True Purpose Rule"**).

Regarding the application of the True Source Rule, the use of a "straw man" to mask the true origin of campaign contribution is strictly prohibited. Furthermore, any individual or Covered Party attempting to facilitate such an effort which explicitly violates these Rules will be sanctioned.

Previously-collected funds may be used only for campaign purposes if they comply with all the requirements set forth in this section, including the True Source Rule and True Purpose Rule. Any Candidate, Slate of Candidates, or Covered Party seeking to utilize previously collected funds will be required to trace the specific funds to the

---

[27] Previously-collected funds which run afoul of the True Purpose and True Source Rules will be prohibited from use during the 2022 Election, but any Candidate, Slate of Candidates or Covered Parties who collected or spent these prohibited funds prior to the issuance of these Rules will not be deemed to have violated the Rules for purposes of sanction under Section 8-11 or Section 10 of these Rules.

particular individual or entity and date of contribution, and to attest that the sole purpose of that contribution by that individual on that date was to support a Candidate or Slate of Candidates, or to further a political cause or goal in connection with the 2022 UAW International Officer Election.  These Rules may impact the ability of Candidates, Slates, or Covered Parties to use multi-purpose funds, such as some of the so-called "flower funds," in connection with the Election.  Such funds are not categorically prohibited, but the individuals seeking to utilize them in connection with the Election must demonstrate complete adherence to the True Source Rule and True Purpose Rules, or the funds in question will not be usable.  As noted below in Section 8-12, any question regarding whether previous funds may be used should be addressed to the Monitor at UAWMonitor-Election@jenner.com.

A Candidate, Slate of Candidates, or if an individual, a Covered Party,  may spend as much of their own money on their campaign or the campaign of their Slate as the Candidate(s) or Covered Party(ies) wish(es), provided that the Candidate, Slate of Candidates, or Covered Party complies with the requirements found in this Section, including the True Source Rule and the disclosure requirements.  For the purposes of these Rules, if a Candidate, a Slate of Candidates, or a Covered Party has control over previously-collected funds, including, but not limited, to funds collected through "flower funds" or other multi-purpose funding campaigns, they are not considered the Candidate's, Slate of Candidates', or Covered Party's own money.

If a Candidate, Slate of Candidates, or Covered Party receives a prohibited contribution related to the 2022 Election, it must be returned promptly.  In addition, within three days of the return of any contribution, the Candidate, Slate of Candidates, or Covered Party returning the contribution shall then provide to the Monitor a certification (the "Prohibited Contribution Return Form," *see* Section 13), identifying the original source and date of the contribution being returned, the amount of the returned contribution, the person to whom or entity to which the contribution was returned, and the date on which the contribution was returned.

**8-2    Definition of Campaign Contribution**

The term "campaign contribution" means any direct or indirect contribution of money or other thing of value where the purpose, object, or foreseeable effect of that

contribution or the expenditure thereof is to influence, positively or negatively, the election of a Candidate or a Slate of Candidates for an International Officer position.

The term "political donation" refers to any direct or indirect contribution of money or other thing of value where the purpose, object, or foreseeable effect of its contribution or the expenditure thereof is to influence or impact the 2022 UAW International Officer Election.

Examples of campaign contributions or political donations include, but are not limited to:

- Contributions of money, securities, or any material thing of value;

- Payments to or subscriptions for fundraising events of any kind (*e.g.*, raffles, dinners, rallies, parties, etc.);

- Discounts in the price or cost of goods or services, except to the extent that commercially established discounts are available to the customers of the supplier;

- Extensions of credit, loans, and other similar forms of finance, except where obtained in the regular course of business of a commercial lending institution and on such terms and conditions as are regularly required by such institutions;

- Payment for the personal services of another person, or for the use of building or office space, equipment or supplies, or advertisements through the media; or

- Performance of personal services or the making available for use of space, equipment, supplies, or advertisements. The term "campaign contribution" or "political donation" does not include the performance of services by a volunteer during the volunteer's personal, free time, provided the donation is truly voluntary and not coerced, and the donation is not funded indirectly by a labor organization or an employer.

**8-3     Prohibition of Contributions from Labor Organizations**

Labor organizations, including, but not limited to, the UAW and its Local Unions, whether or not an employer, may <u>not</u> contribute any monies or anything of value to any campaign of any Candidate for UAW International Officer or any Slate of Candidates, or to any Covered Party raising, donating, and/or expending funds in connection with the 2022 Election, except as provided for in the Rules.  This prohibition extends beyond strictly monetary contributions made by a labor organization to include a ban on in-kind assistance, including the use of the labor organization's stationery, equipment facilities, and the labor of union employees, personnel, or agents, unless the union is compensated for such use by the Candidate, Slate of Candidates, or Covered Party and unless all Candidates,  Slates of Candidates, and Covered Parties are provided equal access to such goods and services and reasonable notice of their availability.  In no case shall any Candidate, Slate of Candidates, or Covered Party use the Union's official stationery or any stationery that appears to be or is intended to appear to be the Union's official stationery.

The Monitor will closely scrutinize all conferences, events, meals, gifts, and other giveaway items purchased with Union funds which could be construed as campaign-related in purpose.  Union funds must <u>not</u> be used to purchase any merchandise that is distributed to members that is branded with the name or otherwise identifying information of a Candidate, Slate of Candidates, or Covered Party.  Any such previously purchased merchandise may not be distributed unless the candidate's name or otherwise identifying information is removed.

**8-4     Prohibitions of Contributions from Employers**

No employer may contribute money or anything of value to the campaign of any Candidate or Slate of Candidates, or donate to a Covered Party, in connection with the 2022 Election.  No Candidate, Slate of Candidates, or Covered Party shall accept or use any monies or anything of value from any employer, representative of an employer, foundation, trust, or similar entity, in connection with the 2022 Election, except as specified below.

This prohibition is not limited to employers that have contracts with the Union; it extends to every employer, regardless of the nature of the employer's business, and includes, but is not limited to:

- any political action organization or labor organization that employs anyone;

- any union or labor organization (as referenced in Section 8-3);

- any nonprofit organization, such as a church or civic group, that employs anyone; and

- any law firm or professional organization that employs anyone.

This prohibition extends beyond strictly monetary contributions made by an employer to include a ban on in-kind assistance, including the use of employer stationery, equipment, facilities, and personnel, and applies even if the employer is unaware of the purposes for which its resources are being used.

## 8-5   Contributions for Legal and Accounting Services

Nothing prevents a Candidate, Slate of Candidates, or Covered Party from accepting legal or accounting services or financial support to pay for legal or accounting services provided that the services are obtained to assure compliance with applicable election laws, rules, or other requirements, or to secure, defend, or clarify their legal rights as a Candidate, and the services or financial support for such services are obtained from any person or entity other than:

- the Union or other organization or entity affiliated with, or within the jurisdiction of, the Union; or

- an "interested employer."

An "interested employer" includes any employer or association of employers which is (a) a party to a collective bargaining agreement with the UAW and/or a Local Union; (b)

the subject of an organizing campaign by the UAW and/or a Local Union; or (c) concerned with, liable to, affected by, or has some self-interest in litigation brought by a member against the UAW and/or a Local Union.

Contributions of this kind are permitted only to the extent that they are used for the reasons specified above and not for the purpose of promoting the candidacy of a Candidate or Slate, and to the extent that they comply with the campaign finance disclosure requirements described herein.

## 8-6    Maintenance of Financial Records

A Candidate, Slate of Candidates, or Covered Party must:

- open and maintain a designated bank account or accounts into which they shall deposit any money they intend to spend on a campaign or other election-related effort (the "Primary Campaign Account(s)" and a "Campaign Account(s)"). Such funds shall include only (a) contributions from non-prohibited sources that comply with both the True Source Rule and True Purpose Rule; and (b) any of the Candidate's personal campaign or election-related funds (or the personal campaign or election-related funds of the Candidates who are part of a Slate of Candidates), or to the extent a Covered Party is an individual, the Covered Party's personal campaign or election-related funds;

- to the extent they receive contributions toward fees for legal or accounting services performed in ensuring compliance with applicable election laws, rules, or other requirements or in securing, defending, or clarifying their legal rights as a Candidate, Slate of Candidates, or Covered Party as described above in Section 8-5, open and maintain a second bank account into which only such legal or accounting services funds shall be deposited (the "Legal or Accounting Services Account" and a "Campaign Account"). Such funds must not be comingled with the other campaign or election-related funds deposited into their Primary Campaign Account(s);

- pay for campaign expenditures of $100 or more by check or direct electronic transfer (such as Venmo, PayPal, Zelle, ApplePay, or similar service) drawn on the Campaign Account such that a record is automatically created of the expenditure being made from the Campaign Account; alternatively, a Candidate may use a credit card to pay for an expenditure of $100 or more if it is not feasible to pay the expenditure directly with a check or direct electronic transfer, but in that event, they must pay off that credit card expense using a check or electronic transfer to assure that the expenditure will be documented as a deficit on the Campaign Account; to be clear, all campaign expenditures must be made from the Campaign Account;

- maintain a separate written record of every contributor's name, address, contribution amount, Local Union number (if a UAW member), and the date of each contribution, without regard to the size of the contribution;

- maintain all receipts or comparable written records demonstrating how the value of each in-kind contribution was determined (any goods, services or in-kind contributions must be valued at fair market value); and

- maintain clear, complete, and accurate records for _all_ contributions received, expenditures incurred, and goods and services obtained (irrespective of dollar value) that demonstrate compliance with the Rules, the UAW Constitution, and applicable law.  Such records shall include copies of all cancelled checks, bills, receipts, deposit slips, bank account statements, and any other documentation to verify contributions, expenditures, and services.

For funds collected or spent _prior_ to the issuance of these Rules, each Candidate, Slate of Candidates, or Covered Party must do their best to collect or reassemble documentation fully consistent with the foregoing paragraphs.  To the extent that is not possible, each Candidate, Slate of Candidates, or Covered Party must nonetheless have

sufficient documentation to demonstrate compliance with the True Source and True Purpose Rules, or the funds in question will not be permitted to be used in connection with the 2022 Election.

## 8-7    Access to Books and Records by the Monitor

The Monitor has complete and unfettered access to, including the right to make copies of, all books, documents, accounts, correspondence, files, data compilations, and other financial records of a Candidate, Slate of Candidates, or Covered Party.   A Candidate, Slate of Candidates, or Covered Party must produce such material within twenty-four (24) hours of a written request by the Monitor.

## 8-8    Disclosure Statements

A Candidate, Slate of Candidates, or Covered Party must file with the Monitor monthly campaign contribution and political expenditure disclosure statements (the "Campaign Financial Disclosure Form," *see* Section 13).[28]   For a Candidate or Slate of Candidates, these forms are due to the Monitor (or, by designation, the Election Auditor) (1) within two weeks of the date the Candidate submits the Candidate Declaration and seeks official vetting by the Monitor pursuant to Section 3-2 of these Rules; and (2) by 5 p.m. ET on the first Friday of the month as follows:

- June 3, 2022
- July 1, 2022
- August 5, 2022
- September 2, 2022
- October 7, 2022
- November 4, 2022
- December 2, 2022

Additional disclosure dates may be required in the event of a Run-Off Election.   For a Covered Party, these forms are due no later than 5 p.m. ET on the above-referenced dates.

---

[28] For the purposes of executing the accounting function around the collection, analysis, and auditing of the Campaign Financial Disclosure Forms and the information contained therein, the Monitor will employ the use of one or more vendors with expertise in this area (the "Election Auditor").

Each Slate of Candidates and each Covered Party must designate a Treasurer to oversee that Slate's or Covered Party's election-related financials and to serve as the point of contact for the submission of financial disclosures and other requested information to the Monitor and/or Election Auditor.  A Slate may designate one if its Credentialed Representatives to serve as Treasurer.  Each individual Candidate must either serve as Treasurer of their own campaign or designate one of their Credentialed Representatives to serve as Treasurer of their campaign for purposes of such financial oversight and disclosures.

Each Candidate or Slate of Candidates shall have the right to inspect the campaign contribution and political expenditure disclosure statements of other Candidates, Slates of Candidates, and Covered Parties in redacted form.  The Monitor reserves the right to limit the personal identifying information on the redacted forms made available for inspection.

A Candidate, Slate of Candidates, or Covered Party must account for any contribution they receive, raise, donate, or expend in connection with the 2022 Election regardless of size and collect and preserve the same information required for disclosure as described below, and must provide it to the Monitor or Election Auditor immediately upon the Monitor's request (*see also* Section 8-7 above).

A Candidate, Slate of Candidates, or Covered Party must disclose the following information on their Campaign Financial Disclosure Form:

- **Contributions from individuals:** for every individual who has contributed $100 or more—either in one or more contributions whose total value equals or exceeds $100—the following information: the individual's name, address, and Local Union affiliation (if a UAW member); the date(s) and amount(s) of the contribution(s); and the manner in which the contribution was made (check, cash, money order, or some other means) or, if the contribution was of material or equipment, a description of the contribution and the value attributed to it.  Candidates, Slates of Candidates, and Covered Parties may also report contributions under $100 if they so choose.

- **Contributions from entities:** if an entity not otherwise prohibited by these Rules has contributed $100 or more—either in one or more contributions

whose total value equals or exceeds $100—the following information: the name, address, and Local Union affiliation (if a UAW member) of an official representative of the entity; the date(s) and amount(s) of the contribution(s); and the manner in which the contribution was made (check, cash, money order, or some other means) or, if the contribution was of material or equipment, a description of the contribution and the value attributed to it. Candidates, Slates of Candidates, and Covered Parties may also report contributions under $100 if they so choose.

- **Expenditures incurred or goods or services obtained:** for any expenditure incurred of $100 or more or for anything of value, good, or service obtained of $100 or more in value, the following information: the name and address of the person or business providing the good or service; the amount of the expenditure incurred or the value of the good or service obtained; the purpose of the expenditure incurred or the good or service obtained; the date the expenditure was incurred or the good or service received; and the manner in which the expenditure was made (check, electronic transfer, or, if necessary, credit card).

  *Important Note*: where a campaign (or Covered Party, in connection with the 2022 Election) receives anything of value, or obtains or uses a good or service, and the thing, good, or service was provided at other than fair market value, the difference between the fair market value and the amount actually paid is **a contribution**.  Such a contribution is permitted only to the extent provided for in these Rules and under federal labor law and, if permitted, must be disclosed in accordance with this Section.

- **Campaign account balances:** the cash balance of the Campaign Account(s) at the beginning and end of the reporting period, the total amount of contributions received, the total amount of expenditures incurred, and the total amount of goods and services obtained.

- **Account information:** for the Campaign Account(s), the following information: the name and address of the bank or other depository institution at which the account is maintained; the name of the account

signatories; the account numbers; and the date the account was opened and, if applicable, closed.

These disclosure requirements also apply to any contributions received, expenditures incurred, or services obtained by a Candidate, Slate of Candidates, or Covered Party to pay fees for legal and accounting services performed in ensuring compliance with applicable election laws, rules, or other requirements, or in securing, defending, or clarifying the legal rights of Candidates, Slates of Candidates, or Covered Parties as described above in Section 8-5.

Every Candidate, Slate of Candidates, or Covered Party is required to give to the Monitor and Election Auditor formal written consent to obtain all information concerning the depository account(s) (Campaign Account(s)) in which they have placed any contributions. The Monitor's and Election Auditor's access shall extend, but is not limited to, all financial statements, cancelled checks, and copies of deposited items.

## 8-9    Notice to Contributors and Sources of Funds

**It is <u>required</u> that Candidates, Slates of Candidates, and Covered Parties advise all prospective contributors prior to accepting any contribution that identifying information about them will be disclosed on the Monitor's Campaign Financial Disclosure Form and potentially made public. With respect to funds already collected at the time of the issuance of these Rules, Candidates, Slates of Candidates, and Covered Parties must similarly disclose to contributors that their information will be disclosed on the Monitor's Campaign Financial Disclosure Form and potentially made public, and give those contributors the option of withdrawing their contribution.** By accepting a contribution, Candidates, Slates of Candidates, and Covered Parties are exclusively liable for any potential claim raised by a contributor arising from the disclosure of their identifying information under these Rules.

It is strongly recommended that each Candidate, Slate of Candidates, and Covered Party notifies all prospective contributors of the limitations on campaign contributions prescribed by these Rules. It is thus strongly recommended that all campaign literature soliciting contributions specifically provide that no contributions by employers or labor organizations may be made or accepted. It is strongly recommended that similar disclaimers be issued at all fundraising events.

**8-10    Leftover Campaign Funds**

Funds remaining in the Campaign Account(s) of a Candidate, Slate of Candidates, or Covered Party at the time the certification of the 2022 Election shall be either (1) returned to contributors on a pro rata basis; (2) donated to a charity approved by the Monitor; (3) donated to the campaign of another Candidate or Slate of Candidates for the 2022 Election, including any Run-Off Election; or (4) maintained in the designated account for a future election.  Any Candidate, Slate of Candidates, or Covered Parties electing option #4 must maintain the funds in the designated Campaign Account until such time that the funds are transferred to another Campaign Account for use in connection with a future election.  Until that time, the Candidate, Slate of Candidates, or Covered Parties responsible for the funds must provide the Monitor with quarterly Campaign Financial Disclosure Statements accounting for the leftover funds in the designated Campaign Account, due on the 15th day of January, April, May, and October.

The Candidate, Slate of Candidates, or Covered Party may also take any of these approved actions prior to the certification of the 2022 Election, such as in the event that a Candidate fails to be nominated at the Convention, or fails to qualify for any Run-Off Election—but a Candidate, Slate of Candidates, or Covered Party shall certify how the campaign funds were disposed of no later than sixty (60) days after certification of the results of the 2022 Election, by completing a Leftover Campaign Funds Form attesting to the disposition (*see* Section 13).  A Candidate, Slate of Candidates, or Covered Party may apply for an extension of the date for disposal of the remaining funds upon a showing of good cause.

**At no time may leftover campaign funds be used for any personal purpose**.

**8-11    Remedial Action for Contribution or Disclosure Violations**

Any Candidate, Slate of Candidates, or Covered Party who fails to comply with the campaign finance and disclosure rules described herein is subject to disciplinary action by the Monitor, including, without limitation, restitution, fines, campaign suspension, or expulsion from the UAW.

**8-12    Questions on Campaign Contributions and Disclosure Rules**

We strongly encourage any Candidate, Slate of Candidates, or Covered Parties to contact the Monitor to clarify any issue with these Rules.  Any questions on interpretation of these Rules should be submitted to the Monitor in writing to our email election hotline ("Hotline") at UAWMonitor-Election@jenner.com.  A member of the Monitor team will respond directly, and the Monitor will also publish answers to FAQs on the Monitor website, at www.uawmonitor.com/elections.  Shortly after the publication of these Rules, the Monitor will host an online forum at which any interested party can ask questions about the campaign finance system, and a recording of that forum will be maintained on the Monitor's website.

\*       \*       \*

**SECTION 9:  Protest and Appeal Procedures; Remedies; Rerun Elections**

**9-1     Right to File Protest**

Any member of the Union in good standing may file a protest alleging noncompliance with these Rules, or appeal from any decision concerning a protest, free from any direct or indirect retaliation or threat of retaliation by any Union officer, member, Candidate, or Covered Party (as defined in Section 8-1 above), or by any other person or entity for such filing.  With respect to any protest, it shall be the burden of the protestor to present evidence that a violation has occurred.  No protest of any person or entity shall be considered if such person or entity, or anyone acting under their direction or control or on their behalf, caused or significantly contributed to the situation giving rise to such protest.

With the exception of rulings on candidate eligibility which can be appealed to the Adjudications Officer, as prescribed by the Consent Decree and set forth in Section 9-6 below, decisions resulting from the process set forth in these rules for adjudicating protests shall be "final" decisions for the purpose of any appeal that may be made the Secretary of Labor and OLMS pursuant to the LMRDA, 29 U.S.C. § 401, *et seq.*"[29]  In other words, irrespective of rulings made under these Rules, an aggrieved member can seek redress with the Secretary of Labor and OLMS, if they believe a violation of the LMRDA occurred, as long as they have exhausted the "internal" remedies of filing a complaint/protest with the Monitor.[30]  As set forth in Section 402(a) of Title IV of the LMRDA, "a member of a labor organization (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)."

---

[29] Consent Decree ¶ 13.
[30] For more information on the regulations governing the Secretary of Labor and OLMS's review of election issues, visit https://www.dol.gov/agencies/olms/compliance-assistance/interprative-manual/400-elections-and-removal.

**9-2    Pre-Election Protests**

Protests concerning conduct occurring on or before November 28, 2022 ("pre-election protests"), shall be filed with the Monitor and processed in the following manner:

(a)    Protests regarding alleged violations of the LMRDA or UAW Constitution occurring prior to the date of issuance of these Rules must be filed with the Monitor within the latter of thirty (30) calendar days of the date of issuance of these rules (*i.e.*, by June 30, 2022) or ten (10) calendar days of the day when the protestor becomes aware or reasonably should have become aware of the action protested, or such protests shall be waived as to internal adjudication (which in the 2022 Election is being overseen by the Monitor).

(b)    Except as otherwise provided in Section 9-2(d) below, all other pre-election protests must be filed within ten (10) calendar days of the day when the protestor becomes aware or reasonably should have become aware of the action protested or such protests shall be waived as to internal adjudication (which in the 2022 Election is being overseen by the Monitor).

(c)    Examples of appropriate Section 9-2(a) and (b) pre-election protests include, but are not limited to, the following:

(1)    Protests regarding eligibility or nomination of Candidates (however, an appeal by a prospective candidate who is determined to be ineligible for International Office and disallowed from running under Section 3-2 of these Rules must be appealed through the process set forth in Section 9-6 below and in paragraphs 47-48 of the Consent Decree, and if not appealed through that process may not be otherwise appealed or challenged).[31]

(2)    Protests regarding alleged failures to provide proper access to the membership, including, *e.g.,* alleged violations of these Rules

---

[31] Similarly, the United States or UAW may seek Court review of a decision by the Monitor or the Court-appointed Adjudications Officer to disallow or not to disallow a prospective candidate to run for International Office, pursuant to procedures set forth in the Consent Decree (*see* Consent Decree ¶¶ 48-49).

regarding access to worksite lists, to Union meetings and publications, or to employer premises;

(3)     Protests regarding alleged improper or inequitable treatment of the Candidate or their supporters by the Union, by any other labor organization or by an employer, including improper handling of the Candidate's request for mailings by the Union, improper or inequitable denial of access to the membership or to relevant information by the Union, by any other labor organization, or by an employer, and improper or inequitable aid or support, financial or otherwise, given or denied, a Candidate or their supporters by the Union, by any other labor organization, or by an employer;

(4)     Protests regarding alleged improper contributions, application or use of prohibited funds and resources under these Rules; and

(5)     Protests regarding alleged improper pre-election threats, coercion, intimidation, acts of violence, or retaliation for the exercise of rights protected by these Rules.

(d)     Protests concerning the nomination of a Candidate for International Office shall be filed no later than **August 5, 2022**, or such protests shall be waived as to internal adjudication (which in the 2022 Election is being overseen by the Monitor).

(e)     A protest must be filed in writing and sent by email to the Monitor.  The protest shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number, and Local Union affiliation.  The complainant bears the burden of presenting evidence of the alleged improper conduct.  Unlike with information provided to the Monitor confidentially—such as Hotline reports of misconduct or Rule violations—a formal election protest will not remain confidential.  The Monitor will provide a copy of the protest to any other person or entity whom the Monitor determines may be a subject of the protest decision or remedy.  The Monitor thus cannot provide anonymity to an individual or entity lodging a pre-election protest.  The person or entity whom the

Monitor determines may be a subject of the protest decision or remedy shall have the opportunity to present evidence and/or legal argument to the Monitor.

(f)   Within a reasonable amount of time after receipt of a protest, the Monitor shall either:

(1)   determine the merits of the protest and, if found meritorious, determine the appropriate remedy; or

(2)   defer making a determination until after the election and thereby treat the matter as a post-election protest pursuant to Section 9-3 below, as if such protest was filed on election day.

The Monitor will notify the following individuals or entities of the decision in writing: the complainant, the Union officials or members involved, any Candidate adversely affected, and any person or entity who is the subject of the decision or remedy.

(g)   If necessary to evaluate a protest, the Monitor may commence and conduct a protest hearing as soon as is practicable after notifying the parties involved.  The hearing will be conducted during business hours and may be adjourned by the Monitor as necessary to continue conducting the hearing during business hours.  The Monitor shall determine whether the hearing shall be conducted in person, by videoconference, or by telephone. The following individuals may participate in any hearing: the complainant and/or their representative; any representative of the Union official or member involved or their representative; any person or entity who is the subject of the decision or remedy and that person or entity's representative; and any other person who obtains the permission of the Monitor.  Within a reasonable amount of time after the conclusion of the hearing, the Monitor shall issue a written decision making findings of fact and ordering appropriate relief.

(h)   The Monitor shall have the authority to obtain, or to have the UAW obtain and provide, information necessary to assist in resolving any protest.  The

Union (including Local Unions and all other subordinate entities) and all members, Candidates, Slates of Candidates, and Covered Parties are required to cooperate with the Monitor.  Failure to cooperate with the Monitor (including making false statements to the Monitor or the Monitor's representative) may result in a disciplinary action brought under the Consent Decree[32] or such other remedy as the Monitor deems appropriate.

(i)     In the Monitor's discretion, the Monitor may excuse a missed deadline and choose to adjudicate a pre-election protest that does not abide by the foregoing filing deadlines.

## 9-3     Post-Election Protests

Protests concerning conduct occurring on or after November 29, 2022 ("post-election protests") shall be filed with the Monitor and processed in the following manner:

(a)     Protests regarding any alleged improper election day or post-election conduct or event must be filed by the later of:

(1)     fifteen (15) calendar days of the unofficial announcement of the applicable 2022 Election results; or

(2)     five (5) business days of the date when the protestor becomes aware or reasonably should have become aware of the action protested.

If the above time limits are not met, the protest shall be waived as to internal adjudication (which in the 2022 Election is being overseen by the Monitor).

(b)     Post-election protests shall be considered and remedied only if the alleged violation may have affected the outcome of the 2022 Election, except that any timely protest alleging improper threats, coercion, intimidation, or acts of violence or retaliation for exercising any right protected by these Rules may be considered and remedied without regard to whether the alleged violation affected the outcome of the 2022 Election.

---

[32] *See* Consent Decree ¶¶ 18(d), 29.

(c)      A protest must be filed in writing and sent by email to the Monitor.  The protest shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number and Local Union affiliation.  The complainant bears the burden of presenting evidence of the alleged improper conduct.  Unlike with information provided to the Monitor confidentially—such as Hotline reports of misconduct or Rule violations—a formal election protest will not remain confidential.  The Monitor must provide a copy of the protest to any other person or entity whom the Monitor determines may be a subject of the protest decision or remedy.  The Monitor thus cannot provide anonymity to a complainant lodging a post-election protest.  The person or entity whom the Monitor determines may be a subject of the protest decision or remedy shall have the opportunity to present evidence and/or legal argument to the Monitor.

(e)      Within a reasonable period of time after receipt of a protest under Section 9-3(a), the Monitor shall determine the merits of the protest and, if found meritorious, determine the appropriate remedy, and notify the following individuals or entities of the decision in writing: the complainant, the Union officials or members involved, any Candidate adversely affected, and any person or entity who is the subject of the decision or remedy.

(f)      In the Monitor's discretion, the Monitor may excuse a missed deadline and choose to adjudicate a post-election protest that does not abide by the foregoing filing deadlines.

## 9-4    Remedies

If as a result of any protest filed or any investigation undertaken by the Monitor with or without a protest, the Monitor determines that the Rules have been violated or that any other conduct has occurred which may prevent or has prevented a fair, honest, open, and informed election, the Monitor may take whatever remedial action that is appropriate.  Such remedial action may include, without limitation:

(a)      imposing fines and other monetary penalties;

(b)     placing a Candidate on the ballot or removing any Candidate from the ballot;

(c)     qualifying or disqualifying any member from seeking an International Officer position based on failure to meet the criteria set forth by the Consent Decree and the UAW Constitution and as set forth in Sections 3-1 and 3-2 of these Rules;

(d)     qualifying or disqualifying any member from voting;

(e)     altering or rescinding internal Union discipline;

(f)     reinstating or removing a member's good standing status;

(g)     ordering expulsion from the Union;

(h)     requiring or limiting access;

(i)     requiring the UAW and/or its Local Unions to mail or otherwise distribute, at its own expense, Candidate campaign materials;

(j)     mailing or otherwise distributing Candidate or Slate campaign materials;

(k)     requiring the UAW and/or its Local Unions to hold meeting(s) and prescribing the content of such meeting(s);

(l)     requiring the return of campaign contributions;

(m)     requiring reimbursement for goods or services;

(n)     requiring the UAW and/or its Local Unions to provide Candidate(s) or Slates with specific goods or services;

(o)     designating or altering the method(s) for nomination or voting;

(p)     establishing or altering the time, method(s), or location(s) for ballot counting;

(q)     qualifying persons other than a Candidate's representatives to serve as observers;

(r)     disqualifying observers;

(s)     ordering entry for observers and regulating the number and conduct of observers;

(t)     permitting or barring any delegate from participating in the Convention nomination process;

(u)     certifying or refusing to certify the results of any election;

(v)     ordering the rerun of any nomination or election, or any portion thereof, and requiring the Union or a Union member to pay for distribution of election materials;

(w)     conducting any nomination or election, or any portion thereof;

(x)     requiring immediate compliance with these Rules, or any portion thereof; and

(y)     requiring reinstatement of an employee or rescission of other disciplinary penalties.

## 9-5     Appeals in General

The adjudication of an election protest under these Rules shall be final within the context of the 2022 Election and its Rules (with the exception of decisions regarding eligibility to run for office as discussed in Section 9-6 below).  Nothing in these Rules is intended to limit or restrict any remedy available to a member from the Secretary of Labor

and OLMS pursuant to the LMRDA, 29 U.S.C. § 401, *et seq.*[33]  An aggrieved member can always seek redress with the Secretary of Labor and OLMS if they believe a violation of the LMRDA occurred, as long as they have exhausted the "internal" remedies of filing a complaint/protest with the Monitor.

## 9-6    Appeals of Prohibition from Running for Office

A decision of the Monitor that a prospective candidate is not eligible to run for International Office under the Consent Decree, UAW Constitution, and Section 3-1 of these Rules, and to disallow a person from running for International Office under the Consent Decree and Section 3-2 of these Rules, may be appealed by filing a written appeal to the Court-appointed Adjudications Officer, Gil M. Soffer of Katten Muchin Rosenman LLP, within seven (7) days of such action by the Monitor, pursuant to the process set forth in paragraphs 47 and 48 of the Consent Decree.

As set forth in paragraph 47 of the Consent Decree, the Monitor's decision, all papers or other material relied upon by the Monitor, and the papers filed or issued pursuant to this appeal procedure shall constitute the exclusive record for review by the Adjudications Officer.   The Adjudications Officer shall review the Monitor's determination under the standards applicable to federal appeals.   The Adjudications Officer shall issue a written decision within 10 days after he receives such appeal.  Upon application by the Adjudications Officer, the Court may extend the relevant time period in which the Adjudications Officer may render a decision for an additional 10-day period for good cause shown, but all appeals must be briefed in time for the Adjudications Officer to render a final decision at least three weeks in advance of "any election of International Officers."[34]  For the purposes of this Election, and to provide the person an opportunity to appeal the Adjudications Officer's ruling to the Court prior to the printing of ballots, any briefing in connection with any such appeal to the Adjudications Officer must be completed by **September 1, 2022**, except as the Adjudications Officer may extend such date as appropriate.

As set forth in paragraph 48 of the Consent Decree, if the Adjudications Officer upholds the Monitor's determination and disallows the prospective candidate from

---

[33] Consent Decree ¶ 13.
[34] Consent Decree ¶ 47.

running for International Office, the prospective candidate may further appeal to the District Court within 14 days of the Adjudications Officer's decision.  "The Monitor's or Adjudications Officer's decision(s), all papers or other material relied upon by the Monitor or Adjudications Officer and the papers filed or issued pursuant to this appeal procedure shall constitute the exclusive record for review.   The Monitor's or Adjudications Officer's decisions pursuant to the Consent Decree shall be reviewed by the Court under the substantial evidence standard set forth in 5 U.S.C. § 706(2)(E). Materials considered by the Monitor or Adjudications Officer but withheld from the appellant and the public, which contain sensitive information provided by a law enforcement agency may be submitted to the Court for *ex parte*, in camera consideration and may remain sealed if the Court authorizes sealing under the provisions of Eastern District of Michigan Local Rule 5.3.  The Court will make a determination as to the fairness of the disallowance process in light of the sensitive information provided by the law enforcement agency."[35]  Ideally, this process would conclude prior to the printing of ballots in late September 2022.

Also as set forth in paragraphs 48 and 49 of the Consent Decree, the UAW or the United States may seek the Court's review of a decision not to disallow a person to seek or obtain International Office.  Further, the UAW or the United States may seek the Court's review of the Monitor's or Adjudications Officer's decision to disallow, or not to disallow, a person to seek or obtain International Office.  Any such appeal to the Court must be filed within 14 days of the decision being appealed or such other time as the Court directs to permit a decision at least 14 days before the 2022 Election.[36]

Any decision by the Monitor regarding a person's candidacy which is not appealed in accordance with the terms of the Consent Decree and these Rules may not be appealed or otherwise challenged.[37]

## 9-7    Rerun Elections

Should the Monitor refuse to certify any election, the Monitor shall then immediately order that a Rerun election be held, including, if necessary, the rerunning of the nomination process.

---

[35] Consent Decree ¶ 48.
[36] Consent Decree ¶¶ 48-49.
[37] Consent Decree ¶ 48

*       *       *

## SECTION 10:  Election-Related Conduct Subject to Disciplinary Charges

### 10-1    Overview of Conduct

In addition to election related remedies, the Monitor may also bring (or refer) disciplinary charges for, or enjoin;

- election-related conduct that falls within the Monitor's charging authority under paragraph 29 of the Consent Decree, including direct or indirect obstruction or interference with the work of the Monitor or the Monitor's designee[38]; or

- the conduct enumerated below (which may constitute interference with the Monitor's work as defined under the Consent Decree and thus subject to discipline).

Any violations that may constitute violations of law may also be referred to the appropriate authorities, such as OLMS and DOJ.

### 10-2    Enumerated Examples of Misconduct

- **Collecting or inspecting ballots.**  Requesting, receiving, collecting, taking, completing, or inspecting another member's ballot, or requiring any member to complete a ballot in the presence of any other person.

- **Giving one's ballot to another person.**  Surrendering, providing, or giving an election ballot to any other person.  This provision does not prevent a member from mailing the ballot to the Election Vendor as provided for in the Rules or giving a completed and sealed ballot to an immediate family member for this purpose (as long as that immediate family member is not a Candidate) or giving a ballot to the Monitor in the course of an investigation.  It also does not prevent a UAW member from receiving

---

[38] *See* Consent Decree ¶ 18(d).

assistance from someone to mark the ballot in the member's presence if necessary due to disability or illiteracy.

- **False representations regarding ballot secrecy.**  Falsely representing, for the purpose of influencing any member's choice of Candidate(s) or decision to cast a ballot, that the balloting is not secret or that any person or entity is capable of determining how any individual member voted.

- **Campaigning with union or employer funds.**  Using union or employer funds in any way, except as permitted in these Rules, to promote any Candidate to be an International Officer.

- **Misusing the membership list.**  Misappropriating any Union membership or voter eligibility list or the information contained therein, or providing such list or information to any person for any purpose other than for conducting or participating in a campaign conducted pursuant to these Election Rules to be an International Officer.

- **Interfering with the exercise of political rights**.  Extorting, committing or threatening physical violence, or taking any adverse economic action against any member for supporting or failing to support any Candidate to be an International Officer or for the exercise or failure to exercise any political right guaranteed under the Rules, the UAW Constitution, federal labor law, state or local law, or the United States Constitution in the course of the 2022 Election.  The term "adverse economic action" includes, but is not limited to, action affecting a member's employment, Union job referral status, or Union membership status or position.  The term "extortion" means impeding a member's exercise of political rights, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right.

- **Voting fraud**.  Engaging in any scheme or artifice designed to permit ineligible members to vote, prevent eligible members from voting, prevent the ballots of any members from being received by the Election Vendor, or prevent the ballots of eligible members from being counted.

- **Ballot tampering**.  Tampering with any completed ballot.

- **False statements and testimony**.  Providing false statements or testimony to the Monitor in any submissions or proceedings, including the protest procedures under the Rules.

- **Suborning perjury and obstructing proceedings**.  Suborning perjury or using intimidation, extortion, bribery, physical force, or threat thereof, or misleading conduct, to persuade another person to:

  o   delay or prevent the testimony of any person;
  o   withhold testimony or other evidence;
  o   alter, destroy, mutilate, or conceal any object or document with the intent to impair use, review, or inspection of the object or document;
  o   evade process summoning a person to appear as a witness or to produce a document or other object; or
  o   be absent after having been properly summoned as a witness in any election hearing under the Rules or disciplinary proceeding brought under this Section and the Consent Decree.

- **Failure to supervise**.  Every Candidate is responsible for supervising their staff, including, but not limited to, campaign workers, organizers, consultants, and observers who are working or volunteering for that Candidate's nomination and election.  A Candidate commits an election offense if they knowingly permit any person associated with their campaign to violate, or attempt or conspire to violate, any of the enumerated election offenses, or to commit any conduct that is chargeable under the Consent Decree in the course of campaigning, or knowing of such offense, fails to report a description of the conduct and the person committing it in a prompt and timely fashion to the Monitor.

A member who knowingly and intentionally aids, abets, counsels, commands, induces, procures, or causes the commission of any of these offenses is subject to the same charges and discipline as the person who directly commits the offense.  A member is also subject to disciplinary charges if they attempt or conspire to commit any of the foregoing offenses or any other conduct that is chargeable under the Consent Decree.

*       *       *

## SECTION 11:  Rights and Duties Under Labor-Management Reporting & Disclosure Act of 1959

**11-1    Relevant Regulations**

The regulations set forth in the Labor-Management Reporting & Disclosure Act of 1959, as amended (the "LMRDA"), 29 U.S.C. §§ 401-531 (1988) are incorporated into and made a part of these Rules.  For reference, some of the most relevant provisions to creation of these Rules include the following:

- LMRDA § 101(a)(1) (equal rights and privileges);

- LMRDA § 101(a)(2) (freedom of expression and assembly);

- LMRDA § 401(a) (election of international union officers by secret ballot);

- LMRDA § 401(c) (distribution of campaign literature; prohibition against discrimination in use of union membership list; inspection of membership list; safeguards to insure fair election);

- LMRDA § 401(e) (reasonable opportunity to nominate; eligibility to hold office; voting and campaigning without interference or reprisal; notice of election; right to vote: preservation of election records; following union constitution and bylaws where consistent with the LMRDA);

- LMRDA § 401(g) (prohibition on use of union or employer assistance in campaigning);

- LMRDA § 402 (enforcement); and;

- LMRDA § 609 (prohibition on union discipline for exercising rights under the LMRDA).

Insofar as the foregoing sections of the LMRDA may regulate conduct unrelated to nominations or elections of International Officers, they are not incorporated into the Rules.

*       *       *

### SECTION 12:  Administration of the Rules and UAW Constitution

**12-1   The Rules**

The Rules for the 2022 UAW International Officer Election have been drafted pursuant to the Consent Decree and the UAW Constitution.  The Monitor expressly reserves the right to issue orders to enforce the Rules and any rights and prohibitions contained therein, and to make application to the Court for enforcement as may be required.  The Rules are not intended to be exhaustive and may be amended without notice at any time by the Monitor in consultation with the UAW.  Additional or supplemental rules may be promulgated as needed.

**12-2   Extraterritorial Application of Rules**

The Rules apply to all nominations, elections, and related activities occurring in connection with the 2022 UAW International Officer Election, both inside and outside the territorial jurisdiction of the United States.  No distinction shall be made between nominations and elections, or related activities, conducted within the United States and those conducted outside the United States.

**12-3   UAW Constitution**

The UAW Constitution applies to any and all aspects of the 2022 UAW International Officer Election.  To the extent the Rules deviate from the current UAW Constitution, language will be drafted to amend the UAW Constitution to adopt the direct election system at the 2022 Convention.

**12-4   Role of the IEB and the UAW**

International Officers and employees, staff, or other officials of the UAW and its constituent entities shall carry out their responsibilities under the Rules free of discrimination or partisanship.

*       *       *

# SECTION 13:  Forms

**13-1    Election Forms**

In consultation with the UAW, the Monitor will adopt forms for use in connection with the 2022 UAW International Officer Election.  A duplicate or an exact replica must be used.

Copies of relevant forms will be available and updated on the Monitor website at www.uawmonitor.com/elections, and the forms will be available on the UAW website as well.

**13-2    List of Forms**

- Candidate Declaration Form [*Rules, Section 3-2*]
- Credentialed Representative Form [*Rules, Section 4-2*]
- Slate Declaration Form [*Rules, Section 6-3*]
- Multiple Slate Affiliation Declaration Form [*Rules, Section 6-3*]
- Prohibited Contribution Return Form [*Rules, Section 8-1*]
- Campaign Financial Disclosure Form [*Rules, Section 8-8*]
- Leftover Campaign Funds Form [*Rules, Section 8-10*]

*       *       *

### SECTION 14:  Effective Date

The Rules shall be effective as of their date of issuance, except that provisions of the UAW Constitution and of the LMRDA, which are incorporated into the Rules, shall be effective as of the date of their adoption.

These Rules have been issued as of May 11, 2022.

*     *     *

## DEFINITIONS

| _Term_ | _Definition_ |
|---|---|
| 2022 Election | Also referred to as "2022 UAW International Officer Election." Election of UAW International Officers to be held in 2022. First UAW election of International Officers to occur pursuant to a direct election system. |
| 2022 UAW International Officer Election | Also referred to as "2022 Election," see definition above. |
| Adjudications Officer | Gil M. Soffer of Katten Muchin Rosenman LLP. Mr. Soffer was appointed by the Court on September 9, 2021, pursuant to the terms of the Consent Decree. In the event that the Monitor prohibits any prospective candidate from running for International Office as ineligible, the prospective candidate may appeal the Monitor's determination to the Adjudications Officer. |
| Bona Fide Candidate | Also referred to as "Candidate." An individual seeking office will be considered a Bona Fide Candidate as defined by Section 452.80 of Title 29 of the code of Federal Regulations by submitting to the Monitor a declaration on certain qualifications to hold International Office. The individual's Bona Fide Candidate status will not be final until vetted by the Monitor team. If a Bona Fide Candidate is not nominated at the Convention, they will no longer be considered a Bona Fide Candidate. A Bona Fide Candidate will have certain rights to enable them to conduct an effective election campaign, as described in the Rules. |

| _Term_ | _Definition_ |
|---|---|
| Campaigning | Affirmatively advocating for or against the election of a particular Candidate or Slate. Campaigning can be conducted through oral or written speech. Campaigning can be conducted directly or by facilitating or managing others who campaign and engage in related activities. |
| Campaign Account | A bank account opened and maintained by a Candidate, Slate, or Covered Party into which they must deposit any money they intend to spend on a campaign or other election-related effort. |
| Campaign Contribution | Any direct or indirect contribution of money or other thing of value where the purpose, object, or foreseeable effect of that contribution or the expenditure thereof is to influence, positively or negatively, the election of a Candidate or a Slate of Candidates for an International Officer position. A campaign contribution does not include the performance of services by a volunteer during the volunteer's personal, free time, provided the donation is truly voluntary and not coerced, and the donation is not funded indirectly by a labor organization or an employer. |
| Candidate | Also referred to as "Bona Fide Candidate," see definition above. |

| *Term* | *Definition* |
|---|---|
| Candidate Forum | An organized event conducted by the Monitor during which Candidates running for office are invited to publicly express their positions on various campaign issues. The Monitor will conduct at least one Candidate forum for all nominated Candidates for International President, to be held in September 2022. The Monitor may conduct other Candidate forums for Candidates nominated for any of the other International Officer positions. |
| Consent Decree | Consent Decree entered on January 29, 2021, in the matter of *United States v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 20-cv-13293 (DML-RSW) (E.D. Mich.), concluding civil litigation brought by DOJ against the UAW. |
| Convention | UAW Constitutional Convention. The Thirty-Eighth Convention will be held July 25-28, 2022, at Huntington Place in Detroit, Michigan. Among other things, Convention delegates will nominate individuals to run for UAW International Office and will vote on constitutional amendments. |
| Court or District Court | United States District Court for the Eastern District of Michigan. |

| *Term* | *Definition* |
| --- | --- |
| Covered Party | Any other individual or group, in addition to Candidates or Slates, seeking to raise donate, and/or expend resources in connection with the 2022 UAW International Officer Election. Covered Parties, like Candidates and Slates, are subject to the campaign finance rules set forth in Section 8 of the Rules. |
| Credentialed Representative | An individual member authorized by a Candidate or Slate to have the same campaigning and access rights described in Section 4 of the Rules as are permitted the Candidate and Slate. Each Candidate or Slate may authorize up to five (5) members in good standing to serve as their Credentialed Representative(s). |
| Election Auditor | Vendor(s) employed by the Monitor to execute the accounting function around the collection, analysis, and auditing of the campaign finance disclosure forms that must be completed by Candidates, Slates, and Covered Parties, and the information therein. |
| Election Control Roster | A database of eligible members for all ballot counts, which will be prepared by the Election Vendor. |
| Election Observer | An individual who may, on behalf of a Candidate or Slate, observe the printing, mailing, and/or counting of ballots. An election observer must be a member in good standing of the UAW. |
| Election Vendor | Election vendor(s) selected by the UAW in consultation with the Monitor to oversee all mailings, collections, and tabulations of the secret ballots in connection with the 2022 Election. |

| *Term* | *Definition* |
|---|---|
| Electorate | All UAW members in good standing as of October 31, 2022, and therefore eligible to vote in the 2022 Election, including members who are part-time workers, reinstated members, and retired members. |
| Global Mailing List | UAW-maintained list of the last known names, mailing addresses, and email addresses of all UAW members. |
| IEB | The UAW's International Executive Board, comprising the International President, International Secretary-Treasurer, International Vice Presidents, and Regional Directors (also, the "International Officers"). |
| Interested Employer | Any employer or association of employers which is: (a) a party to a collective bargaining agreement with the Union and/or a Local Union; (b) the subject of an organizing campaign by the Union and/or a Local Union; or (c) concerned with, liable to, affected by or has some self-interest in litigation brought by a member against the Union and/or a Local Union. |
| International Officers | The UAW International President, International Secretary-Treasurer, International Vice Presidents, and Regional Directors, who comprise the UAW's International Executive Board ("IEB"). |
| LMRDA | Labor-Management Reporting and Disclosure Act of 1959. |
| LUIS | Local Union Information System, the UAW's centralized membership database. |

| *Term* | *Definition* |
|---|---|
| Monitor | Neil M. Barofsky of Jenner & Block LLP, Independent Monitor of the UAW.  Mr. Barofsky was appointed by the Court on May 12, 2021, pursuant to the terms of the Consent Decree. |
| OLMS | The U.S. Department of Labor's Office of Labor-Management Standards. |
| Political Donation | Any direct or indirect contribution of money or other thing of value where the purpose, object, or foreseeable effect of its contribution or the expenditure thereof is to influence or impact the 2022 Election.  A political donation does not include the performance of services by a volunteer during the volunteer's personal, free time, provided the donation is truly voluntary and not coerced, and the donation is not funded directly or indirectly by a labor organization or an employer. |
| Ranked-Choice Voting System | Voting system utilizing ranked-choice voting ballots, in which voters can choose to rank the Candidates in a sequence of preference on their initial ballot so that no separate run-off ballots are ever required.  If no one gets a majority on the basis of solely first choices, there is effectively an instant run-off that eliminates Candidates in a series of rounds.  This is sometimes referred to as an "instant run-off."  This system is one of the two options available to Convention delegates, who will be asked to decide on the voting methodology for the 2022 Election. |

| *Term* | *Definition* |
|---|---|
| Referendum | Union-wide referendum vote, held in 2021, on the question of how the UAW's International President and other members of the IEB were to be elected in the Union's future International Officer elections.  Result of the vote determined that the UAW would switch from a delegate election system to a direct election system in which UAW members will vote directly for the International Officers. |
| Rules | Official Rules for the 2022 International Officer Election of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW).  The Rules will also remain in effect for future UAW International Officer elections unless and until modified by the Monitor, in consultation with the UAW. |
| Run-Off Election | A traditional run-off election by mail of the top vote-getters in any given race in the event no Candidate has secured a majority of the votes.  If the delegates at the Convention choose a traditional Run-Off Election, a Run-Off Election will be held for any such office, on a schedule to be set by the Monitor in consultation with the UAW. |

| *Term* | *Definition* |
|---|---|
| Secure Site | A secure site in the United States, obtained by the Election Vendor, for the counting of ballots. Ballots shall be transported to the Secure Site from the receiving U.S. Post Offices or Postal Facilities by the Election Vendor, with security protocols established by the Election Vendor and approved by the Monitor in consultation with the UAW. |
| Slate | A slate of Candidates, which is a grouping, by mutual consent, of two or more Candidates. Each Candidate has the right to seek nomination, be nominated, campaign, and appear on the ballot for an International Officer position as a member of a Slate. |
| True Source Rule | 2022 Election campaign finance rule whereby Candidates, Slates, and Covered Parties must ensure that any contributions and/or funds came solely from the identified individual or entity disclosed to the Monitor in the required monthly campaign contribution and political expenditure disclosure statements, and not from any other person or entity. The use of a "straw man" to mask the true origin of a campaign contribution is strictly prohibited. |

| _Term_ | _Definition_ |
|---|---|
| True Purpose Rule | 2022 Election campaign finance rule whereby Candidates, Slates, and Covered Parties must ensure that any contributions and/or funds were collected, raised, donated, or spent voluntarily and for the unambiguous and express purpose of either (1) supporting a Candidate or Slate of Candidates in the 2022 Election; or (2) furthering a political cause or goal in connection with the 2022 Election. |
| UAW | Aka the "Union." The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America. |
| Union | Aka the "UAW." The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America. |
| Voter Eligibility Deadline | Deadline by which members must be in good standing in order to have their vote counted in the 2022 Election (October 31, 2022, at 5 p.m. EDT). |

\*     \*     \*

**MONITOR ELECTION TEAM**

Neil Barofsky, Monitor
Lori Day | Matthew Gordon | Kelsey Stimple
Jenner & Block LLP

Glen McGorty | Lisa Umans
Crowell & Moring LLP

All election-related inquiries should be directed to:
UAWMonitor-Election@jenner.com or 212-303-2529.

All formal protests related to the 2022 Election should be delivered to:

Neil Barofsky, Monitor
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036
or UAWMonitor-Election@jenner.com

Please visit the Monitor's website, www.uawmonitor.com/elections.

# Exhibit A



*Inter-Office Correspondence*

opeiu494
PRINTED IN U.S.A.

March 24, 2022

**To:**     International Executive Board

**From:**     Ray Curry

**Subject:**     **Eligibility of Retired Members to Run for International Executive Board Member Offices**

As part of its activities related to rules to govern the election of IEB Member positions, by written communication dated March 15, 2022 the Court-appointed Monitor has identified a ripe issue for consideration by the International Union.  In particular, the Monitor's representative has requested that the General President's Office issue a Constitutional Interpretation on the question of whether retired members are eligible to run for IEB Member positions (International President, International Secretary-Treasurer, International Vice-Presidents and Regional Directors).

The IEB had prior discussion on this matter earlier this year.  There is both internal UAW law and applicable federal labor law that informs my conclusion that retirees, while valued members of our International Union, should not be eligible to run for these International offices, and I ask for your consent to my determination.

The UAW Constitution at Article 6, Section 19 generally describes the rights of retired members.  That provision specifies that retired members are ineligible to vote in elections conducted pursuant to Article 19, Section 3 (contract ratification votes); Article 45, Section 2 (votes for local union stewards and committeepersons, both positions having grievance handling and contract negotiating responsibilities) and Article 50, Sections 1 and 5 (strike authorization votes).  An Interpretation of the Constitution was issued over sixty (60) years ago which clarified that retired members are ineligible to vote for local union position(s) which carry responsibility for grievances or bargaining even if there are other duties also associated with such positions. (See UAW Constitution Article 6, Section 19(1) Interpretation.)

In addition to these explicit constitutional restrictions on retirees' voting on certain matters, there similarly have been long-standing determinations that retirees should not be eligible to be candidates for certain local offices.  The UAW's institutional policy for excluding retirees from voting in, or holding, union positions which involve grievance handling or collective bargaining responsibilities is premised on the notion that retirees' primary interests extend to retirement benefits, potentially to the detriment or in conflict with active employees' interests in wage rates, hours, working conditions, and other terms of active employment.

As the UAW's Public Review Board put it in a case involving retiree involvement in collective bargaining:

"This is a good rule.  Retired members are  not  as  accountable  to   the current Union membership as active ones. They may be less accessible. They may also be more prone to represent the interests of other retired members instead of current members. All of these factors may  diminish the ability  of the  Union to react to the changing nature of the work place. They may also expose the Union to legal liability...."

Pearson v Local 140 PRB Case 1534 (February 15, 2006), pp 7-8.

This rationale that active members should be in charge of collective bargaining informs our judgement that retirees should not be eligible to run for those International offices that direct or lead or oversee the union's bargaining efforts. UAW IEB Members are directly involved in collective bargaining.  All UAW bargaining units contain certifications of the International Union and its Local Union(s) as the authorized representative of individuals employed by the Company.  UAW IEB Members who serve as Officers direct National Departments that negotiate and administer multi-unit collective bargaining agreements (e.g., General Motors, Ford, Stellantis, Deere & Co., Caterpillar, Volvo/Mack Trucks, Navistar, Daimler Trucks/Freightliner, etc.).  The UAW Constitution provides that the duties of IEB members – which includes Officers as well as Regional Directors - includes participation and  review of negotiated labor agreements and resolution of bargaining disputes.  (UAW Constitution at Article 13, Section 25.)

Accordingly, in my view the existing internal law of the Union supports a limitation on retiree members running for or serving as IEB members. Similarly, federal Department of Labor regulations on union  election eligibility  requirements support as  reasonable restrictions on the eligibility for office of non-active members, providing that: "It would ordinarily be reasonable for a union to require candidates to be employed at the trade or even to have been so employed for a reasonable period." 29 CFR § 452.41(a).

Under these circumstances, in accordance with the powers vested in the International President under Article 13, Section 8 of the Constitution to decide questions concerning or involving interpretation of the Constitution, I hereby adopt the two following Constitutional Interpretations:

- 3 -

\* \* \* \* \*

**Article 6**
**Membership**
Section 19

**(4)   Eligibility of Retired Members to Run for International Executive Board Offices (International President, International Secretary-Treasurer, International Vice-Presidents or Regional Director)**

Retired members are ineligible to be nominated, run for, or be elected as an International Executive Board Member (an elective officer of the International Union or International Executive Board Member as identified in Article 10, Section 1 and Article 10, Section 21 of the International Constitution) as all such International Executive Board Member positions carry collective bargaining and grievance handling responsibilities.  (Detroit, 4/1/2022, Page xxx.)

**Article 10**
**Officers and Elections**
Section 6

**(4)   Eligibility of Retired Members to Run for International Executive Board Offices (International President, International Secretary-Treasurer, International Vice-Presidents or Regional Director)**

Retired members are ineligible to be nominated, run for, or be elected as an International Executive Board Member (an elective officer of the International Union or International Executive Board Member as identified in Article 10, Section 1 and Article 10, Section 21 of the International Constitution) as all such International Executive Board Member positions carry collective bargaining and grievance handling responsibilities.  (Detroit, 4/1/2022, Page xxx.)

\* \* \* \* \*

Under Article 12, Section 6 of the Constitution, the IEB has the ability to review any interpretation issued by the International President.  In an effort to provide timely guidance to our members and potential candidates and to be responsive to the inquiry from the Monitor's representative, I seek IEB consent to this interpretation.

RC:bw
opeiu494
cc:  Tim Bressler
     Todd Brien
     Abigail Carter