UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                   Case Number 20-13293

v.                                                Honorable David M. Lawson

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION BY JAMES R. COAKLEY FOR APPEAL OF AN INTERPRETIVE RULING OF THE DEFENDANT'S CONSTITUTION**

James R. Coakley, a retired member of defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), has filed a motion asking the Court to review and overturn an interpretation by the Union, the court-appointed Monitor, and the Adjudications Officer of the UAW's constitution as prohibiting retired members from running for the office of President of the Union's International Executive Board (IEB). Coakley also asks the Court to nullify an election rule recently issued by the Monitor that endorsed that interpretation. The Monitor, the government, and the Union oppose the motion and ask the Court to affirm those decisions. Contrary to the Union's position, the Court has jurisdiction to determine Coakley's motion. Because the constitutional interpretation of the Monitor and the Adjudications Officer is reasonable and supported by substantial evidence, the Court will deny Coakley's request to overturn the interpretation.

I.

The motion before the Court is the product of a consent decree entered in this case on January 29, 2021. The factual developments that led to the decree, and the procedures it contains, deserve some explanation.

A. The Government's Allegations

On December 14, 2020, the government filed its complaint in this case under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.* against the UAW. That iconic union represents hundreds of thousands of non-managerial workers in automobile manufacturing and other industries throughout Michigan, the United States, and the world. The UAW's International Executive Board is the managing body of the UAW, which is comprised of a president, secretary, three vice presidents, and eight regional directors. The board governs the union's affairs by, among other things, imposing discipline, approving or suspending by-laws of local bargaining units, and interpreting and enforcing the UAW's constitution. UAW locals, aided and overseen by the umbrella authority of the international union, negotiate collective bargaining agreements on behalf of members in workplaces around the country and the world, according to local circumstances.

According to the complaint, since 2010, certain members of the executive board engaged in fraudulent and illegal transactions that included money laundering, receipt and payment of union funds for goods and services that never actually were delivered, and receipt and payment of kickbacks and bribes by certain employers of union members. Among other things, members of the executive board accepted bribes and kickbacks for steering contracts that were awarded by the UAW-GM Center for Human Resources, which was a member training center jointly operated by the Union and General Motors Corporation and its successor (GM). Other union executives

conspired over several years to embezzle for their personal use more than $1.5 million in union funds, by subterfuges such as submitting vouchers for travel and lodging expenses that never were incurred. Also, union executives accepted payments from employers, including FCA US, LLC (Chrysler), in exchange for compromising negotiations over bargaining agreements in ways that favored the employer over union members. Still other executive board members were aware of the fraud, embezzlement, and bribery crimes, but took no action to stop them, contrary to their obligations under federal law to investigate and redress any violations of applicable federal laws by union officials.

According to the government, union executives made, or caused the union to make, deceptive representations to the Department of Labor and the Internal Revenue Service in various financial reports and disclosures to conceal the proceeds of their schemes. The complaint enumerated in exhaustive detail those and other fraudulent and illegal schemes and identified the former union officials who conspired to carry them out. In 2019 and 2020, more than a dozen executives who were involved in the schemes pleaded guilty to a variety of federal crimes including wire fraud, mail fraud, embezzlement, violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*, and violations of the LMRDA.

Contemporaneously with the complaint, the parties jointly filed a motion for entry of a consent decree embodying terms of an agreement that they had reached before the suit was filed, which provided for injunctive restrictions against the Union and its officers, and also for the appointment of a Monitor and other officials to keep tabs on the union's activities and report on the defendant's compliance with the consent decree and applicable federal laws. The Court struck the proposed consent decree that had been attached as an exhibit to the motion because it was filed in violation of procedural rules. In response to that housekeeping action, the parties filed a revised

joint motion with a brief that included more expansive details about the terms of the proposed consent decree. On January 29, 2021, after it had received no opposition to the joint motion, the Court entered the proposed consent decree.

## B. The Consent Decree

The consent decree established an initial term for Court supervision of six years, which may be extended or shortened upon good grounds shown by any party. One main feature of the decree required the Union to hold a referendum by secret ballot of all members to address the question whether the Union should change the method of electing IEB officers to a "one-member, one-vote" direct election rather than having officers selected by a convention of delegates. The referendum was held, and the Union's members voted 63% in favor of changing the mode of election for officers. On January 31, 2022, the Court issued an order granting a joint unopposed motion by the parties to approve the referendum results. The Court also set a deadline of July 30, 2022 for full implementation of the new election method including enactment of necessary changes to the UAW constitution. Those changes are on the agenda for enactment at the UAW's upcoming annual convention, which will occur in late July 2022.

The consent decree also provided for the appointment of a Monitor to oversee the Union's compliance with its terms. On May 12, 2021, the Court granted an unopposed joint motion to install Neil M. Barofsky in that office. Among other things, the consent decree empowers the Monitor to monitor the conduct of officers and principal employees of the Union, oversee the elections of officers, impose discipline or review the imposition of discipline in matters implicating the integrity of the Union's business affairs, review and repudiate contracts undertaken by the Union, and in general to exercise all of the powers vested in the IEB for the purposes of correcting any malfeasance in the Union's dealings which may occur.

The consent decree also provided for the appointment of an Adjudications Officer, who is empowered to review actions by the Monitor upon timely challenge by any interested party. On September 10, 2021, the Court granted the government's unopposed motion to appoint Gil Soffer as the Adjudications Officer.

The consent decree further states that any "person disallowed from running for International Office by the Monitor may appeal the Monitor's action to the Adjudications Officer by filing a written appeal within seven days of such action by the Monitor," and that the disappointed candidate thereafter "may appeal to the Court the Monitor's or the Adjudications Officer's decision regarding his or her candidacy within 14 days of the decision being appealed." Consent Decree ¶¶ 47-48, PageID.127. "The Monitor's or Adjudications Officer's decisions . . . shall be reviewed by this Court under the substantial evidence standard set forth in 5 U.S.C. § 706(2)(E)," a section of the Administrative Procedures Act (APA). *Id.* ¶ 48, PageID.128. That statute specifies that the "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of [a challenged action] [and] shall . . . hold unlawful and set aside [any] action, findings, and conclusions found to be. . . unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

### C. Election Rules

The consent decree states that, after the member referendum considering the change in election modes, "the Monitor . . . shall ensure that the election of the members of the IEB of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and this decree." Consent Decree, ECF No. 10, PageID.126. Once the referendum results were approved by the Court, the Monitor set about issuing rules to govern the prospective election

cycle under the new direct election method. During that process, movant James R. Coakley inquired of the Monitor whether retired union members would be permitted to run for IEB positions. The Monitor's response indicates that "[a]fter soliciting the views of the UAW and other interested parties, including the advocacy group Unite All Workers for Democracy ('UAWD'), as well as Mr. Coakley and other retirees, the Monitor concluded that both sides had meritorious arguments, [as] a result of an ambiguity in the UAW Constitution on this issue." The Monitor then determined that the appropriate course would be to refer the question to the Union's President and IEB to interpret the "ambiguous" provisions and issue a policy position on whether the Union's constitution permits retired members to hold IEB offices. The Union's President considered the question and, on March 24, 2022, issued a position letter stating that retired members are not eligible to campaign for or hold any position on the IEB. On April 1, 2022, the IEB voted to endorse that position.

The Monitor subsequently informed Coakley and other interested parties of the right to appeal the ruling by the Union's President and IEB barring retired members from election to any IEB position. On April 12, 2022, Coakley presented an appeal of the ruling to the Adjudications Officer. On April 22, 2022, the Adjudications Officer issued a decision finding that the Monitor's decision to refer the question to the Union for an interpretive ruling was proper, and the Union's construction of the relevant provisions was reasonable.

On April 27, 2022, Coakley filed his motion seeking review by this Court of the decisions by the Monitor and Adjudications Officer that resulted in the solicitation of the Union's constitutional interpretation and the embodiment in the election rules of the Union's prohibition on election of retired members to any IEB office.

On May 11, 2022, notwithstanding the present motion for judicial review, the Monitor issued the Official Rules for the 2022 International Office Election of the UAW, which state that retired members are eligible to vote for IEB offices, Rules § 2-5, but "retired members are not eligible to run for International Union Office," Rules § 3-1.

II.

Coakley argues that the Union's interpretation of its constitution is flawed and the Monitor's decision to defer to that reading was improper, pointing to language in the UAW's constitution that grants to retirees "all the privileges of membership" and affords them "all" of the same rights as non-retired members. The Monitor says that he "takes no position" on whether or not the constitution bars retirees from holding IEB office, but then he took a position that sided with the Union's interpretation when he promulgated the election rules. Similarly, the government asserts that it takes "no position" on the proper reading of the constitutional provisions in question, but it argues that the Court should affirm the decisions by the Monitor and Adjudications Officer because they correctly discerned an ambiguity in the operative language and properly deferred to the Union's governing board to resolve that ambiguity in the first instance by soliciting the Union's policy position. Finally, the Union insists that the Court has no "jurisdiction" to adjudicate Coakley's motion because he did not exhaust the Union's internal grievance procedures. It also contends that its interpretation of the constitution is correct.

The rule of decision embodied in the consent decree incorporates the deferential standard for review of executive agency decisions by federal courts under the APA. Under that familiar framework, the Court "must hold unlawful and set aside [any] findings, or conclusions that are . . . unsupported by substantial evidence.'" *Calcutt v. Fed. Deposit Ins. Corp.*, No. 20-4303, --- F.4th ---, 2022 WL 2081430, at *9 (6th Cir. June 10, 2022) (quoting 5 U.S.C. § 706(2)). "[S]ubstantial

evidence [] is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* (quotations omitted).

As an initial matter, the parties agree that no federal law or regulation on point dictates the answer to the question whether retired union members ought to be allowed to stand for executive board positions in a labor union. Labor unions are required by federal law to elect officers by one of two prescribed means: by direct vote of the members via secret ballot, or at a convention of delegates elected by secret ballot. The Union freely may choose between either method, and elections must be conducted at least once every five years and otherwise according to any applicable provisions of the union bylaws. 29 U.S.C. § 481(a) ("Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot."); 29 U.S.C. § 481(e) ("The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this title."). No party has identified any express provision of federal law dictating that a labor union may or may not establish a rule barring its retired members from being elected to executive board positions.

The parties also agree that the UAW Constitution does not expressly state whether a retired member may be elected to an IEB position. Article 6, Section 19 of the UAW Constitution defines the status of retired members in somewhat expansive terms, stating in pertinent part:

> Any member in good standing who is retired, shall be entitled to a "retired membership status" which, without being required to pay membership dues during the period of such retirement, shall entitle her/him to all of the privileges of membership except the right to vote in elections conducted pursuant to Article 19, Section 3 [dealing with collective bargaining negotiations with employers]; Article

- 8 -

      45, Section 2 [dealing with elections of stewards and committeepersons]; and Article 50, Sections 1 and 5 [dealing with votes to initiate or end a strike].

Adjudications Officer Decision dated Apr. 22, 2022, ECF No. 66-6, PageID.1096. The constitution charges the IEB with the responsibility of "review[ing] and decid[ing], between Conventions, all questions involving interpretation of this Constitution when any member or subordinate body wishes to appeal, or the Board on its own initiative wishes to consider the decision on any such question made (pursuant to Article 13, Section 8) by the International President." UAW Const. Art. 12, § 6 (2018), ECF No. 66-5, PageID.1078. The Union's policy position on the present question, which was issued under its Article 12, Section 6 interpretational authority, states:

> Retired members are ineligible to be nominated, run for, or be elected as an International Executive Board Member (an elective officer of the International Union or International Executive Board Member as identified in Article 10, Section 1 and Article 10, Section 21 of the International Constitution) as all such International Executive Board Member positions carry collective bargaining and grievance handling responsibilities.

Adjudications Officer Decision at PageID.1095.

"When reviewing a union's interpretation of its own constitution, [the Court must] defer to that interpretation unless it is plainly unreasonable." *Conille v. Council 93, AFSCME*, 973 F.3d 1, 12 (1st Cir. 2020). In that undertaking, the Court "begin[s] with the constitution's text." *Ibid.* Acknowledging the highly deferential premise of judicial review in proceedings challenging a labor union's interpretation of its own constitution, the Sixth Circuit has "[o]n several occasions . . . stated [its] reluctance to substitute [the courts'] judgment for that of union officials in the interpretation of the union's constitution and [its] willingness to interfere only where the [union's] interpretation is not fair or reasonable." *Pearson v. SEIU Healthcare Michigan*, 501 F. App'x 461, 467 (6th Cir. 2012) (citing *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971); *Babler v. Futhey*, 618 F.3d 514, 522–23 (6th Cir. 2010)). And "[t]he Department of Labor's policy under the

- 9 -

LMRDA is that '[t]he interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable.'" *Riley v. Portland Maine Area Loc. No. 458 Am. Postal Workers Union AFL-CIO*, No. 15-37, 2016 WL 5816989, at *9 (D. Me. Oct. 5, 2016) (quoting 29 C.F.R. § 452.3). As the First Circuit put it: "Conscious of the value of non-interference, we align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions. [Accordingly,] we will uphold the [union's] interpretation of its own governance documents unless that interpretation is patently unreasonable." *Loc. No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am.*, 920 F.2d 1047, 1052 (1st Cir. 1990).

### A. The Union's Jurisdictional Argument

The Union has spilled much ink on its arguments that the Court lacks "jurisdiction" to decide the present motion because the movant failed to exhaust "internal grievance procedures" and other statutory avenues for seeking administrative and judicial review before filing his motion. Those arguments, however, are grounded on the false premise that there was "no decision" made by the Monitor that is subject to review according to the procedure expressly specified by the consent decree. But in the latter portion of its response the Union admits the futility of these objections where it concedes that the consent decree provides an "exception" to otherwise applicable internal and external procedures for review of a Union's governance of its own elections, which applies when any candidate is disqualified from standing for election to an IEB office by a decision of the Monitor. That is exactly what occurred here, when the Monitor issued Official Rules for the upcoming election that barred all retired members, including Coakley, from being nominated for or obtaining election to any IEB position.

The Monitor and the government echo the Union's false premise that the Monitor "took no position" on whether the Union's constitution affords a retired member the right to be elected to an office on the IEB. In fact, the Monitor did take a position on the issue when he engaged in a preliminary textual analysis of the pertinent language, determined that it was "ambiguous," and, after consulting pertinent decisional law, decided to refer the question to the Union's president and executive board to resolve the "ambiguity." After the Union's official position on the question was published, the Monitor then took further action that was dispositive of Coakley's rights by issuing election rules that bar his candidacy. That certainly constitutes "taking a position," and that "position" is subject to judicial review per the terms of the consent decree. It is well settled, of course, that "'when a court enters a consent decree, it retains jurisdiction to enforce the decree.'" *City of Highland Park, Michigan v. EPA*, 817 F. App'x 42, 51 (6th Cir. 2020) (quoting *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015)).

"Moreover, cases interpreting the [LMRDA] provision on exhaustion of remedies, 29 U.S.C. § 411(a)(4), commit to the court's discretion whether the plaintiff satisfied the requirement." *Riley v. Portland Maine Area Loc. No. 458 Am. Postal Workers Union AFL-CIO*, No. 15-37, 2016 WL 5816989, at *8 (D. Me. Oct. 5, 2016) (citing *Alfego v. Exec. Bd. of Loc. No. 143 of Am. Fed'n of Musicians of U.S. & Canada*, 747 F.2d 64, 65 (1st Cir. 1984) ("The LMRDA provides, 29 U.S.C. § 411(a)(4), that in its discretion a district court may decline to entertain an action of this sort unless and until plaintiffs have exhausted reasonable hearing procedures within the union. In this case, *the district court recognized that: only the court and not the union can require such exhaustion; whether to require exhaustion is discretionary, case by case; and there are circumstances in which exhaustion should not be required.*") (emphasis added)). In this case, the circumstances weigh heavily in favor of excusing any further exhaustion requirement. First,

there is no reason to expect any prospective change in the Union's position, which has been ratified both by its senior executive and the full IEB. Second, because nominations for IEB positions are scheduled to occur in the near future (at the end of July), it is essential that the question presented be settled promptly, to avoid chaos on the eve of the election.

Coakley has followed the procedures set out in the consent decree, to which the Union agreed. No further "exhaustion" is required here.

### B. The Interpretation of the Constitution

The lack of merit in the Union's jurisdictional argument does not contaminate its position on the reasonableness of its construction of the constitution's election eligibility provisions or the adoption of that construction by the Monitor and the Adjudications Officer. The Court's review here is in a sense doubly deferential because (1) the consent decree states that the decisions of the Monitor and Adjudications Officer are reviewed by the Court merely to determine if they are supported by "substantial evidence," and (2) judicial review of a Union's construction of its own constitution is subject to the further moderating principle that the Court should uphold the interpretation if it is a "fair and reasonable" reading of the language in question. *Babler*, 618 F.3d at 522–23; *Vestal*, 451 F.2d at 709. The question posed by Coakley's motion, then, is whether there was "substantial evidence" put before the Monitor and Adjudications Officer to support a finding that the Union adopted a fair and reasonable reading of the constitutional provisions defining the rights of its retired members. The record demonstrates amply that there was such evidence, and the resulting decisions were well founded.

Coakley argues that the Monitor proceeded improperly by referring to the Union the initial task of interpreting its constitution. However, that course of action was both reasonable and prudent. First, for the reasons discussed further below, there is an obvious ambiguity in the scope

of rights afforded to retired members by the constitution. That is shown by the language that affords retirees "all the privileges of membership," while also, in the immediately following clause, excluding specific "privileges" associated with collective bargaining and strike actions. It is undisputed that the question whether retirees may hold a position on the IEB is not expressly answered by any other constitutional language. Therefore, there was a substantial basis for the Monitor's assessment that more work was needed to discern the precise scope of retirees' rights.

Second, it was reasonable for the Monitor to refer the question to the Union's governing body to solicit a policy statement resolving the ambiguity, and that was a prudent and well-founded course of action. As an officer appointed under the terms of the consent decree, the Monitor essentially is an instrument of the Court charged with enforcing the terms of the decree. Therefore, when taking actions to carry out his duties, the Monitor is bound to apply principles of law that would govern the Court if called upon to review his actions. Moreover, the consent decree expressly charges the Monitor with ensuring that prospective elections are carried out in conformance with all applicable provisions of federal law, the terms of the decree, and the Union's constitution. The controlling decisional law on point holds that a federal court should defer to a union's interpretation of its own constitution as long as its reading is "fair" and "reasonable." *Babler*, 618 F.3d at 522–23; *Vestal*, 451 F.2d at 709. Therefore, it was appropriate to refer the interpretational question to the Union for resolution in the first instance, since the Court, and by extension the Monitor, are counseled to uphold the Union's position as long as it is a fair and reasonable one.

Turning to the specific terms at issue here, the Union's reading is a fair and reasonable construction of the operative language, when read reasonably in the context of the governing document as a whole. It is a well settled principle in the construction of both statutory and

contractual language that terms of a written instrument are to be read in context and in light of other coordinate terms. *Lapinske v. City of Grand Haven, Michigan*, No. 21-1309, 2022 WL 767707, at *6 (6th Cir. Mar. 14, 2022) ("[I]t is a well-established principle of contract interpretation that portions of a contract are not read in isolation."); *Babcock v. Comm'r of Soc. Sec.*, 959 F.3d 210, 214 (6th Cir. 2021) ("[W]e must read the words of the statutory provision in their context and with a view to their place in the overall statutory scheme."). Coakley argues that the phrase "all the privileges of membership" in Article 6, Section 19 of the Union's constitution is "unambiguous," and no further consideration is necessary to conclude from that expansive phrase that retired members must be allowed to stand for elections to the IEB the same as any other member. That position, however, overlooks the plainly exclusionary language immediately following, in the same sentence, that excludes retired members from participating in votes on matters impacting collective bargaining agreements or the initiation and cessation of strike actions. Plainly, the language of the instrument demonstrates that, in this instance, the term "all" means somewhat less than "each and every."

Moreover, the Union and the Adjudications Officer both cited a series of decisions by the Union's Public Review Board (PRB) adjudicative body, which repeatedly have recognized in similar contexts that "'[t]he UAW has a long-standing policy barring retired members from holding union offices which require bargaining or grievance handling.'" Adjudications Officer Decision at PageID.1087 (quoting *Rhoden v. Local Union 723 Exec. Bd., UAW*, PRB Case No. 1834, at 8 (June 28, 2021)). "The [PRB] consists 'of impartial persons of good public repute,' neither members nor employees of UAW." *Monroe v. Int'l Union, UAW*, 723 F.2d 22, 24 n.3 (6th Cir. 1983) (quoting UAW Const. Art. 32, § 1). "The Board, one of the avenues of last resort available to aggrieved employees under the UAW constitution's internal procedures, is, according

to uncontradicted evidence, an independent group of academic and social agency persons with no UAW affiliation." *Ibid.*

In other decisions, the PRB has observed that "'[t]he International Union's policy forbidding retirees from holding offices which involve collective bargaining duties *applies to any office*, not only those described in Article 45.'" *Ibid.* (quoting *King v. Local Union 600 Exec. Bd., UAW*, PRB Case No. 1499, at 9 (Sept. 19, 2005)). Further, the PRB has noted the conspicuous absence of any "'instances where a retired member has been allowed to run for executive offices that involve bargaining responsibilities since the International Union adopted the rule [] in 1999.'" *Ibid.* (quoting *Pearson v. Local Union 140, UAW*, PRB Case No. 1534, at 7 (Feb. 15, 2006)). Those same decisions, which were surveyed by the Adjudications Officer, noted that the policy's rationale is founded on sensible concerns that retired members may be less invested in bargaining issues because they are not impacted by provisions dictating working conditions, that they may be less accessible and responsive to working members with urgent bargaining worries, and that they may be tempted to advance their own interests while compromising those of actively working members, which may differ greatly and at times come into direct conflict. *Id.* at PageID.1097-98.

The fact that the PRB decisions repeatedly have hewed to the same rationale in upholding the exclusion of retired members from elected positions with collective bargaining responsibilities supplies ample evidence supporting the reasonableness of the Union's reading, the prudence of the Monitor's actions premised on that reading, and the Adjudications Officer's affirmance of the Monitor's decision. It is undisputed that the UAW constitution vests significant bargaining responsibility in every IEB elected office, *e.g.*, in Article 13, Section 25, which requires IEB members to review and approve collective bargaining agreements, and Article 20, which empowers the IEB to supervise local bargaining councils. *Id.* at PageID.1099. Such concerns

have been recognized by federal courts as well-founded reasons to exclude retirees from collective bargaining. *E.g.*, *Allied Chem. & Alkali Workers of Am., Loc. Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 173 (1971) ("[E]ven if, as the [NLRB] found, active and retired employees have a common concern in assuring that the latter's benefits remain adequate, they plainly do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit. Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining.") (holding that the subject of retiree benefits was not a topic over which collective bargaining was mandated and retired employees were not properly included as members of a bargaining unit along with working union members).

Coakley argues that no provision of the applicable federal statutes or regulations expressly permits a union to exclude retirees from holding office on its governing board. However, contrary to his position, federal courts repeatedly have recognized that the applicable regulations do, in fact, explicitly allow unions to exclude retirees both from holding certain principal offices and from voting in certain types of elections, and restrictions barring retirees from such privileges do not violate the LMRDA or related regulation. *E.g.*, *Bramble v. Am. Postal Workers Union, AFL-CIO*, 963 F. Supp. 90, 101 (D.R.I. 1997) ("[I]t is well-established that unions may entirely exclude retired members from serving as union officers, as opposed to simply making it less desirable to do so. Such policies have been upheld by the District of Columbia Circuit, and they have been explicitly permitted by government regulation."); *Shelley v. Brock*, 793 F.2d 1368, 1376 (D.C. Cir. 1986) ("The Secretary based his conclusion that retirees were not improperly excluded from the

union election on 29 C.F.R. § 452.93, a Labor Department regulation interpreting the LMRDA. . . . In other words, the section provides that excluding retirees from union elections does not violate the Act's command that '[e]very member of a labor organization shall have equal rights to vote in elections subject to reasonable rules and regulations.' 29 U.S.C. § 411. . . . [W]e do not believe that § 452.93 is an impermissible interpretation of the Act. . . . While we do not think that any interpretive regulation the Secretary might promulgate that dealt with § 411 would necessarily be proper, the regulation here is reasonable. The Supreme Court has recognized that retirees are not 'employees' for all labor law purposes. The primary purpose of a union is the representation of employees. Allowing unions to exclude non-employee members from elections can be perfectly sensible and proper.") (cleaned up; citing *Allied Chemical*, 404 U.S. at 164-71).

### III.

The language of the UAW constitution does not expressly answer the question whether retired members may be elected to IEB offices, but it plainly suggests that retired members are not afforded rights to participate in or influence matters implicating collective bargaining. The Union and its Public Review Board have demonstrated that over a lengthy course of dealing they repeatedly have relied on this exclusionary principle to uphold policies by which retired members are not eligible to seek or hold offices with significant collective bargaining functions. The same principle reasonably was applied in this case by extending the policy to exclude retired members from holding positions on the IEB. That interpretation of the UAW constitution was fair and reasonable, and the decisions endorsing and affirming it were supported by substantial evidence.

Accordingly, it is **ORDERED** that the motion by James R. Coakley asking the Court to review and overturn an interpretation by the Union, the court-appointed Monitor, and the Adjudications Officer of the UAW's constitution as prohibiting retired members from running for

the office of President of the Union's International Executive Board (ECF No. 57) is **GRANTED IN PART AND DENIED IN PART**. The request to allow and conduct a review of the interpretive ruling is **GRANTED**. The motion is **DENIED** in all other respects, and the decisions of the Adjudications Officer and the Monitor are **AFFIRMED**.

<u>s/David M. Lawson</u>
DAVID M. LAWSON
United States District Judge

Dated: July 1, 2021