UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA<br>            PLAINTIFF, | CASE #: 20-CV-13293 |
| VS. | HON. DAVID M. LAWSON |
| INTERNATIONAL UNION, UNITED<br>AUTOMOBILE, AEROSPACE, AND<br>AGRICULTURAL IMPLEMENT<br>WORKERS OF AMERICA,<br>            DEFENDANT. | |

## MOTION TO CLARIFY CONSENT DECREE

Pursuant to Paragraphs 2 and 69 of the Consent Decree (ECF No. 10), the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union"), moves for an order clarifying that, under the Consent Decree, it is permitted to review, designate, and/or redact or withhold confidential and privileged information in response to requests for production of documents served by the Court-appointed Monitor, Neil M. Barofsky (the "Monitor").

Pursuant to Local Rule 7.1, on June 18, 2024, the Union met and conferred in person with the Monitor and the United States Attorney concerning the issues raised by this motion.  The Union explained the nature of the relief requested and its legal basis to the Monitor and the United States Attorney and requested but did

1

not obtain their concurrence in the relief sought.  Further, on July 3, 2024, counsel

for the Union conferred telephonically with Assistant United States Attorney John

Neal and with counsel for the Monitor, explained the nature of the relief requested

in this motion, and requested concurrence but was denied.


Respectfully submitted,

**GUREWITZ & RABEN, PLC**

By:   */s/ Harold Gurewitz*
        Harold Gurewitz
        333 W. Fort Street, Suite 1400
        Detroit, MI 48226
        (313) 628-4733
        Email: hgurewitz@grpl.com
Dated: July 3, 2024        Attorney Bar Number: P14468

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

UNITED STATES OF AMERICA

        PLAINTIFF,

VS.

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

        DEFENDANT.

CASE #: 20-CV-13293

HON. DAVID M. LAWSON

**BRIEF IN SUPPORT OF MOTION TO CLARIFY CONSENT DECREE**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ……………………………………….…….1

BACKGROUND………………………………………………………...3

    The Consent Decree.........................................................................3

    The Rule 502 Order ........................................................................6

    The Monitor's Initial Requests Regarding the
    Investigation that Give Rise to the Present Dispute ...........................7

    The Monitor's Electronic Search Requests ........................................8

    The UAW's Process for Review and Production .................................9

DISCUSSION ……………………………………………………………11

    I.   The UAW Has the Right Under the Consent Decree, and the Law, to
        Review, Designate, and Redact Documents for Privileges Prior to
        Producing Them to the Monitor ..............................................11

    II.  The UAW's Cooperative Approach Here.................................14

    III. The Monitor's Position is Untenable in this Circumstance ...................21

CONCLUSION……………………………………………………………...24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*CFTC v. Weintraub*,
471 U.S. 343 (1985) ........................................................................23

*Int'l Union, UAW v. Garner*,
102 F.R.D. 108 (M.D. Tenn. 1984) ................................................20

*Kerns v. Caterpillar, Inc.*,
No. 3:06-CV-1113, 2008 WL 351233 (M.D. Tenn. Feb. 7, 2008) ...................19

*Mallick v. IBEW*,
749 F.2d 771 (D.C. Cir. 1984) ........................................................20

*Nat'l Ecological Found. v. Alexander*,
496 F.3d 466 (6th Cir. 2007) .......................................................3, 24

*Nat'l Hockey League Players' Ass'n v. Bettman*,
No. 93-CV-5769 (KMW),
1994 WL 38130 (S.D.N.Y. Feb. 4, 1994) ........................................19

*O'Malley v. NaphCare, Inc.*,
No. 3:12-CV-326, 2014 WL 806381 (S.D. Ohio Feb. 28, 2014) .......................13

*In re Perrigo Co.*,
128 F.3d 430 (6th Cir. 1997) ..........................................................11

*Titan International, Inc. v. George Becker*,
No. 00-CV-3257, Docket No. 96 (C.D. Ill. Nov. 26, 2002) ..............................19

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ................................................................11, 16

*Winnett v. Caterpillar, Inc.*,
No. 06-CV-00235,
2008 WL 399301 (M.D. Tenn. Feb. 6, 2008) .......................................12, 19, 20

**Administrative Decisions**

*Berbiglia, Inc.*,
    233 NLRB 1476 (1977) ..........................................................................19

**Statutes**

29 U.S.C. § 157 ......................................................................................18

**Other Authorities**

ABA Criminal Justice Standards, Monitors ..................................2, 12, 22

James B. Jacobs *et al.*, *The RICO Trusteeships After Twenty Years:
    A Progress Report*, 19 Lab. Law. 419, 427 (2004)..............................13

### STATEMENT OF ISSUES PRESENTED

Whether, under the Consent Decree, the UAW is permitted to review, designate, and/or redact or withhold confidential and privileged information in response to requests for production of documents served by the Monitor.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

ECF No. 10, Consent Decree, PageID.124-125, 131 (¶¶39, 41, 55, and 57).

ABA Criminal Justice Standards, Monitors § 24-4.2(2)(a).

*Upjohn Co. v. United States*, 449 U.S. 383 (1981).

## PRELIMINARY STATEMENT

The UAW is committed fully to cooperating with the Monitor and eliminating from the UAW any fraud, corruption, or illegal or unethical practices. It has communicated as much to all of its employees as recently as December 2023. Consistent with that commitment, when the Monitor opened an investigation on February 29, 2024, the Union voluntarily produced documents as well as staff and elected officials for interviews by the Monitor's attorneys.  In April, however, the Monitor made electronic discovery requests for an estimated 59,000 documents.  The Monitor rebuffed the Union's attempts to narrow the requested search terms.

Then, on May 10, 2024, the Monitor broadened the search terms even further and demanded that the Union produce what amounted to more than 200,000 documents.  A request this large is unprecedented under the Consent Decree, and a vast majority of the requested documents are unrelated to the February 29 investigation due to the broad nature of the search terms.  More importantly, the documents include information that is either protected by the attorney-client privilege or work-product doctrine or otherwise reveals highly sensitive collective bargaining strategy.  The Consent Decree recognizes, with respect to discussions, that the Monitor "shall not be entitled" to such materials.  ECF No. 10, PageID.131

1

(¶55).  And the 502 Order previously entered in this case recognizes that, while "[t]he UAW *may* provide privileged or otherwise legally protected information to the Monitor in connection with this case," it has the right to "notify the Monitor what information, if any, it shares with the Monitor that it believes is privileged or otherwise protected."  ECF No. 40, PageID.399 (¶2) (emphasis added).

Accordingly, in response to the Monitor's voluminous demands, the UAW asserted a need to review the requested materials before providing them to the Monitor in order to designate materials the Union reasonably believes may be privileged or otherwise protected.  In addition, the Union believes it has a right under the Consent Decree to redact or withhold privileged information or documents that reveal the Union's collective bargaining strategy.  The Union's position is consistent not only with the Consent Decree (*see, e.g.*, PageID.131 (¶55)), but with the American Bar Association standards governing monitorships, which provide that "the Host Organization should not be required to disclose information that is subject to the attorney-client privilege or the attorney work-product doctrine, or the disclosure of which would otherwise be inconsistent with applicable law."  ABA Criminal Justice Standards, Monitors § 24-4.2(2)(a), *see infra* p.12.

The Monitor, however, disagrees and takes the position that "the Union's privilege and confidentiality positions . . . are without merit and have been

2

preventing the Monitor from carrying out his work under the Consent Decree."
ECF No. 124, Monitor's Ninth Status Report, PageID.2328.  The Monitor instead
asserts that the UAW must make all materials available to the Monitor without any
prior review by the Union, whether for redaction or even for designation and that
such review appears to constitute "obstruction" of its investigation under
Paragraph 18(d) of the Consent Decree.  The parties discussed these issues in
person on June 18, 2024, but were unable to reach an agreement.

The UAW thus seeks an order clarifying that, under the Consent Decree, the
Union is permitted to review, designate, and/or redact or withhold confidential,
privileged, and otherwise protected materials before producing them to the Monitor
and that this alone does not constitute obstruction of the Monitor's investigation.
*See Nat'l Ecological Found. v. Alexander*, 496 F.3d 466 (6th Cir. 2007)
(addressing motion to clarify consent decree).

**BACKGROUND**

1.  **The Consent Decree**

The Court entered the Consent Decree on January 29, 2021.  Consent
Decree, PageID.108.  The UAW agreed then, as it does now, that it is "imperative"
that the UAW be free of criminal conduct and operated with "integrity and for the
benefit of its members."  *Id*.  The United States and UAW moreover agreed that
the "honest and duly-elected officials of the UAW are the best equipped to

3

collectively bargain" on its members' behalf.  *Id.*, PageID.109.  Thus, the Consent Decree permits the UAW to "continue to negotiate and administer its collective bargaining agreements absent oversight or approval from the United States government," *except* as may be "necessary to ensure the elimination of fraud, corruption or illegal conduct."  *Id.*

To prevent such conduct, the Consent Decree provides for a Monitor to "remove fraud, corruption, illegal behavior, dishonesty, and unethical practices from the UAW."  *Id.*, PageID.119 (¶28).  The Monitor has the "right and authority of the UAW International President and [International Executive Board] to bring [disciplinary] charges" against an officer or member when such person, *inter alia*, violates the Consent Decree, *id.* (¶29), including by "[o]bstructing or otherwise interfering, directly or indirectly, in any way or degree," with the Monitor's work. *Id.*, PageID.114-115 (¶18(d)).

Before filing disciplinary charges, the Monitor may enlist the *voluntary* "cooperative efforts" of the Union in providing the Monitor with documents or information or otherwise making witnesses available.  *Id.*, PageID.108; *see also* ECF No. 49, Monitor's Initial Status Report, PageID.592.  Once those disciplinary proceedings have commenced, the Monitor may "require" the UAW to "produce any book, paper, document, record or other tangible object" for use in a hearing. Consent Decree, PageID.123-124 (¶37).

4

The Monitor also may, "subject to" Rule 45 of the Federal Rules of Civil Procedure, issue subpoenas for testimony or documentary evidence that are enforced through the disciplinary procedure or the Court. *Id.*, PageID.124 (¶39). This protection affords the subpoenaed party an opportunity to challenge the subpoena, which the court "must" quash if it "requires the disclosure of privileged or other protected matter" if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). Failure to produce documents under these provisions may not be the basis for discipline if there is a "valid claim of attorney-client or other legally valid privilege." Consent Decree, PageID.125 (¶41).

The Consent Decree also contains a section governing the Monitor's "Access to Information." *Id.*, PageID.131 (¶¶55-57). That section provides that, with respect to the right to attend International Executive Board ("IEB") meetings, the "Monitor shall not be entitled to attend or listen to meetings or portions of meetings protected by attorney-client privilege or concerning collective bargaining strategy." *Id.* (¶55). Furthermore, the Monitor's right to review "financial data, books, records, audit findings and other similar records" is limited only to such "non-confidential" documents. *Id.* (¶57).

This Court has "exclusive jurisdiction to decide any and all issues and disputes arising from the interpretation or application of" the Consent Decree. *Id.*, PageID.110 (¶2).

2.   **The Rule 502 Order**

To assist in its "cooperative efforts" under the Consent Decree, the Union has sought to voluntarily cooperate with the Monitor's requests for information without fear that it would be waiving any applicable privileges.  Accordingly, and within months after the Decree was entered, the UAW filed an unopposed motion pursuant to Rule 502 of the Federal Rules of Evidence for an order governing the disclosure of privileged or otherwise protected materials.  *See* ECF No. 37, Unopposed Motion By Defendant UAW For Entry Of An Order Governing Disclosure Of Privileged Information To The Monitor.  After a hearing and further consideration, the Court granted the motion and entered the Order Governing Disclosure of Privileged Materials (the "Order" or "502 Order").  *See* ECF Nos. 40 (order) and 55 (transcript of hearing on July 29, 2021).  The Order expressly states: "The UAW *may* provide privileged or otherwise legally protected information to the Monitor in connection with this case, and it shall notify the Monitor what information, if any, it shares with the Monitor that it believes is privileged or otherwise protected."  PageID.399 (¶2) (emphasis added).  This Order, which does not *require* the UAW to provide "privileged or otherwise legally protected information to the Monitor," has allowed the UAW to do so without waiving such privileges or protections.  *Id*. (¶3).

6

3.      **The Monitor's Initial Requests regarding the Investigation that Give Rise to the Present Dispute**

As noted above, in late February 2024, the Monitor began an investigation into a complaint about the removal of certain officer assignments and submitted to the UAW a request for documents and a request for interviews.  Specifically, by letter dated February 29, 2024, the Monitor requested documents in several categories, such as documents "related to the changes made to the Union's Policy Framework and T&E Policy."  During April 2024, the Monitor requested interviews with the UAW's staff and elected officials, including with three attorneys who have served as outside legal counsel and, in one instance, as acting general counsel for the UAW.

The UAW complied with these requests.  The UAW collected, reviewed, and produced approximately 2,000 pages in documentation through May, and it made all witnesses available for the requested interviews, except for one person who was no longer available because he had retired.  The UAW did not withhold or redact any documents.  The UAW was careful, however, to designate certain documents and certain portions of the interviews as *privileged* and *confidential*, where appropriate, pursuant to the Court's Rule 502 Order.  Order, PageID.399 (¶2).  It also made clear to the Monitor the Union's position that it had the *right* to

withhold privileged or otherwise protected information.  *See* Monitor's Ninth

Status Report, PageID.2318-2319.

As of June 10, 2024, when the Monitor filed his Ninth Status Report, the

UAW had produced, and the Monitor had interviewed, a total of 22 UAW officials,

staff, and attorneys.  Since that time, eight more individuals were interviewed, for a

total of thirty (30) individual interviews, with six more interviews to be conducted.

**4.      The Monitor's Electronic Search Requests**

On April 9, 2024, the Monitor requested *additional* electronic documents to

be collected via search terms.  This request *far* exceeded the scope of the prior

requests—it sought all emails and documents from 13 "custodians" (elected

officials, staff, and three outside attorneys), from "March 1, 2023 to present," using

25 search terms (such as "picket sign," and "exception*"), as well as ***all*** emails and

documents from 11 custodians from February 12 to February 23, 2024.  The

Monitor initially described these custodians and search terms as "propose[d]."  The

UAW determined there were at least 59,000 documents that contained a search

term ("hits").

On April 22, 2024, the UAW conferred with the Monitor via Zoom in an

effort to refine the "proposed" terms given that some generated thousands of hits

touching on a wide range of subjects, from unrelated employment personnel

policies to collective bargaining documents, which have nothing to do with the at-issue complaint.  The Monitor, however, rejected this effort.

Nonetheless, while beginning to gather the requested documents, the UAW continued to seek discussions with the Monitor to tailor the search terms.  On May 9, 2024, at the Monitor's request, the UAW provided the Monitor with suggestions; once again, however, the Monitor would not agree to narrow any of the "proposed" terms.  The next day, the Monitor sent an updated and ***expanded*** set of electronic searches, increasing the number of custodians from 13 to 21, and doubling the number of search terms from 25 to 50.  The new search terms expanded the number of hits to at least 160,000 – almost triple the previous estimate and far more than in-house UAW staff could possibly review for applicable privileges and confidentiality.

5.    **The UAW's Process for Review and Production**

In an effort to address the electronic searches, and other electronic searches going forward, the UAW retained a law firm with experience in electronic discovery as well as an e-discovery vendor capable of handling data searches of this magnitude.  The UAW's intent at all times was to comply voluntarily with the Monitor's requests as well as to establish a ***process*** by which the UAW would be able to continue its voluntary cooperation with the Monitor, even in the face of exponentially growing searches.  The UAW was able to secure the law firm's

9

services within one week of receiving the substantially broadened electronic

discovery requests.

The law firm and vendor initially discovered that the UAW's previous

internal estimate of the May 10 searches was an undercount.  The number of

"hits," including their attachments, was actually closer to 216,000.  Finally,

through cooperative discussions between June 3 and June 7, the Monitor agreed to

narrow and prioritize the search terms, so that the total number of requested

documents was reduced to approximately 116,000.  The UAW then began to

review and produce emails and documents according to the Monitor's stated

priorities.

Since that time, and as of June 28, 2024, the UAW has produced

approximately 70,000 documents on a rolling basis, in batches, approximately once

per week – with designations of confidentiality and privilege where appropriate.

The UAW continues actively to review and produce documents on this basis.

Given the size and scope of the Monitor's searches, however, the UAW has now

identified but not yet produced some documents that will not only be designated

privileged and confidential, but that it intends, subject to the result of this Motion,

to produce in partially redacted form to preserve the applicable privilege or

protection (whether attorney-client privilege, attorney work product, and/or

collective bargaining strategy).

The Monitor asserts that "the Union's privilege and confidentiality positions … are without merit and have been preventing the Monitor from carrying out his work under the Consent Decree."  Monitor's Ninth Status Report, PageID.2328.  The Monitor also indicated that the Union's asserted lack of cooperation may prompt the Monitor "to seek the Court's intervention to enforce the Consent Decree."  *Id.*, PageID.2338.  This Motion followed.

**DISCUSSION**

**I.**   **The UAW Has the Right Under the Consent Decree, and the Law, to Review, Designate, and Redact Documents for Privileges Prior to Producing Them to the Monitor**

**A.**   Protecting privileged attorney-client communications from disclosure is essential to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The same rationale protects attorney work-product, including notes and memoranda revealing an attorney's mental processes.  *Id.* at 400.  The work-product rule applies to documents, records, and reports prepared by or at an attorney's direction.  *See In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997).

For similar reasons, sensitive and confidential collective bargaining and organizing strategy, the "trade secrets" of the union, are also shielded from disclosure.  This allows a union to strategize and deliberate internally during the

11

collective bargaining process without fear that such internal strategies and deliberations will later be disclosed.  *See Winnett v. Caterpillar, Inc.*, No. 06-CV-00235, 2008 WL 399301, at *3 (M.D. Tenn. Feb. 6, 2008) (granting protective order and recognizing bargaining strategy materials as confidential information under Rule 26(c), which protects trade secrets and confidential information); *see infra* pp. 19-20 (citing further cases).  This risk is heightened if attorneys who may view the document production, or read the publicized contents in a Monitor's report, could later be involved in future negotiations.

Finally, the American Bar Association's Criminal Justice Standards provide guidance on resolving legal issues that arise during a monitorship.  *See* https://www.americanbar.org/groups/criminal_justice/standards/MonitorsStandards/?login (last visited July 2, 2024).  Standard 24-4.2 specifically addresses access to records and information.  It states that the "Monitor should have access to all information that is reasonably necessary to fulfill the duties of the Court Order or the Agreement, as determined by the Monitor."  *Id.* § 24-4.2(1)(a).  *However*, it circumscribes this right by stating that: "Notwithstanding subsection (1), the Host Organization should not be required to disclose information that is subject to the attorney-client privilege or the attorney work-product doctrine, or the disclosure of which would otherwise be inconsistent with applicable law."  *Id.* § 24-4.2(2)(a).  Courts frequently use the ABA's Criminal Justice Standards for guidance.  *E.g.*,

*O'Malley v. NaphCare, Inc.*, No. 3:12-CV-326, 2014 WL 806381, at *13 (S.D.
Ohio Feb. 28, 2014) ("Courts have relied on the persuasive authority of the ABA's
Criminal Justice Standards in countless federal and state opinions") (citing
*Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

**B**.      The powers of a court-appointed monitor emanate solely from the
consent decree issued by the court.  *See* James B. Jacobs *et al.*, *The RICO
Trusteeships After Twenty Years: A Progress Report*, 19 Lab. Law. 419, 427
(2004).  Here, the Consent Decree adopts the default ABA rules shielding
confidential and privileged information from disclosure during a monitorship, and
the UAW may review, designate, and/or withhold such information before
producing it to the Monitor.

Thus, under Paragraph 55 of the Consent Decree, the Monitor is "not . . .
entitled" to information that is "protected by [the] attorney-client privilege" or
"concern[s] collective bargaining strategy."  PageID.131 (¶55).  Although this
provision nominally refers only to "meetings," other portions of the Decree
confirm that these protections apply to documents as well.  *See, e.g.*, PageID.131
(¶57) (limiting the Monitor's right to review documents to "non-confidential"
books and records, necessarily shielding "confidential" attorney-client
communications and collective bargaining strategy from disclosure); PageID.124
(¶39) (requiring the court to quash a document subpoena issued by the Monitor if it

13

"requires the disclosure of privileged or other protected matter"); PageID.125 (¶41) (prohibiting discipline for failure to produce documents where there is a "valid claim of attorney-client or other legally valid privilege"); PageID.124 (¶38) (requiring UAW officials serving on outside boards to provide only "non-privileged records"). This interpretation is consistent with the Court's Rule 502 Order, which allows, but *does not require*, the UAW to provide privileged and other legally protected information to the Monitor without waiving the protection. PageID.399 (¶2).  Indeed, the 502 Order authorizes the UAW to "notify the Monitor" what information the Union believes is "privileged or otherwise protected," expressly acknowledging the Union's right to review and designate documents.  *Id.*

In short, far from altering the default rules governing monitorships, the Consent Decree's provisions regarding the Monitor's authority to access information, issue subpoenas, and discipline individuals for refusing to provide documents confirm that the UAW's confidential and privileged information should remain protected from disclosure.

## II.    The UAW's Cooperative Approach Here

The UAW recognizes the Monitor's need for a prompt investigation of matters involving fraud, corruption, illegal behavior, dishonesty, and unethical practices.  Consent Decree, PageID.119 (¶28). Indeed, with respect to the February

14

29 investigation, since the Monitor insisted on extraordinarily broad search terms on May 10, 2024, the Union has voluntarily produced more than *70,000 documents* encompassing more than 750,000 pages of materials, and continues to produce more on a rolling basis.  This is in addition to voluntarily facilitating the Monitor's interviews of thirty witnesses.  To obtain this degree of cooperation did not require the Monitor to resort to any of his compulsory powers (*i.e.*, charges or subpoenas).

Indeed, since the Consent Decree's inception, even the Monitor has stated that he "respects the sanctity of the UAW's assertion of privileges and has sought to accommodate them whenever possible."  ECF No. 49, Monitor's Initial Status Report, PageID.523.  That sanctity, however, cannot be preserved if the Monitor can compel the production of more than 116,000 documents, the vast majority of which have *nothing to do* with the investigation but sweep into their scope the most highly sensitive privileged and collective bargaining strategy documents that the Union holds.  In these circumstances, the Union must be able to review and designate and/or redact privileged documents.

That is the approach that the UAW has taken here.  The UAW is now reviewing the 116,000 documents in an exceptionally quick fashion and marking certain ones confidential and/or privileged or containing collective bargaining strategy where appropriate.  Moreover, there are some documents that the UAW has identified during the review that, subject to the result of this Motion, the Union

15

intends to produce in redacted form (along with a privilege log) to protect the relevant information.  These documents fit into three broad categories.

*First*, the Union intends to redact attorney-client privileged or work product documents containing advice concerning the Monitorship itself.  For example, after the Monitor sent his February 29, 2024 request for information, the Union's General Counsel and outside counsel communicated about how to gather the requested documents and how to respond to the request.  These counsel, along with their client, circulated and commented on drafts of potential responses.  This is precisely the "full and frank" communication about how to deal with the Monitor that must be shielded from disclosure if the UAW's counsel is expected to be able to provide legal advice to their client about *how* to comply with the Monitor's requests and whether those requests are within the scope of the Consent Decree.  *Upjohn Co.*, 449 U.S. at 389.  Although the Monitor stated in his Ninth Report that he is "not interested" in these documents, PageID.2330 n.36, they are included within the Monitor's search terms, and the UAW must review the documents to identify and redact them *prior* to their production.

*Second*, the Union intends to redact attorney-client privileged or work-product documents that are related to collective bargaining or organizing strategy but *unrelated* to the relevant Monitor investigations.  Thus, for example, where an attorney provides advice about whether a particular collective bargaining proposal

16

is mandatory, permissive, or illegal, that document may be redacted.  Or where an attorney provides legal advice about whether a particular strike strategy is legal or carries any liability risk, that may also be withheld from production.  Similarly, where Union counsel provides legal advice concerning an organizing drive, such as the legal obstacles to prevail in an NLRB election hearing, that too could be redacted.

Nevertheless, the Union *has* voluntarily produced attorney-client privileged documents that are related to collective bargaining where such documents *are* related to the relevant Monitor investigation.  For example, the Union produced to the Monitor an unredacted twelve-page attorney-client privileged memorandum that cites heavily to case law and addresses strike related issues at an employer, because it was related to the investigation.

*Third*, in addition to attorney-client privileged documents and documents reflecting attorney work product, the UAW also intends to redact documents that would reveal highly sensitive internal collective bargaining or organizing strategies that are unrelated to the relevant Monitor investigations.  Here, the temporal scope of the Monitor's document requests involve monumental moments in the UAW's history: negotiations with the Big Three automakers that resulted in unprecedented bargaining achievements through a highly unique and unpredictable rolling strike strategy, as well a massive financial investment in organizing new workers at

17

automotive factories in the South (and elsewhere), including at Volkswagen, BMW, Mercedes Benz, and Toyota.[1]  The Monitor's broad terms sweep up highly sensitive collective bargaining strategic documents, the disclosure of which could be extraordinarily harmful to future strikes and to both future and ongoing collective bargaining and organizing drives.[2]  These are, of course, the UAW's primary functions.  It is for this reason that the Consent Decree explicitly carves out the Union's ability to exclude the Monitor from discussions "concerning collective bargaining strategy."  Consent Decree, PageID.131 (¶55).

Protecting materials related to collective bargaining and organizing strategy from disclosure is integral to the basic framework of our national labor laws.  Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, guarantees employees the right to strike, to organize a union, and to negotiate with employers over their conditions of employment.  Internal documents that reflect these strategies are thus

---

[1] *See, e.g.*, Noam Schreiber, *Strike Is a High-Stakes Gamble for Autoworkers and the Labor Movement*, N.Y. Times, Sept. 19, 2023; Neal E. Boudette, *U.A.W. Announces Drive to Organize Nonunion Plants*, N.Y. Times, Nov. 29, 2023.

[2] These documents could include, for example, documents reflecting leadership discussions regarding strategy and priorities during bargaining, strikes, and other labor disputes; documents revealing organizing targets and strategies, including communications with employees of organizing targets; draft contract proposals not presented during bargaining and other research materials used to create contract proposals; and other documents reflecting collective bargaining strategy, analyses of labor disputes, and/or bargaining issues.

18

protected from disclosure, lest the risk of their release blunt employees' Section 7 rights and chill their unions' concomitant ability to engage in frank communications essential to effective organizing and negotiating.

As recognized by the National Labor Relations Board ("NLRB" or the "Board"), for collective bargaining to work and for industrial peace to be maintained, unions and employers must be able to strategize and deliberate internally during the collective bargaining process without fear that such internal strategies and deliberations will later be disclosed.  Thus, the NLRB has protected collective bargaining strategy—of both unions and employers—from disclosure during Board proceedings. *E.g.*, *Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977).

Consistent with this Board law and Paragraph 55 of the Consent Decree, federal courts, including within the Sixth Circuit, have recognized the need to protect collective bargaining strategy materials from disclosure under Rule 26(c).  *E.g.*, *Winnett*, 2008 WL 399301 at *3 (granting protective order); *Kerns v. Caterpillar, Inc.*, No. 3:06-CV-1113, 2008 WL 351233, at *3 (M.D. Tenn. Feb. 7, 2008) (same; companion case); *Titan International, Inc. v. George Becker*, No. 00-CV-3257, Docket No. 96, Slip. Op. at 20 (C.D. Ill. Nov. 26, 2002) (granting protective order because bargaining information is confidential) (available at Docket No. 112-3 in *Kerns*); *Nat'l Hockey League Players' Ass'n v. Bettman*, No. 93-CV-5769 (KMW), 1994 WL 38130, at *4 (S.D.N.Y. Feb. 4, 1994) (preventing discovery into "issues

of collective bargaining strategy or goal"); *see also Mallick v. IBEW*, 749 F.2d 771, 785 (D.C. Cir. 1984) (protecting from disclosure to members information that would reveal a union's "organizing strategy" or "negotiating plans").

Thus, in a case involving the UAW, an employer subpoenaed materials related to the Union's collective bargaining negotiations, and the UAW sought a protective order under Rule 26(c) contending that the materials reflected "internal union strategies" concerning bargaining. *Winnett*, 2008 WL 399301, at *1. The court granted the motion, emphasizing that materials related to "collective bargaining strategy and priorities" are confidential and that their disclosure would place the UAW at a "competitive disadvantage." *Id.* at *3. It therefore held that the UAW's "internal strategy materials" were protected from disclosure under Rule 26 in order to "maintain the Union's ability to represent employees in future negotiations[.]" *Id.* at *4; *see also Int'l Union, UAW v. Garner*, 102 F.R.D. 108, 114 (M.D. Tenn. 1984) (employer could not compel UAW's production of documents relating to its plan to unionize one of the employer's plants).

Here too, under the Consent Decree, highly sensitive collective bargaining strategy and organizing strategy materials, in addition to those protected by the

attorney-client privilege and work product doctrine, should be protected, and the UAW should be permitted to redact such documents.[3]

## III. The Monitor's Position is Untenable in this Circumstance

The Monitor takes the position that the UAW may not withhold or redact any documents, and that even reviewing them prior to production is an "apparent violation of the Consent Decree." Monitor's Ninth Status Report, PageID.2320. But where, like here, the Monitor has made a massively broad electronic search request that necessarily encompasses a significant amount of documents that are irrelevant to the investigation, and may well be privileged, his arguments lack force.

The Monitor initially contends that the UAW's position is inconsistent with a December 2023 memorandum where the Union stated that the Monitor "stands precisely in the shoes of the Union itself" and that the Union should thus "share any and all information requested." Monitor's Ninth Status Report, PageID.2317, 2332-2333. But the context is critical. This memorandum was issued to staff generally and assumed that the material requested would be narrow in scope and related to the particular investigation, *not* a broad request that would result in the production of virtually every email a custodian sent or received over the last year. The Monitor's request amounts to a takeover of the UAW's computer and email systems, giving

---

[3] For all three categories of documents, the Union welcomes preparing a selection for *in camera* review by the Court.

the Monitor access to *all* of the Union's electronic information.  The December memorandum did not presume that such an overbroad action is appropriate.

The Monitor next contends that the Consent Decree "requires the Union to provide the Monitor with full access to the requested documents."  Monitor's Ninth Status Report, PageID.2328.  For this point, the Monitor primarily relies on two provisions of the Decree.  First, it relies on the Monitor's "right and authority of the UAW International President and IEB to bring charges seeking to discipline" UAW officials.  *Id.* (citing Consent Decree ¶¶29-30, 36).  The Monitor asserts that the right to bring charges necessarily encompasses the right to obtain the documents necessary to bring the charges.  The problem with the Monitor's position *here* is that he has requested such a broad set of documents that most of the documents have *nothing to do* with the potential charges he may bring.  It cannot be that simply because the Monitor has the right to bring charges that he has unbridled access to any and all UAW documents *even if* they bear no relation to the potential charge.  Moreover, such an interpretation is at odds with ABA Standard § 24-4.2(2)(a), which provides that host organizations have the right to withhold privileged material from a Monitor.

Second, the Monitor relies on the provision of the Consent Decree stating that the Monitor has "all of the powers, privileges and immunities of a person appointed pursuant to Rule 66 of the Federal Rules of Civil Procedure and which are customary

for court appointed offices performing similar assignments." Monitor's Ninth Status Report, PageID.2329 (citing Consent Decree ¶27). This provision does not, however, provide the Monitor with access to all of the UAW's privileged documents under *this* Consent Decree. Rather, the privilege of an entity is controlled by its "management and is normally exercised by its officers and directors." *E.g.*, *CFTC v. Weintraub*, 471 U.S. 343, 349 (1985). Only when the receiver has taken control of the entity's management and board functions does the right to control the privilege pass to the receiver. *Weintraub*, 471 U.S. at 353. That is the case in each of the receivership cases that the Monitor cites in footnotes 34 and 35 of his Ninth Report. But it is *not* the case here. Under the Consent Decree, the IEB, but for the need to eliminate fraud and unethical practices, still controls the management of the Union and its collective bargaining functions, and thus retains the right to control its privileges. Consent Decree, PageID.108-109. That interpretation is consistent with the second part of Paragraph 27, which states that the Monitor's rights are limited to those "which are customary for court appointed offices performing similar assignments." *Id.*, PageID.118-119. When the receivers' rights are limited to the investigative functions of the Monitor here and do not involve control of all management functions of the Union, then, as the ABA Standards recognize, control of the privilege remains with the Board of the Union.

23

At bottom, the Monitor's expansive interpretation of paragraph 27 (receiver authority) and paragraphs 29 and 36 (charging and disciplinary authority) of the Consent Decree would render meaningless the Decree's provisions which allow the UAW to protect its attorney-client privilege and collective bargaining strategy – or allow the UAW to seek a protective order under Fed. R. Civ. P. 45 in response to a Monitor-issued subpoena.  Such an interpretation should be rejected.  *See Nat'l Ecological Found.,* 496 F.3d at 477-78 (like other contracts, consent decrees must be interpreted according to their terms).

## CONCLUSION

The UAW requests that the Court issue an Order clarifying that UAW's review, designation, and/or redaction of confidential, privileged, and otherwise protected collective bargaining strategy materials before producing them to the Monitor is permitted by the Decree and does not alone constitute obstruction of the Monitor's investigation.

Respectfully submitted,

**GUREWITZ & RABEN, PLC**

By:  */s/ Harold Gurewitz*
Harold Gurewitz
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grpl.com
Dated: July 3, 2024          Attorney Bar Number: P14468

24