# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA       CASE #: 20-CV-13293
          PLAINTIFF,

VS.                    HON. DAVID M. LAWSON

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,
          DEFENDANT.

---

## UAW'S CONSOLIDATED RESPONSE TO
## MONITOR'S MOTION TO ENFORCE THE CONSENT DECREE
## AND REPLY IN SUPPORT OF
## THE UNION'S MOTION TO CLARIFY CONSENT DECREE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................1

BACKGROUND ..........................................................................................4

    The UAW's Continued Cooperation with the Monitor ...................................4

DISCUSSION ..............................................................................................6

I.   The Terms of the Consent Decree Provide the UAW With the Right to
Review, Designate, and Redact Documents for Privileges Prior to
Producing Them to the Monitor ...............................................................6

    A.  The IEB and President's Authority .................................................7

    B.  Receiver Powers.......................................................................9

    C.  The Decree's Effectiveness.........................................................14

    D.  Other Arguments By the Monitor and Government Lack Merit ..17

II.  The Court Should Follow the ABA Standards Here ...............................22

CONCLUSION ...........................................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*CFTC v. Standard Forex, Inc.*,
   882 F. Supp. 40 (E.D.N.Y. 1995) ...................................................................10, 11

*CFTC v. Weintraub*,
   471 U.S. 343 (1985)........................................................................................10, 13

*Cobell v. Norton*,
   213 F.R.D. 48 (D.D.C. 2003)..........................................................................13, 14

*Digital Media Solutions, LLC v. S. Univ. of Ohio*,
   59 F.4th 772 (6th Cir. 2023) ................................................................................11

*In re Grand Jury Subpoenas*,
   454 F.3d 511 (6th Cir. 2006) ...............................................................................17

*Jt. Council 73 v. Teamsters*,
   741 F. Supp. 491 (S.D.N.Y. 1990) ......................................................................13

*Liberte Capital Group v. Capwill*,
   462 F.3d 543 (6th Cir. 2006) ...............................................................................12

*MFS & Co., LLC v. Caterpillar*,
   No. 09-CV-14063, 2010 WL 11549935
   (E.D. Mich. Sept. 20, 2010) ................................................................................11

*SEC v. Bravata*,
   No. 09-CV-12950, 2011 WL 606745 (E.D. Mich. Feb. 11, 2011) ....................10

*SEC v. Elfindepan*,
   169 F. Supp. 2d 420 (M.D.N.C. 2001) .........................................................10, 11

*SEC v. Ryan*,
   747 F. Supp. 2d 355 (S.D.N.Y. 2010) ................................................................10

*Shy v. Navistar Int'l Corp.*,
   701 F.3d 523 (6th Cir. 2012) .................................................................................6

*Strickland v. Washington*,
    466 U.S. 668 (1984).................................................................................22

*United States v. Dist. Council of Carpenters*,
    No. 90-CV-5722 (CSH), 2004 WL 1542258
    (S.D.N.Y. July 9, 2004) ......................................................................13

*United States v. HERE Union*,
    No. 95-CV-4596 (D.N.J. Sept. 5, 1995) ............................................12

*United States v. Loc. 1804-1*, No. 90-CV-0963 (JSM),
    2003 WL 221851 (S.D.N.Y. Jan. 30, 2003) ......................................12

**Other Authorities**

Fed. R. Civ. P. 45 ..........................................................................9, 18, 19

ABA Criminal Justice Standards, Monitors ...................................1, 6, 22

*The Guide to Monitorships*, Anthony S. Barkow, *et al.*, (2019) .............21, 22, 23

## STATEMENT OF ISSUES PRESENTED

Whether, under the Consent Decree, the UAW is permitted to review, designate, and/or redact or withhold confidential and privileged information in response to requests for production of documents served by the Monitor.

## <u>C</u>ONTROLLING OR <u>M</u>OST <u>A</u>PPROPRIATE <u>A</u>UTHORITY

ECF No. 10, Consent Decree (Preamble, ¶¶39, 41, 55, and 57).

ABA Criminal Justice Standards, Monitors § 24-4.2(2)(a).

Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union") respectfully submits this combined response and reply brief in opposition to the Motion to Enforce the Consent Decree filed by the Court-appointed Monitor, Neil M. Barofsky (the "Monitor"), ECF No. 128 ("Monitor Br."), and in further support of the Union's Motion to Clarify the Consent Decree, ECF No. 127 ("UAW Br.").

## PRELIMINARY STATEMENT

As the UAW agreed in the Consent Decree, and still strongly believes, it is "imperative" that the UAW be free of "criminal conduct" and operated with "integrity and for the benefit of its members." ECF No. 10, PageID.108 (Preamble). Nevertheless, as the UAW explained in its opening brief, the American Bar Association has issued Criminal Justice Standards that provide default rules governing monitorships. Though not binding, they are *persuasive norms of practice* that deal directly with the issue presented here, and they come to the precise conclusion that the Union advocates: the "Host Organization should not be required to disclose information [to the Monitor] that is subject to the attorney-client privilege or the attorney work-product doctrine, or the disclosure of which would otherwise be inconsistent with applicable law." ECF No. 127-2, ABA Criminal Justice Standards, PageID.2398, § 24-4.2(2)(a). The United States Attorney, who filed a

1

brief in support of the Monitor, ECF No. 133 ("USA Br."), does not mention the Standards in his papers, and the Monitor merely argues that they are overridden by the terms of the Consent Decree. But, as we show below, the Decree is consistent with the Standards. If the parties intended the Decree to differ from or override the Standards, the Decree must unambiguously state that the Monitor is entitled to privileged documents. It does not.

Yet the Monitor (and the United States) contend that the Monitor is entitled to "direct and immediate access" to any and all documents that he requests as part of an investigation. Monitor Br., PageID.2430. In support, they rely primarily on Paragraph 29 of the Consent Decree, which states that the "Monitor shall have the right and authority of the UAW International President and IEB [International Executive Board] to bring charges" against union members and officers. PageID.119. But as demonstrated below, it is a bridge significantly too far for the Monitor to claim that the right to "bring charges" necessarily includes the extraordinarily broad right to obtain immediately upon demand any document that the Union possesses even if it is privileged or otherwise protected. Similarly, the Monitor's reliance on Paragraph 27 of the Consent Decree, which provides the Monitor with the powers of a Rule 66 receiver, does not extend as far as the Monitor claims; the Consent Decree does not provide the Monitor with receiver powers concerning the Union's collective bargaining and administration functions, which

are documents that the Monitor seeks to obtain here.  In other words, the Monitor's position attempts to expand his authority well beyond what is provided in the Consent Decree.

Nor would the Union's position interfere with the Monitor's investigative mandate.  The UAW has retained outside counsel and a discovery vendor to implement a process by which it can produce the large number of requested documents in a reasonably prompt manner.  Indeed, in fewer than seven weeks from when these entities began reviewing documents, the UAW produced to the Monitor almost ***140,000 documents consisting of more than 1.5 million pages***. Moreover, if the Monitor narrowed his requests to demand fewer documents, the process could proceed much more rapidly, which the past month has shown: when the Monitor agreed to requests calling for 10,400 documents for an investigation regarding a Regional Director, the UAW produced them all (but for 17 redacted ones) within 12 business days of the Monitor's request to prioritize those searches.

For these reasons, and those set forth below, the Court should grant the Union's motion and deny the Monitor's motion.

3

<u>**B**ACKGROUND</u>

**<u>The UAW's Continued Cooperation with the Monitor</u>**

In its opening papers, the UAW described its ongoing cooperation with the Monitor, the new process it established – in response to the Monitor's unprecedented electronic document requests regarding the removal of certain officer assignments – to use additional outside counsel and an e-discovery vendor to ensure documents were produced as promptly as reasonably possible, as well as the Union's significant document production to date.  Between June 3, when outside counsel began reviewing documents, and June 28, 2024, when the Union filed its motion, the UAW produced 70,000 documents on a rolling basis in response to the Monitor's requests.  UAW Br., PageID.2366-69.  Since that time, the Union's cooperation has continued:  on July 18, it completed the production of all emails and electronic documents related to the officer assignment investigation, totaling 128,076 documents and 1.27 million pages.  The Union did not withhold any documents, but it did redact 451 documents for attorney-client or work product privilege or on the basis of collective bargaining strategy.  The redacted documents involved either legal advice concerning the monitorship itself, or legal or otherwise protected advice

concerning collective bargaining strategy that was unrelated to the investigation.  *See* UAW Br., PageID.2374-78.

Similarly, with respect to the Monitor's investigation of a Regional Director, *see* Monitor Br., PageID.2433, after the Union established its review process and provided "hit report" information to the Monitor in the first two weeks of June 2024, the Monitor, on June 21, asked the Union to prioritize certain documents related to that investigation over other documents related to the officer assignment investigation.  The UAW produced the prioritized documents within a week, and on July 10, completed the entire production, producing a total of 10,408 documents and redacting only 17.

Finally, with respect to the "expansion" of the first investigation, *see* Monitor Br., PageID.2342, the Monitor issued his electronic document requests on July 9, 2024.  He again sought a broad swath of documents from 13 custodians using 30 search terms (including, for example, "bonus," "MOU," "injury," and "profit sharing").  The UAW immediately transferred the custodial data to its e-discovery vendor, and on July 16, after the vendor had processed the data, the Union informed the Monitor that his terms yielded nearly 60,000 documents and requested that he provide additional terms and connector searches to narrow some of the overbroad terms.  Although still awaiting the Monitor's view on whether he will narrow the

search terms, the UAW has begun review of these documents and today has produced approximately 15,500 of them.

In sum, the UAW now has the process in place for a prompt review and production of electronic documents.

## DISCUSSION

I. **The Terms of the Consent Decree Provide the UAW With the Right to Review, Designate, and Redact Documents for Privileges Prior to Producing Them to the Monitor**

For the reasons stated in our opening brief, PageID.2370-80, the terms of the Consent Decree and governing law provide the UAW with the right to review documents, and designate or redact them, prior to producing them to the Monitor. In sum, the ABA's default rules governing monitorships expressly shield confidential and privileged information from disclosure to a monitor. *See* ABA Criminal Justice Standards § 24-4.2(2)(a); *see also* ECF No. 40, Rule 502 Order, PageID.399 (¶2) (UAW "may" provide the Monitor with privileged information and "shall notify the Monitor" what information the Union believes is "privileged or otherwise protected," expressly acknowledging the Union's right to review and designate documents). Absent unambiguous language otherwise in the Decree, the Monitor is not entitled to such information. There is no such language here. *See Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 530 (6th Cir. 2012) ("[T]he scope of a consent decree [must] be discerned within its four corners, and not by reference to

6

what might satisfy the purposes of one of the parties to the consent decree.") (quoting *United States v. Armour & Co.*, 402 U.S. 673 (1971)).

Instead, under Paragraph 57 of the Consent Decree, the Monitor is entitled only to "non-confidential" books and records of the UAW.  PageID.131. Although Paragraph 57 does not define "non-confidential," both its plain meaning and the broader structure of the Consent Decree confirm that "confidential" attorney-client communications and collective bargaining strategy are necessarily protected from disclosure. *See*, *e.g.*, Page ID.109 (Preamble) (the UAW, not the Monitor, retains the authority to "negotiate and administer [the Union's] collective bargaining agreements"]; PageID.131 (¶55) (during IEB meetings, the Monitor is "not . . . entitled" to information that is "protected by the attorney-client privilege" or "concern[s] collective bargaining strategy").

In his own motion, and in response to the UAW, the Monitor makes several unpersuasive arguments, which we address below.

A.   <u>**The IEB and President's Authority**</u>

Paragraph 29 of the Decree provides that the Monitor has the "right and authority of the UAW International President and IEB to bring charges" against UAW officials.  PageID.119.  Relying heavily on this clause, the Monitor and the U.S. Attorney argue that, because the Monitor has the right to "bring charges," he must therefore have "access to [all] Union documents" needed to investigate the

7

charge, including privileged and irrelevant ones, since it is the "Monitor who must make relevance determinations." Monitor Br., PageID.2439-40; USA Br., PageID.2671, 2675; ECF No. 134, Monitor Opp. Br., PageID.2690.

This is an extraordinary position that would expand the powers of the Monitor well beyond those set forth in the Consent Decree. From the bare statement in the Decree that the Monitor has the power of the President and IEB to "bring" charges — and it does not even explicitly say *investigate* those charges — he asserts that such power necessarily means that he has the unbridled right immediately effective on demand to access any and all documents in the UAW's possession, including all emails and electronic documents, regardless of whether they are privileged or even relevant to his functions under the Decree. And the Monitor has taken this position to its extreme: his electronic document requests here are so broad that the vast majority of the documents have *nothing to do* with the potential charges he may bring. *See* Monitor Br., PageID.2434 (the "search terms were broadly worded to encompass potentially relevant materials to enable the Monitor to review for relevant materials"). It is an untenable construction of the Consent Decree, made without case support, to read the ordinary right to "bring" charges as encompassing the much broader right to obtain privileged documents, including those having nothing to do with the investigation.

The Monitor argues that because the IEB has access to all of the Union's privileged material and it has certain rights under the UAW Constitution to rule on appeals and conduct investigations, then it necessarily follows that the Consent Decree gives the Monitor unfettered access to the same privileged materials. But the Consent Decree specifically addresses the Monitor's access to documents in a different way. Paragraph 29 provides that the Monitor has the right to bring charges "seeking to discipline" union officials. Consent Decree, PageID.119. But the Monitor's authority to "discipline" (as well as his receiver authority) is limited by Paragraph 36, which requires that the Monitor "afford the subject of potential disciplinary action with a fair and impartial process and hearing by using the following procedures," PageID.122, and as we explain below, *see infra* pp.17-20, those procedures include the right of the UAW to refuse to produce privileged information. The Monitor would then need to issue a subpoena, and the Union could, pursuant to Paragraph 39 of the Decree (PageID.124), rely on the protections of Rule 45 to seek to quash the subpoena because it seeks privileged information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

## B.    Receiver Powers

The Monitor also argues that, under the Consent Decree, he has the "powers and privileges" of a Rule 66 receiver and that those "acting as a receiver stand inside the privilege and work product of the entity." Monitor Br., Page

ID.2440-41. But as the UAW explained in its opening brief, the Supreme Court has held that the attorney-client privilege passes to the receiver when the receiver is empowered to take control of the entity's management and board functions. *CFTC v. Weintraub*, 471 U.S. 343, 349, 353 (1985); *see CFTC v. Standard Forex, Inc.*, 882 F. Supp. 40, 42 (E.D.N.Y. 1995) (the Supreme Court was "concerned less" with whether the person "happens to be . . . a receiver" and "more with a functional analysis" of which actor is "most analogous to the role played by management"). That was true in all the on-point receivership cases cited by the Monitor (as well as those cited by the United States). *See, e.g.*, *SEC v. Bravata*, No. 09-CV-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011) (the "appointing order provides the Receiver with broad authority to act on behalf of the receivership entities" in the same manner as a bankruptcy trustee); *SEC v. Ryan*, 747 F. Supp. 2d 355, 362 (S.D.N.Y. 2010) (order held that the receiver "succeeds to all current management of the entity and acts with the full force of law as its sole representative"); *SEC v. Elfindepan*, 169 F. Supp. 2d 420, 424 (M.D.N.C. 2001) (recognizing that the "scope and nature of a particular receivership will depend on the language" of the appointing

order and noting the receiver there was entitled to "take and maintain custody, control and possession of all assets and properties" of the entity).[1]

That, however, is not the grant of authority to *this* Monitor.  The Consent Decree explains that the "honest and duly-elected officials of the UAW are the best equipped to collectively bargain on behalf of its members and to enforce said agreements vigorously and aggressively," PageID.109 (Preamble), and that the Union may do so "absent oversight or approval from the United States government," unless necessary to eliminate fraud, corruption, or illegal conduct.  *Id.*; *see also id.* PageID.118-19 (¶27) (Monitor's rights are limited to those "which are customary for court appointed offices *performing similar assignments*") (emphasis added).  The IEB thus still controls the management of the Union and its core collective bargaining functions, including the right to control privileged and highly sensitive documents.

Although the Monitor argues that he nonetheless acts like a receiver when "exercising" his investigative mandate, Monitor Br., PageID.2441, that

---

[1] The other cases cited by the Monitor are not on point: *Digital Media Solutions, LLC v. S. Univ. of Ohio*, 59 F.4th 772, 779 (6th Cir. 2023), did not involve or discuss issues concerning attorney-client privilege at all but does note that, unlike here, receivers historically took "possession of all [the debtor's] property" and became "its manager," and *MFS & Co., LLC v. Caterpillar*, No. 09-CV-14063, 2010 WL 11549935, at *4 (E.D. Mich. Sept. 20, 2010), did not involve a receiver or monitor but an assignment for the benefit of creditors under Michigan state law.

sentiment cannot be squared with the Monitor's actual document requests here. Those requests, which the Monitor acknowledges were "broadly worded," *see id.* PageID.2434, originally swept up more than 200,000 documents, later reduced to more than 100,000 documents, the vast majority of which were unrelated to the actual investigation and contain privileged material concerning collective bargaining and contract administration.

At bottom, a "receiver's powers are coextensive with his order of appointment." *Liberte Capital Group v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Had the Consent Decree contemplated that the Monitor could access privileged materials, including privileged materials unrelated to the underlying investigation, it would have said so. *Cf. United States v. HERE Union*, No. 95-CV-4596 (D.N.J. Sept. 5, 1995), Consent Decree ¶17 (the "Monitor shall have **unfettered** access to, and the right to" copy, "***all*** records or documents" of the union) (attached); *United States v. Loc. 1804-1*, No. 90-CV-0963 (JSM), 2003 WL 221851, at *3 (S.D.N.Y. Jan. 30, 2003) (administrator had "[m]onitoring [a]uthority" to "examine all books and records" of union, "including, ***without limitation***, books and records of [union] in the possession or control of third parties," and to "attend all meetings" of union

"including, ***without limitation***, all meetings of the Executive Board and meetings of the general membership") (emphasis added in both).[2]

For the same reason, the Monitor's attempt to distinguish *Weintraub*, Monitor Opp. Br., PageID.2697, is unavailing. Under *Weintraub*, the Union retains control of its privilege with respect to its operations, including collective bargaining and administration, *except* as may be necessary to eliminate fraud or illegal conduct. *Weintraub*, 471 U.S. at 348-49, 353. But here, the Monitor has requested such a breadth of documents that it would necessarily pierce the Union's privilege with respect to matters controlled by the Union.

Similarly, the Monitor's heavy reliance on *Cobell v. Norton*, 213 F.R.D. 48 (D.D.C. 2003), is misplaced. *E.g.*, Monitor Opp. Br., PageID.2698-99, 2704, 2712. In addition to serving as a "special master" under Rule 53 of the Federal Rules of Civil Procedure, the monitor in *Cobell* was appointed as part of an ongoing litigation in order to "review all of the [] defendants' trust reform activities," *Cobell*,

---

[2] The cases the Monitor cites (at Monitor Opp. Br., PageID.2698) for the proposition that it is "customary" for court appointed officers involving unions to have "direct access" to documents are irrelevant as they do not address privilege issues or massively overbroad document requests. *See United States v. Dist. Council of Carpenters*, No. 90-CV-5722 (CSH), 2004 WL 1542258, at *2-3 (S.D.N.Y. July 9, 2004) (addressing only whether investigative reports should be made public, not scope of powers); *Jt. Council 73 v. Teamsters*, 741 F. Supp. 491, 492-93 (S.D.N.Y. 1990) (addressing only whether investigator's powers extended to subordinate bodies of union).

213 F.R.D. at 49, and in that capacity was considered an "adjunct of the Court" for purposes of the privilege. *Id.* at 55. Even then, the monitor was prohibited from utilizing documents (in a report or with plaintiffs) unless the *court* had "determined that the documents are not privileged." *Cobell*, 213 F.R.D. at 55. Here, by contrast, so long as the information may be "necessary to carry out" the Monitor's functions, *see* Consent Decree, PageID.131 (¶55), the Monitor is under no such obligation to come to the Court before using the documents in a way that would waive the Union's asserted privilege.

## C.   **The Decree's Effectiveness**

The Monitor also argues that the Union's interpretation of the Consent Decree would "render the Monitor's mandate ineffectual by allowing Union leadership to decide what documents the Monitor can see and when he can see them." Monitor Opp. Br., PageID.2695. This is hyperbole. As recently as August and December of last year, the Union has twice stressed the need to all UAW personnel to "cooperate fully with the Monitor" regarding "financial impropriety, corruption, and internal union election-related matters." *See* ECF No. 128-15, PageID.2509; ECF No. 128-16, PageID.2513. It has and continues to promptly provide documents to the Monitor as well as interview access to all union

14

personnel.  And it is of course in the Union's interest to cooperate voluntarily and avoid the initiation of charges by the Monitor.

The need for the Union to review and potentially designate and redact documents prior to production became an issue only when the Monitor made such broad electronic document requests that they necessarily swept up privileged and confidential materials across a wide swath of negotiations and other union functions.[3]  It is the need to review and designate *these* documents that is critical, and the Union has thus hired outside counsel and an e-discovery vendor to put in place a process such that the UAW can comply with the Monitor's requests in a reasonably prompt time frame.  For example, within seven weeks after the vendor processed the requested documents in the officer assignment investigation, the Union produced to the Monitor almost 140,000 documents consisting of more than 1.5 million pages.  This is an incredibly quick production for such a massive number of documents.  Of course, the UAW has produced documents even more

---

[3] Although the Monitor contends that he issued these broad search term requests only because of the small number of documents produced between February 29 and April 9, the Monitor ignores that the UAW had just installed a new General Counsel and Deputy General Counsel on February 26.  They immediately had to handle numerous significant and pressing matters, including other Monitorship matters.  Indeed, recognizing that the staffing levels in the Legal Department were not sufficient to handle the work generated by the Monitor's inquiries, the new General Counsel hired a new staff lawyer who started on April 8 and whose primary responsibility has been facilitating compliance with the Monitor's investigations.

quickly when the Monitor's requests are more targeted, including producing 10,400 documents in the Regional Director investigation within 12 business days of the Monitor's request to prioritize those particular searches.

Thus, it is wrong to say that the UAW decides "when" the Monitor can see documents, Monitor Opp. Br., PageID.2695, or that the time frame to review them is "indefinite," *id.*, PageID.2691. Rather, the UAW now has in place a system whereby it can produce requested documents in a reasonably prompt time frame, the duration of which turns on the breadth of the Monitor's terms.

Nor is it accurate for the Monitor to argue that Union leaders potentially subject to investigation are "decid[ing] what documents the Monitor can see." Monitor Opp. Br., PageID.2695. Rather, as explained in its opening brief, the UAW has set up a process to review the documents for applicable privileges. *See* UAW Br., PageID.2373-77. Elected officials, whether under investigation or not, are not involved in the Legal Department's review. And in fact, of the nearly 140,000 documents produced to date, fewer than 500 have been redacted – a miniscule percentage of about 0.3%.[4]

---

[4] As noted above, the UAW remains open to *in camera* review and/or the appointment of a special master to review the redacted documents. Moreover, the UAW has not withheld documents but only redacted the privileged material, so that the Monitor can still view the sender, recipient, and subject of the email/document, in addition to the Union's privilege log.

In sum, clarifying that the UAW has the right to review documents, and designate or redact certain privileged ones, prior to their production to the Monitor will not undermine the Monitor's effective performance of his duties. Consistent with the ABA Standards governing monitorships, other governmental agencies, such as the Department of Labor and the EEOC, and even the Department of Justice and FBI, are able to conduct effective investigations while honoring the sanctity of the attorney-client privilege. *Cf. In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006) (permitting grand jury recipient's team to review documents for privilege before turning them over to the government, as opposed to using a government "taint team").

### D.  Other Arguments By the Monitor and Government Lack Merit

**1.**  Paragraph 55 of the Consent Decree provides that the "Monitor shall not be entitled to attend or listen to meetings or portions of meetings protected by the attorney-client privilege or concerning collective bargaining strategy." PageID.131.  This is consistent with the Decree's structure and intent, including the Opening Paragraphs:  privileged materials and those related to collective bargaining and administration remain in the hands of the UAW's duly-elected leaders, with no right to government interference.  PageID.109.  But the Monitor instead contends the provision reflects just the opposite: that Paragraph 55 provides the Union with a "single forum to engage in privileged and collective-bargaining related

17

communications outside the view of the Monitor."  Monitor Br., PageID.2444.  This construction is wrong.  The drafters did not intend the IEB to retain the management of the Union's collective bargaining and administrative functions but then not permit the IEB's members to email each other or their lawyers about those topics without the email being viewed by Monitor (and instead require that they could discuss these matters only at IEB meetings).  *See* Consent Decree, PageID.109 (Preamble). Indeed, just two paragraphs later, the Consent Decree limits the Monitor's right to review books and records to those containing "non-confidential" information, PageID.131 (¶57), harmonizing the UAW's right to discuss privileged and collective bargaining information at IEB meetings with a concomitant right to continue those discussions in writing.  And as we explain further below, this construction of the Consent Decree aligns with the ABA Standards of Criminal Justice, which set the default rule that a Monitor is not entitled to an organization's privileged information.

The UAW's interpretation is also consistent with other provisions of the Decree concerning privileged information.  For example, Paragraph 39 permits a court to quash a document subpoena issued by the Monitor if it "requires the disclosure of privileged or other protected matter," *see* PageID.124 & Fed. R. Civ. P. 45(d)(3)(A)(iii), Paragraph 41 prohibits discipline for failure to produce privileged documents, PageID.125, and Paragraph 38 protects the privileged information of UAW officials serving on outside boards.  PageID.124.

The Monitor responds, however, that these other provisions relate only to the privileges of third parties or charged officials, not of the Union itself.  Monitor Opp. Br., PageID.2707-10.  This argument is fundamentally wrong.  First, it cannot be squared with Paragraph 55 itself, which as explicitly as possible demonstrates that the Monitor is not entitled to listen to *UAW-privileged* portions of meetings.  Second, it is inconsistent with the ABA Standards.  *See infra* Part II.  Third, it misreads the Decree's plain text.  Paragraph 37 entitles the Monitor, after a charge is brought, to require "any component *of the UAW*" to produce books and records, and it is silent about privilege.  Consent Decree, PageID.123 (emphasis added).  If the UAW, however, chooses *not* to produce privileged records, the Monitor may subpoena the Union under Paragraph 39.  *See id.* PageID.124 (providing right to issue document subpoenas without limiting that right to third parties).  Such subpoenas are "subject to Federal Rule of Civil Procedure 45."  *Id.*  And that Rule, of course, states that the Court "must" quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).

This plain text reading, consistent with Paragraph 55, provides the Union with the protection it contemplated when it entered the Decree: that if the Monitor sought privileged materials, the Union could use Rule 45 protections to prevent their disclosure.  Nowhere does the Consent Decree say that Paragraph 39

19

was intended to apply only to third parties.  Indeed, even the *Monitor* has taken the position that he may subpoena UAW documents.  ECF No. 49, Monitor's Initial Status Report, PageID.527 n.368 ("The Monitor also has the option of subpoenaing the report.").

       2.    The Monitor also contends that, under Paragraph 57 of the Decree, the Monitor *is presumed to be entitled* to review confidential records. Monitor Opp. Br., PageID.2711.  But the provision reads: "The UAW expressly acknowledges the Monitor's right to review, and upon not less than 14 days' notice to the IEB, disclose *non-confidential* financial data, books, records, audit findings, and other similar records to UAW members."  Consent Decree, PageID.131 (emphasis added).  It does not say the Monitor has the right to review confidential documents.  There is no word after the word "review," and hence the "right to review" must necessarily link solely to the word "non-confidential."  This is especially so since Paragraph 57 is in the section of the Decree entitled "Access to Information."  If the Monitor were entitled to all confidential Union documents under this paragraph, the Decree would say so.  The fact the second sentence of the paragraph addresses disputes concerning the disclosure of confidential information does not alter this reading; the confidential documents referred to therein are those the UAW chooses to *voluntarily* disclose to the Monitor.  The reading is also not

inconsistent (as the Monitor argues) with Paragraph 37, as that provision applies during the disciplinary process.

**3.**     Finally, but relatedly, the Monitor contends that he is "not a third party" with respect to collective bargaining materials because he functions as the Union for purposes of internal investigations. Monitor Opp. Br., PageID.2701. That is wrong. The Monitor absolutely *is a third party* with respect to the Union's collective bargaining strategy. Under the Consent Decree, the IEB has the right to control such matters without government interference. PageID.108-09 (Preamble). Disclosing sensitive collective bargaining strategy to the Monitor, especially when it is unrelated to any investigation, would thus undermine the Decree's structure and thus is necessarily harmful to the Union even if the Monitor is not a traditional employer seeking such strategy (though it does represent such employers and employs attorneys who could move to other firms that represent such employers). Moreover, the notion that the Monitor generally *is* the Union or stands in the shoes of the Union for purposes of the privilege is belied by the 502 Order: there would have been no reason for the parties to enter such an order if in fact that Monitor and the Union were one and the same for purposes of the privilege. And indeed it is boilerplate monitorship law that parties in the position of the Monitor and UAW do not share an attorney-client privilege (and thus the need for the 502 Order in the first place). *The Guide to Monitorships*, Anthony S. Barkow, Neil M. Barofsky, and

Thomas J. Perrelli, at 209 (2019) (it is "well established that there is no attorney–client privilege between a monitor and a monitoree").

## II.          The Court Should Follow the ABA Standards Here

The Consent Decree is clear that the UAW has the right to review and designate or redact privileged materials before producing them to the Monitor.  But even if it were not clear, the ABA has adopted standards governing monitorships that even the Monitor notes are "influential" and "persuasive" authority for courts to rely upon.  Monitor Opp. Br., PageID.2712; *see Strickland v. Washington*, 466 U.S. 668, 688 (1984) (the ABA Standards reflect "[p]revailing norms of practice").  And those ABA Standards are *directly on point* here: the "Host Organization should not be required to disclose information [to the Monitor] that is subject to the attorney-client privilege or the attorney work-product doctrine, or the disclosure of which would otherwise be inconsistent with applicable law."   ABA Criminal Justice Standards § 24-4.2(2)(a).

The Monitor's only real response is that the "controlling authority here is the Consent Decree itself," which overrides the ABA Standards.  Monitor Opp. Br., PageID.2714.  But, as explained above, the Consent Decree does not override them; its terms are consistent with the Standards.  If the parties had intended to override the normal practice reflected in the ABA Standards, they would have unambiguously addressed privileged information in the Decree and stated that the

Monitor was entitled to such information.  *Cf.  The Guide to Monitorships*, at 34 n.16 ("[M]ost monitors take the view that they do not have access to privileged material unless that was clearly anticipated by the government and the monitored party when the agreement was signed.").  They did not, which speaks volumes and demonstrates that the UAW's position should be upheld.

<u>CONCLUSION</u>

The UAW requests that the Court grant its motion, deny the Monitor's motion, and issue an Order clarifying that the UAW's review, designation, and/or redaction of confidential, privileged, and otherwise protected collective bargaining strategy materials before producing them to the Monitor is permitted by the Decree.

Respectfully submitted,

**GUREWITZ & RABEN, PLC**

By:    */s/ Harold Gurewitz*
Harold Gurewitz
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grpl.com
Dated: July 24, 2024               Attorney Bar Number: P14468

23