**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-13293 |
| | ) | Honorable David M. Lawson |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE, AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MONITOR'S ELEVENTH STATUS REPORT**

Pursuant to Paragraph 58 of the Consent Decree (Dkt. No. 10), the Court-appointed Monitor, Neil M. Barofsky, respectfully submits to the Court this eleventh status report ("Eleventh Report") concerning the monitorship of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "Union" or the "UAW").

\* \* \*

Following a U.S. Department of Justice ("DOJ") investigation that resulted in the criminal convictions of numerous senior Union officials, including two past Presidents, the UAW agreed to a Consent Decree and the appointment of a Monitor beginning on May 12, 2021.  Under that decree, the Monitor was given three responsibilities upon appointment: (1) to investigate and address suspected past and present misconduct; (2) to help the UAW ensure that its compliance regime can prevent and remove fraud and corruption; and (3) to administer a referendum vote to decide the manner in which the Union would choose its senior-most leaders, implement any change arising from that referendum, and oversee the Union's elections of its leadership during the monitorship.[1]  This Report provides a brief update on the Monitor's work since the last report.

**Investigative Mandate**

The Monitor's Ninth Status Report in June 2024 focused on the Monitor's investigative mandate—summarizing the Monitor's investigative activities through roughly the midpoint of the monitorship.[2]  As detailed in that report, the Monitor's efforts to investigate competing allegations of financial misconduct relating to senior Union officials resulted in a standoff between the Monitor and the Union about the Monitor's request for documents—with the Union taking the

---

[1] Consent Decree, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Jan. 29, 2021), Civil No. 20-cv-13293, ECF No. 10 ("Consent Decree").

[2] Monitor's Ninth Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (June 10, 2024), Civil No. 20-cv-13293, ECF No. 124 at 8-10, 23-32 ("Monitor's Ninth Status Report").

position that the Monitor had no right to access documents that were privileged or which pertained to collective bargaining in aid of his investigations into suspected misconduct at the Union.[3] Although the Monitor attempted to resolve that logjam without the need for Court intervention, the Union insisted on conducting a lengthy pre-production review, asserting that it would withhold or redact documents as it deemed necessary to protect privilege and confidentiality.  Ultimately, the Union redacted several hundred documents from its production on grounds that they were protected from disclosure to the Monitor.

Motion practice ensued and, after extensive briefing and oral argument, the Court issued an Order dated December 16, 2024, rejecting the Union's position and ruling that the Union had to provide the Monitor with all responsive documents, including those that the Union had previously redacted.[4]  In summary, the Court found that:

> The Consent Decree confers upon the Monitor broad authority to investigate complaints of fraud, corruption, illegal behavior, dishonesty, and unethical practices by the UAW and its constituent entities.  To that end, the Monitor may demand that the Union produce documents and other materials that may inform his investigations.  The Union may not delay production of those documents or materials to review them for any purpose, except for minutes and recordings of

[3] Monitor's Ninth Status Report at 10-13.  Specifically, the Union stated that although it was willing to voluntarily respond to portions of the Monitor's document requests, it had no obligation to provide any documents to the Monitor unless and until he brought disciplinary charges against an individual, and that even then, the Union was not obligated to provide any documents that were protected by the attorney-client privilege or contained confidential information pertaining to collective bargaining.  UAW Motion to Clarify Consent Decree, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (July 3, 2024), Civil No. 20-cv-13293, ECF No. 127 at 4, 13 (arguing that "[b]efore filing disciplinary charges, the Monitor may enlist the *voluntary* 'cooperative efforts' of the Union in providing the Monitor with documents or information or otherwise making witnesses available" and that only after "those disciplinary proceedings have commenced, the Monitor may 'require' the UAW to 'produce any book, paper, document, record or other tangible object' for use in a hearing") (contending that "under Paragraph 55 of the Consent Decree," the Monitor is never entitled "to information that is 'protected by the attorney-client privilege' or 'concerns collective bargaining strategy'") (citations omitted).  The Court rejected the Union's position, as discussed below.

[4] Consent Decree Enforcement Order, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Dec. 16, 2024), Civil No. 20-cv-13293, ECF No. 150 ("Consent Decree Enforcement Order").

meetings that involve discussions of collective bargaining strategy or attorney-client privileged conversations.[5]

Since the Court's Order,[6] the Union has produced the documents in full to the Monitor that were previously redacted. The Monitor's investigative team is now in the process of reviewing them and otherwise proceeding to carry out their investigative work with the benefit of the Court's directive about the Monitor's access to Union documents for investigations. In the meantime, the Monitor has opened an investigation into new claims of misconduct by certain International Union officials.[7] The Monitor will provide a further update to the Court on these and other investigative activities in a subsequent report.

---

[5] Consent Decree Enforcement Order at 19-20. The Court qualified that these materials too could be subject to disclosure to the Monitor. *See* Consent Decree Enforcement Order at 16 (noting that the Monitor "may in some instances have access even to those materials when 'necessary to ensure the elimination of fraud, corruption, or illegal conduct'").

[6] The Court also affirmed the Union's ability to object to the *disclosure* of privileged materials by the Monitor (as distinct from their production to the Monitor) explaining that "the Monitor is prohibited from disseminating privileged material to the government, any third party, or the public without the Union's consent." Consent Decree Enforcement Order at 19. In addition to the protections afforded by the Court's 502(d) Order and the Consent Decree, the Court observed that "any concerns about improper use of material subject to a claim of privilege may be addressed by the simple expedient of requiring the Monitor to give notice to the Union before disseminating any materials that conceivably could be subject to a colorable privilege claim, so that the Union may have an opportunity to assert the privilege if it so desires." Consent Decree Enforcement Order at 18-19.

[7] Consistent with past practice, the Monitor provided a draft of this Report to the Union, through its General Counsel and Compliance Director, to solicit the Union's feedback. In response to that draft, the Union provided comments and suggestions, some of which have been included in this Report. In all events, the Monitor retained discretion to determine what facts should be included in the Report, with the goal of a factually accurate Report. Upon reviewing a draft of this Report, the Union objected to the Report's reference to the noted ongoing investigation, given that it is based on allegations and that therefore its inclusion could have negative consequences for the Union. As noted in prior reports, the Monitor agrees that it would be inappropriate to draw any conclusion from the mere initiation of an investigation by the Monitor based on having received allegations; but, the Monitor has consistently referenced the opening of new investigations in his prior reporting pursuant to his obligation under Paragraph 58 of the Consent Decree to file written reports with the Court "about his or her activities." *See, e.g.*, Monitor's Ninth Status Report at 23-29; Monitor's Third Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (July 19, 2022), Civil No. 20-cv-13293, ECF No. 77 at 7-19.

**Compliance Mandate**

The Monitor's Tenth Status Report in July 2024 provided the Court with an update on the Monitor's work with the Union on improving its compliance regime at approximately the halfway point of the Monitor's six-year term.[8]  The Monitor's oversight in these areas has continued since then, and the Monitor will provide a more detailed update on that work in a subsequent report.

**Elections Mandate**

Regarding the elections mandate, the Monitor has continued to work with the Union concerning its next election of International Officers, which will occur in 2026.  As described in the Monitor's previous reports, the Monitor continues to oversee the Union's new direct election system for International Officers and related ancillary projects as part of his core responsibilities under the Consent Decree.[9]  In the Monitor's Tenth Status Report, the Monitor reported on (1) the UAW's formation of an Election Committee to advise the International Executive Board ("IEB") on issues related to the upcoming 2026 International Officer Election (the "2026 Election"); (2) the "Membership Record Data Project," a comprehensive effort to update and improve the quality of the UAW's membership records, with a specific focus on the mailing list for the 2026 Election; and (3) the establishment of the UAW's Membership Department, which is tasked with overseeing

---

[8] Monitor's Tenth Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (July 12, 2024), Civil No. 20-cv-13293, ECF No. 130 at 12-84 ("Monitor's Tenth Status Report").

[9] *See, e.g.,* Monitor's Initial Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Nov. 11, 2021), Civil No. 20-cv-13293, ECF No. 49 at 156-181; Monitor's Second Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (May 11, 2022), Civil No. 20-cv-13293, ECF No. 59; Monitor's Eighth Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Dec. 8, 2023), Civil No. 20-cv-13293, ECF No. 119; Monitor's Tenth Status Report at 85-87.

and managing the Union's important work to update and maintain accurate and reliable membership records.[10]

In connection with these efforts, the Monitor worked closely with the Election Committee to identify an external consultant to work with the Union and the Monitor to audit and improve the quality of the UAW's membership records, and to revise the UAW's system for collecting and maintaining current and accurate membership data.[11]   Shortly after the Monitor's Tenth Status Report, the IEB approved the Union's engagement of the external consultant selected by the Election Committee to lead the Membership Record Data Project.[12]   Over the past several months, this external consultant has spent considerable time learning about the Union and meeting with key Union stakeholders, including representatives from the Membership Department, the Retired Workers Department,[13] the Information Technology Services ("ITS") Department, and other UAW staff members, with the goal of devising a tailored strategy to improve the UAW's recordkeeping systems.

At the November 2024 IEB meeting, the Monitor's Elections Team presented the IEB with a comprehensive status update, which led to a discussion about the importance of improving the Union's membership records not only for the 2026 Election, but for the sake of general Union recordkeeping soundness going forward.[14]   Numerous IEB members, including the International President and Secretary-Treasurer, emphasized the critical nature of the Membership Record Data

---

[10] Monitor's Tenth Status Report at 85-87.

[11] Monitor's Tenth Status Report at 86-87.

[12] IEB Meeting (July 19, 2024).

[13] The Retired Workers Department is responsible for managing the Union's relationship with the Union's hundreds of thousands of retired members.

[14] IEB Meeting (Nov. 14, 2024).

Project and discussed how best to facilitate engagement and cooperation among Local Union leaders and the Union's general membership.[15]

Following the November 2024 IEB meeting, the external consultant reported on the status of its work to the Union's Election Committee and other senior Union leaders, including the International President and Secretary-Treasurer.[16]   The presentation discussed the consultant's plan for the Membership Record Data Project, which includes the following work:

- Auditing and verifying the accuracy of the current database of membership records stored in the Local Union Information System ("LUIS") through the use of data analytics and by providing assistance to Local Union leaders reviewing and updating membership information;

- Devising a new system for maintaining accurate membership records through the creation of: (1) a new membership record portal that will support the above-referenced data validation process by providing a more user-friendly platform to facilitate data verification and maintenance; and (2) an improved methodology for tracking membership information that will be easier to audit and will better support the process for determining voter eligibility;

- Union-wide communications driven by the Membership Department to raise members' awareness around these efforts and reinforce the importance of maintaining accurate records and sharing them with the Union; and

- Establishing procedures and controls to ensure the UAW's continued success after the external consultant has concluded its engagement.[17]

The external consultant is currently working closely with the UAW's Membership Department, Retired Workers Department, ITS Department, the Monitor, and other UAW stakeholders to execute on this plan.

Finally, the Monitor's Elections Team and the Election Committee will continue working over the coming months to update and supplement the Official Rules for the 2026 Election (the

---

[15] IEB Meeting (Nov. 14, 2024).

[16] UAW Election Committee Meeting (Nov. 15, 2024).

[17] UAW Election Committee Meeting (Nov. 15, 2024).

"Election Rules") as necessary.  Among potential revisions, as described in the Monitor's Eighth Status Report, the Election Rules will include updated campaign finance reporting requirements and will codify the requirements of the UAW's 2022 Constitutional amendment that prohibits non-member donations and caps donations at $2,000 per candidate per member.[18]  Further, the Election Committee is currently considering whether to propose switching to a ranked choice voting system (also known as instant run-off voting), in lieu of its current run-off election system, for the 2026 Election.  Should the UAW decide in favor of this change, the Election Rules will be updated accordingly.

Further detail around the development of the Election Rules and their enforcement mechanisms, as well as the status of the Membership Record Data Project, will be included in a subsequent report.

---

[18] Monitor's Eighth Status Report at 25-26.

* * *

Pursuant to Paragraph 58 of the Consent Decree, the foregoing Report constitutes the eleventh report of the Monitor, Neil M. Barofsky.

**Date:  January 13, 2025**

_____

Neil M. Barofsky, Monitor

*Respectfully filed with the Court on behalf of the Monitor by counsel to the Monitor,*

/s/ Michael W. Ross
Michael W. Ross
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600 (t)
(212) 891-1699 (f)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2025, the foregoing Report was served electronically on all counsel of record via the CM/ECF system.  In addition, pursuant to Paragraph 58 of the Consent Decree, the foregoing Report was served on consent by electronic mail upon the United States, the UAW's International President, the International Executive Board, and designated counsel for UAW.

                                    /s/ Michael W. Ross
                                    Michael W. Ross