**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-13293 |
| | ) | Honorable David M. Lawson |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE, AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MONITOR'S FIFTEENTH STATUS REPORT**

Pursuant to Paragraph 58 of the Consent Decree (Dkt. No. 10), the Court-appointed Monitor, Neil M. Barofsky, respectfully submits to the Court this fifteenth status report ("Fifteenth Status Report") concerning the monitorship of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "Union" or the "UAW").[1]

## INTRODUCTION

As directed by the Consent Decree entered on January 29, 2021, the Monitor was given the responsibility, among other things, to administer a referendum vote to decide the manner in which the Union would choose its senior-most leaders going forward, implement any changes arising from that referendum, and oversee the Union's elections of its leadership during the term of the monitorship.  This Fifteenth Status Report concerns the Monitor's issuance of rules (the "Election Rules" or the "2026 Election Rules") for the Union's upcoming 2026 UAW International Officer Election (the "2026 Election").

Under the Consent Decree, the Monitor is responsible for developing "all election rules and methods for the election of members of the IEB during the period of oversight" and must do so "in consultation with the UAW."[2]  Pursuant to that directive, the Monitor has consulted with the Union, through its Legal Department and "Elections Working Group,"[3] about the Election Rules, particularly about changes from those previously adopted by the Monitor for the 2022 UAW International Officer Election (the "2022 Election") and 2023 UAW International Officer Run-Off Election (the "2023 Run Off Election" and collectively, the "2022/23 Elections").[4]  The Monitor

---

[1] Consent Decree, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Jan. 29, 2021), Civil No. 20-cv-13293, ECF No. 10 ("Consent Decree").

[2] Consent Decree ¶ 13.

[3] The Elections Working Group comprises representatives from the International Executive Board ("IEB"), President's Office, Secretary-Treasurer's Office, Membership Department, Legal Department, ITS Department, Accounting Department, and Retired Workers Department.

[4] The Monitor issued the Second Status Report following the publication of the rules governing the 2022 Election (the "2022 Election Rules").  *See* Monitor's Second Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (May 11, 2022), Civil No. 20-cv-13293, ECF No. 59 ("Second Status Report").

has also sought and obtained input on the Election Rules from groups of Union members, as well as from the Department of Labor, Office of Labor-Management Standards ("OLMS").

On May 15, 2026, the Monitor issued the 2026 Election Rules by posting them on the Monitor's website.  In most respects, the 2026 Election Rules are the same as those the Monitor issued for the 2022 Election, which have remained in place since they were issued.  There have been several important changes, however, which are briefly summarized in the remainder of this Report.  The Report also briefly outlines the ongoing work of the Monitor in preparation for the 2026 Election, and sets forth some key upcoming dates.

A complete copy of the 2026 Election Rules is attached as Exhibit A to this Fifteenth Status Report.

## I.       SUMMARY OF KEY RULES CHANGES

This section briefly summarizes the key changes to the Election Rules since the 2022/23 Elections.  As other less significant changes were also made, Union members should refer to and familiarize themselves with the attached rules for a complete understanding of their contents.

### A.       Definition of Certain Member Categories

**Retired Member Definition.**   Under Article 6, Section 19 of the UAW Constitution, "[a]ny member in good standing who is retired, shall be entitled to a 'retired membership status' which, without being required to pay membership dues during the period of such retirement, shall

---

The Second Status Report described the process for developing the 2022 Election Rules and highlighted their key features.  As described in the Eighth Status Report, the Monitor oversaw the 2022 Election and 2023 Run Off Election, certifying the Elections in June 2023.  *See* Monitor's Eighth Status Report*, United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Dec. 8, 2023), Civil No. 20-cv-13293, ECF No. 119 at 24 ("Eighth Status Report").

entitle them to all privileges of membership . . . ."  As set forth in the Election Rules, those privileges of retired membership include the right to vote for International Union leaders.[5]

But the UAW Constitution does not explicitly define what it means to be retired from the Union.  Following the 2022/23 Elections, and in connection with a broader effort to improve the UAW's membership recordkeeping system, the Monitor found that the term "retired" in the UAW Constitution was ambiguous.  For example, the UAW Constitution does not state what is necessary—whether it be employment prerequisites or benefit status—to qualify as a "retired" member of the UAW, rather than as simply a "former" member.[6]  That ambiguity makes it difficult to determine who is entitled to retired membership status and thus eligible to receive a ballot and vote as a retired member in the 2026 Election.

Because the Monitor's role is to "refer the interpretational question to the Union for resolution in the first instance,"[7] the Monitor alerted the Union to this issue and, on November 19, 2025, the Union's IEB adopted an official interpretation of the UAW Constitution to clarify the definition of a retired member.  The Union interprets the term "retired member" under the UAW Constitution to mean an individual who, at the time he or she left employment at a UAW-represented workplace, was in good standing and either: (1) retired pursuant to a pension plan (excluding those who qualify only as deferred vested regardless of pay status), or (2) had attained

---

[5] The Constitution does not explicitly define all the "privileges of membership" that retirees enjoy, but does specifically exempt retirees from the ability to vote in particular elections and other matters.  The Monitor and the Union have read that language to indicate that retirees, although excluded from voting in the specific matters excluded under the Constitution, have the right to vote in matters not specifically exempted, including in electing International Officers.  Thus, the 2022 and 2026 Election Rules include a retiree right to vote.

[6] *See, e.g.,* UAW Const. art. 55, § 1 *et seq.*  Article 55, entitled "Retirees," addresses the requirements around establishing various Retired Workers bodies within the Unions, like Local Union Retired Workers Chapters and Area/Regional/International Retired Workers Councils, but offers no clarity on the conditions which establish one as a "retired member" in the first place.

[7] *See* Opinion and Order Granting in Part and Denying in Part Motion by James R. Coakley for Appeal of an Interpretive Ruling of the Defendant's Constitution, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (July 1, 2022), Civil No. 20-cv-13293, ECF No. 68 at 13 ("Coakley Opinion and Order"); *see also* UAW Const., art. 6, § 19.

3

at least five years of seniority at the workplace and was eligible to collect Social Security benefits (*i.e.*, is at least 62 years and one-month old).[8]  The Monitor found the IEB's reading of the term "retired" to be "a 'fair and reasonable' reading of the language in question,"[9] and thus has adopted it as part of the 2026 Election Rules.

**Graduate Student Definition.**  The provisions of the UAW Constitution addressing membership were adopted when the Union's membership largely comprised workers with set, defined schedules of a continuing duration.  But, more recently, a large proportion of the Union's membership are graduate students that work in the higher education field, such that their schedules, breaks from employment, and relationship to their workplace differ from a traditional employment environment.  As with the definition of a retired member, the process of adopting the 2026 Election Rules highlighted ambiguity as to which graduate students were properly considered Union members for the purpose of voting.  And, as with the retired member definition, the Monitor turned to the Union in the first instance to resolve the question of the constitutional interpretation.

On April 2, 2026, the IEB adopted an official interpretation of the UAW Constitution that defines who qualifies as a "graduate student member" of the UAW.  Specifically, the definition includes individuals who (1) join a masters or PhD program of study that offers work in a bargaining unit position when that student expects to accept such work, and (2) pay dues during

---

[8] *See* Interpretation of the Constitution of the International Union, Article 6, Section 19 (Nov. 19, 2025), attached to the 2026 Election Rules as Exhibit A.  In addition to this constitutional interpretation, the IEB also passed a resolution affirming that, "as part of the 2026 Constitutional Convention proceedings, [the Union] will set aside time on the agenda for delegates to discuss and debate alternative definitions and structures, to be implemented for the 2030 election, with the goal of ensuring that the Union continues to honor and enfranchise members who made contributions to the UAW and who should reasonably be considered retired."  *See* Resolution of the International Executive Board Concerning the Interpretation of Retired Membership Status (Nov. 19, 2025), attached to the 2026 Election Rules as Exhibit B.

[9] *See* Coakley Opinion and Order at 12 ("[J]udicial review of a Union's construction of its own constitution is subject to the further moderating principle that the Court should uphold the interpretation if it is a "fair and reasonable" reading of the language in question").  The Monitor understands that an appeal relating to this interpretation was filed under Article 33 of the UAW Constitution.  The Monitor has adopted the Union's interpretation.  Should the interpretation be overturned, it may result in a change in the definition adopted by the 2026 Election Rules.

any month that they are scheduled to work at least 40 hours or during any month that they receive benefits in lieu of work equivalent to 40 hours of pay.[10]  The Monitor found the Union's definition of "graduate student member" to be "a 'fair and reasonable' reading of the language in question," and thus has adopted it as part of the 2026 Election Rules.[11]

### B.      Campaign Finance Rules

At the UAW Constitutional Convention in July 2022, the Convention delegates ratified an amendment to the UAW Constitution that, starting for the upcoming 2026 Election, prohibits non-members from contributing anything of value to the campaigns of candidates in UAW elections ("Candidates") and institutes a contribution cap on members (the "Campaign Finance Amendment").  The Campaign Finance Amendment, incorporated into the UAW Constitution in Article 10, § 22, reads:

> Beginning in 2026, in all UAW elections, including elections for International Executive Board Officers and Members, Local Union Officers, and any other elected position within the UAW, whether at the International Union or Local Union level, only UAW members and retirees in good standing may contribute anything of value to a Candidate's campaign.  The maximum amount that any member or retiree in good standing may contribute during any campaign cycle is $2,000.00 (two thousand dollars) per Candidate.

---

[10] *See* Interpretation of the Constitution of the International Union, Article 6, Section 2 (Apr. 2, 2026), attached to the 2026 Election Rules as Exhibit C.

[11] 2026 Election Rules, Rule 5-1.  *See* Coakley Opinion and Order at 12 ("[J]udicial review of a Union's construction of its own constitution is subject to the further moderating principle that the Court should uphold the interpretation if it is a 'fair and reasonable' reading of the language in question").  The Monitor understands that an appeal relating to this interpretation was filed under Article 33 of the UAW Constitution.  The Monitor has adopted the Union's interpretation.  Should the interpretation be overturned, it may result in a change in the definition adopted by the 2026 Election Rules.

The 2026 Election Rules expressly incorporate these constitutional requirements[12] and provide for additional key changes for the 2026 Election that flow directly from them.[13] These include:

- **"Campaign Contribution" Definition.** The 2026 Rules define a "Campaign Contribution" as any direct or indirect contribution of money, money equivalent, or goods, where the purpose, object, or foreseeable effect of that contribution or the expenditure thereof is to influence, positively or negatively, the election of a Candidate for an International Officer position.[14] Consequently, only active or retired UAW members in good standing may make Campaign Contributions to a Candidate's campaign.

- **Contribution Limitation.** Campaign Contributions may not exceed a total of $2,000 (two thousand dollars) in value per member per Candidate.[15] This limitation applies to Candidates as well, meaning that a Candidate may only spend up to $2,000 of their own money on their own campaign (with the exception of Legal and Accounting Services, as outlined below, and personal travel expenses associated with campaigning, which must be disclosed but are not capped). To ensure necessary recording of contributions and expenditures, individual members and groups of members who collect and spend funds to support campaigns must provide prompt and specific notice of contributions and expenditures to the relevant Candidate or Slate of Candidates for inclusion on monthly campaign financial disclosures.[16]

- **Member-Provided Services.** The 2026 Election Rules provide that any services contributed by *members* are not subject to the $2,000 cap.[17] This includes *Professional Services* (defined as services which have been part of the individual's business, work, or income-producing activity at any time but excluding Legal or Accounting Services) and *Personal Services* (defined as services not within an individual's regular business, work, or income-producing activity, and for which an individual is not compensated in any form by anyone), so long as the services are provided by member on their own time (*i.e.*, not during employer or Union time).[18]

---

[12] 2026 Election Rules, Rules 8-2 and 8-3.
[13] In December 2023, the Monitor issued Supplemental Campaign Finance Rules, reflecting the language of the Campaign Finance Amendment, that were in place until issuance of the 2026 Election Rules. *See* Supplemental Campaign Finance Rules 1, 2, and 3.
[14] 2026 Election Rules, Rule 8-2.
[15] 2026 Election Rules, Rule 8-2.
[16] 2026 Election Rules, Rule 8-3.
[17] 2026 Election Rules, Rule 8-2.
[18] 2026 Election Rules, Rules 8-2 and 8-3.

- **Non-Member Provided Services.**  The 2026 Election Rules treat non-members differently than members.[19]  Non-members may only provide Professional Services to a Candidate's campaign if they are compensated at fair-market value.[20]  For Personal Services, however, non-members can provide them to Candidates without limit or compensation.[21]

- **Legal and Accounting Services.**  Neither the $2,000 limit on Campaign Contributions nor the prohibition on non-members contributing Professional Services applies to the provision of Legal or Accounting Services to ensure compliance with applicable election laws, rules, or other requirements, or to secure, defend, or clarify a Candidate's legal rights as a Candidate.[22]  Members and non-members alike may provide unlimited Legal or Accounting Services without compensation at fair market value.[23]  In order for a service to be considered a Legal and Accounting Service under the 2026 Election Rules, the service performed must be of a type that would be commonly considered a legal or accounting service if performed by a lawyer or accountant.[24]  For example, if an attorney provided public relations or campaign management services, the attorney's professional status would not transform that activity into a Legal Service.

- **Registered Organization of Members (ROOMs).**  In order to best ensure compliance with the new campaign finance requirements dictated by the Campaign Finance Amendment, the 2026 Election Rules provide that if a group of members intends to engage in formal or frequent fundraising or campaigning activities and collects or spends in excess of $2,000, they must register with the Monitor as a Registered Organization of Members or "ROOM."[25]  The $2,000 threshold mirrors the individual contribution cap in the Campaign Finance Amendment, ensuring that any group whose aggregate activity equals or exceeds a single member's maximum contribution is subject to registration requirements.  Like any informal group of members, ROOMs may collect and spend funds in support of or on behalf of a Candidate or Slate of Candidates, but because of their intention to participate more substantially in the election process, their registration as a ROOM will guarantee more connectivity with the related Candidates or Slates of Candidates benefiting from their efforts.  By registering with the Monitor, these groups provide both the Candidates they support and the Monitor with sufficient visibility to better protect the integrity of the 2026 Election.

---

[19] 2026 Election Rules, Rules 8-2, 8-3, and 8-4.
[20] 2026 Election Rules, Rules 8-2 and 8-4.
[21] 2026 Election Rules, Rules 8-2 and 8-4.
[22] 2026 Election Rules, Rules 8-2 and 8-8.
[23] 2026 Election Rules, Rules 8-2 and 8-8.
[24] 2026 Election Rules, Rule 8-8.
[25] 2026 Election Rules, Rule 8-3.

### C.      Branded Merchandise

One of the bedrock principles of any union election is the right of members to advocate for or against any candidate or slate of candidates.  The exercise of that right can include giving speeches or engaging in written advocacy, but it can also include advocacy by wearing pins, t-shirts, or other apparel.  Limiting the right of members to advocate, however, is the rule recognized in the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") and the UAW Constitution that neither Union nor employer resources can be used to promote the candidacy of any person.  That prohibition was included in the 2022 Election Rules and appears again in the 2026 Election Rules.[26]

The 2026 Election Rules further clarify when and where the purchase, distribution, and/or wearing of items that bear the name, image, or likeness of a Candidate (defined in the 2026 Election Rules as "Branded Apparel/Merchandise") run afoul of the prohibition against using Union or employer resources.[27]

Members may not advocate for Candidates or Slates of Candidates by wearing, displaying, or distributing Branded Apparel/Merchandise while on Union or employer time, with one exception.[28]  Under this exception, members may wear official UAW merchandise bearing the name and title of an elected official distributed in a non-Election year by those officials to their constituencies.  This exception reflects the Union's longstanding practice of permitting members to wear merchandise branded with the names of leadership during Union and employer time, without considering such practice to be advocacy.  All other forms of Branded Apparel/Merchandise, whether they explicitly encourage members to vote for the Candidate or

---

[26] 2022 Election Rules, Rule 4-6; 2026 Election Rules, Rule 4-6.
[27] 2026 Election Rules, Rule 4-4; 2026 Election Rules, Rule 4-16.
[28] 2026 Election Rules, Rule 4-16.

not, may not be worn or displayed on Union or employer time. The prohibition on Branded Apparel/Merchandise on Union or employer time does not extend to the Constitutional Convention, which is by nature a political event, and for which the Monitor will publish separate guidelines.[29]

The 2026 Election Rules also prohibit the purchase and distribution of any Branded Apparel/Merchandise with Union funds by an incumbent officer who is or intends to become a Candidate in the 2026 Election.[30]

### D.      Protest Procedure

Just as the 2022 Election Rules did, the 2026 Election Rules provide that any member of the Union in good standing may file a protest alleging noncompliance with the Election Rules, the LMRDA, and/or the UAW Constitution pertaining to the 2026 Election.[31]  To ensure a clear process for addressing such protests, the 2026 Election Rules require that all protests be filed by submitting a "Protest Form" to the Monitor.[32]  This new requirement will streamline and standardize the protest process, making it more efficient and ensuring that all protests are properly documented and tracked.

## II.      FUTURE MILESTONES

The issuance of the 2026 Election Rules marks the formal commencement of the 2026 UAW International Officer Election cycle.  From here, the following important dates are upcoming:

---

[29] 2026 Election Rules, Rule 4-16.

[30] 2026 Election Rules, Rule 8-6. In doing so, the 2026 Election Rules directly incorporate the Supplemental Rule on Branded Merchandise, issued on November 20, 2025. *See* Supplemental Rule 8-3: Prohibition on the Purchase and Distribution of Certain Branded Merchandise. For purposes of the 2026 Election, Election Rule 8-6 specifies that all incumbent International Officers are considered prospective Candidates and are subject to this rule, unless that International Officer has publicly indicated that they will not seek reelection.

[31] 2022 Election Rules, Rule 9-1; 2026 Election Rules, Rule 9-1.

[32] 2026 Election Rules, Rule 9-1; 2026 UAW International Officer Election Protest Form.

- From **June 15-18, 2026**, the Union's 2026 Constitutional Convention will be held in Detroit, MI, during which, among other things, Convention delegates will nominate individuals to run for UAW International Office and will adopt any amendments to the UAW Constitution.

- In **July or August 2026**, there will be at least one UAW International Officer Election Candidate Forum, allowing Candidates for International President to address the membership at large. The forum will be recorded and posted on the Monitor's and the UAW's websites. The Monitor will also consider additional Candidate Forums for other offices.

- On or about **August 21, 2026**, the first formal distribution of mail-in ballots to the electorate will begin. Members will be able to request replacement ballots—or a first ballot if they never received one—through **September 23, 2026**. The Monitor strongly encourages members to place their ballots in return mail no later than **September 25, 2026**.

- The deadline for all ballots to be received by the designated U.S. Post Office or Postal Facility is **October 5, 2026**, at the closing time of the facility.

- Under the supervision of the Monitor, the Election Vendor[33] will begin the tabulation of ballots on **October 6, 2026.** Once the tabulation of ballots is complete, the unofficial results will be announced by the Monitor. There will be a run-off election ("Run-Off Election") for any race where no Candidate received a majority of the vote. Any Candidates who received a majority of the vote will be announced as the unofficial victors of their races at this time.

- In or about **October 2026**, within seven days of the announcement of the unofficial results, all unofficial victors of International Officer races will be sworn in.

## III. ONGOING WORK

The Monitor's work with the Union in connection with the 2026 Election is ongoing. For example, the Monitor continues to oversee the various aspects of the Union's direct election system and related ancillary projects that are detailed in the Monitor's Eleventh Status Report.[34] This

---

[33] After soliciting and receiving various proposals, the Union selected the joint team of Merriman River Group and Election Systems & Software—the same team that assisted in administering the 2022/23 Elections—to serve as the Election Vendor for the 2026 Election and oversee all mailings, collections, and tabulations of the secret mail-in ballots.

[34] Monitor's Eleventh Status Report, *United States v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* (Jan. 13, 2025), Civil No. 20-cv-13293, ECF No. 151 at 4-7.

includes the Monitor's work with the Union to improve its internal processes around membership data recordkeeping, including by collaborating with the Union and an external consultant on the Membership Record Data Project.  This project, which remains in progress, has resulted in the creation of a new data portal system to streamline membership records across locals, the clean-up of existing membership records, an increase in communication throughout the Union about these efforts, and a Union-wide effort to encourage members to update their information before the 2026 Election.

Additional details about the status of other election-related efforts will be included in a subsequent report.

* * *

Pursuant to Paragraph 58 of the Consent Decree, the foregoing Report constitutes the fifteenth report of the Monitor, Neil M. Barofsky.

**Date:   May 22, 2026**

Neil M. Barofsky, Monitor

*Respectfully filed with the Court on behalf*
*of the Monitor by counsel to the Monitor,*

/s/ Michael W. Ross
Michael W. Ross
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600 (t)
(212) 891-1699 (f)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2026 the foregoing Report was served electronically on all counsel of record via the CM/ECF system.  In addition, pursuant to Paragraph 58 of the Consent Decree, the foregoing Report was served on consent by electronic mail upon the United States, the UAW's International President, the International Executive Board, and designated counsel for UAW.

 /s/ Michael W. Ross
Michael W. Ross