UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                                Case Number 20-13293

v.                                           Honorable David M. Lawson

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

                Defendant.

_____/

### OPINION AND ORDER DENYING MOTION BY NON-PARTY SHARON BELL FOR INJUNCTIVE RELIEF

Sharon Bell recently filed a motion representing that she is a member in good standing of defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, popularly known as the United Auto Workers, or UAW, and was denied the right to be nominated and placed on the ballot for the office of Vice President of the International Union in the upcoming election. She asks for an emergency temporary restraining order, and she followed that motion with a motion to compel the court-appointed Monitor to enforce a part of the Consent Decree that was entered on January 29, 2021 that requires the Monitor to ensure free and fair elections. The Monitor and the UAW have responded to the motions. The matter is fully briefed, and oral argument would not aid in the disposition of the motions. *See* E.D. Mich. LR 7.1(f)(2).

According to the record before the Court, the UAW held its 2026 Constitutional Convention to conduct business, including nominating candidates for leadership positions of the International Union. The delegates adopted the Twelfth Edition of Robert's Rules of Order to govern their procedures. One of the provisions prohibited a member from nominating more

persons to an office than there were places to fill. One delegate attempted to nominate four individuals for leadership positions, including Bell, but when told that she could nominate only one person, she advanced the name of someone other than Bell. Bell complained and followed the procedure outlined in the Consent Decree to pursue her complaint, without success. She then filed her present motions. Because Bell has failed to demonstrate that she has any likelihood of success on the merits of any claim that the Monitor violated any term of the Consent Decree by refusing her demand to be included on the forthcoming ballot for Vice President of the International Union, her motions will be denied.

## I.

## A.

The relevant background facts are undisputed and were summarized in a recent decision issued by the court-appointed Adjudications Officer. *See* ECF No. 175. The Adjudications Officer's function and authority are discussed below.

On May 15, 2026, the Monitor published rules for the 2026 election for officers of the UAW International Union. *See* Official Rules for 2026 International Officer Election, https://static1.squarespace.com/static/610844f6010cdc16a11b15aa/t/6a10b1a86dc6807567329a3 c/1779478953029/2026+UAW+International+Officer+Election+Rules.pdf. The Constitution of the International Union, Article 10, Section 4, specifies that nominations for International Officers of the UAW are made at the Union's annual Constitutional Convention. The recent convention was held on June 15-16, 2026, with Steve Dawes, UAW Region 1D Director, serving as Chair of the convention, and Michael Talierico serving as Parliamentarian. On the first day of the convention, Robert's Rules of Order were adopted to govern the proceedings. The Election Rules specify the procedure for officer nominations, stating that "[a]ny delegate seeking to nominate an

individual to run for [an open position for International Officers] will step up to the microphone and propose that individual in a nominating speech that will be limited to five (5) minutes with no exception." Official Rules, § 3-3. Both the Monitor and the Adjudications Officer observed that Robert's Revised Rules of Order § 46-6 provides that "[a]s to nominations, . . . [w]here more than one person is to be elected to an office, such as to a board of directors or trustees, or to a position, such as to a committee, no one may nominate more than one person for the office or position, if an objection is made, until every member wishing to nominate has had an opportunity to do so," and, furthermore, "[i]n no event may a member nominate more persons than there are places to fill." Monitor's Decision, ECF No. 164-3, PageID.3487.

On June 17, 2026, 33 delegates rose and nominated 20 candidates among them for the offices of President, Secretary, Treasurer, and Vice President. There were three openings for the office of Vice President to be placed on the ballot. One delegate, Amber Love, from UAW Local 1700, rose and attempted to nominate four candidates for the office of Vice President, namely Keisha Richardson, Robert Wright, Mike Booth, and Sharon Bell. The Chair responded, "Hey sister. You can only nominate one person. Are you nominat[ing] the first one," to which Love responded, "Yes. I'm gonna nominate Keisha Richardson." Convention Transcript, ECF No. 164-5, PageID.3529. No other delegate rose at any time during the convention to nominate or re-nominate Ms. Bell for any office.

Movant Sharon Bell asserts in her motion that she was "duly nominated" for the office of Vice President of International Union during the convention. However, she says that she was informed by the Monitor that she would be excluded from the ballot on the ground that she was not nominated for any office. She submitted a protest to the Monitor, which was denied. After her instant motion was filed, she submitted an appeal to the Adjudications Officer, who

subsequently filed a notice of his decision passing on the merits of Bell's appeal and affirming the Monitor's denial of Bell's ballot protest. *See* ECF No. 175.

Both the Monitor and the Adjudications Officer concluded that Bell was not properly nominated because the delegate who tried to nominate her named four candidates, but that initial nomination was refused, and the delegate was told by the Chair that she could nominate only one candidate, whereupon the delegate nominated her "first choice," which was Keisha Richardson. Furthermore, both the Monitor and the Adjudications Officer stated that only three candidates total could have been nominated by the delegate in any case, since there only were three openings for the office of Vice President on the upcoming ballot. It is undisputed that no effort was made at any time to renominate Bell, and she was not nominated by any other delegate. Moreover, no delegate rose during the convention to dispute the rejection of the initial nomination.

B.

The procedure used by the Monitor to address Bell's complaint is well established. On December 14, 2020, the United States filed its complaint against the UAW under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.* The Union represents hundreds of thousands of non-managerial workers in automobile manufacturing and other industries throughout Michigan, the United States, and the world. The UAW's International Executive Board is the managing body of the UAW, which is comprised of a president, secretary, three vice presidents, and eight regional directors. The board governs the union's affairs by, among other things, setting policy, imposing discipline, approving or suspending by-laws of local bargaining units, and interpreting and enforcing the UAW's constitution. UAW locals, aided and overseen by the umbrella authority of the international union, negotiate collective bargaining agreements on behalf of members in workplaces around the country and the world, according to local circumstances.

- 4 -

Contemporaneously with the complaint, the parties jointly filed a motion for entry of a consent decree embodying terms of an agreement that they had reached before the suit was filed, which provided for injunctive restrictions against the Union and its officers, and also for the appointment of a Monitor and other officials to keep tabs on the union's activities and report on the defendant's compliance with the consent decree and applicable federal laws.  On January 29, 2021, after it had received no opposition to the joint motion, the Court entered the proposed consent decree.  *See* ECF No. 10.

One main feature of the decree required the Union to hold a referendum by secret ballot of all members to address the question whether the Union should change the method of electing IEB officers to a "one-member, one-vote" direct election rather than having officers selected by a convention of delegates.  The referendum was held, and the Union's members voted 63% in favor of changing the mode of election for officers.  On January 31, 2022, the Court issued an order granting a joint unopposed motion by the parties to approve the referendum results.  The consent decree further provided that, after the member referendum considering the change in election modes, "the Monitor . . . shall ensure that the election of the members of the IEB of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and this decree."  Consent Decree, ECF No. 10, PageID.126.

The Consent Decree also provided for the appointment of a Monitor to oversee the Union's compliance with its terms.  On May 12, 2021, the Court granted an unopposed joint motion to install Neil M. Barofsky in that office.  Among other things, the Consent Decree empowered the Monitor to review the conduct of officers and principal employees of the Union, and to oversee the elections of officers.  The Consent Decree also provided for the appointment of an Adjudications Officer, who is empowered to review actions by the Monitor upon timely challenge

by any interested party.  On September 10, 2021, the Court granted the government's unopposed motion to appoint Gil Soffer as the Adjudications Officer.

The Consent Decree further stated that any "person disallowed from running for International Office by the Monitor may appeal the Monitor's action to the Adjudications Officer by filing a written appeal within seven days of such action by the Monitor," and that the disappointed candidate thereafter "may appeal to the Court the Monitor's or the Adjudications Officer's decision regarding his or her candidacy within 14 days of the decision being appealed." Consent Decree ¶¶ 47-48, PageID.127.  "The Monitor's or Adjudications Officer's decisions . . . shall be reviewed by this Court under the substantial evidence standard set forth in 5 U.S.C. § 706(2)(E)," a section of the Administrative Procedures Act (APA).  *Id.* ¶ 48, PageID.128.  That statute specifies that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of [a challenged action] [and] shall . . . hold unlawful and set aside [any] action, findings, and conclusions found to be . . . unsupported by substantial evidence."  5 U.S.C. § 706(2)(E).  "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party."  *Id.* § 706.

Bell submitted an election protest to the Monitor, which was denied by him in a written decision issued on July 9, 2026.  *See* ECF No. 164-3.  Bell filed her motion for a preliminary injunction on the same date.  She subsequently submitted an appeal to the Adjudications Officer, who issued a decision affirming the Monitor's ruling on July 24, 2026.  *See* ECF No. 175.  The Monitor filed a response opposing Bell's motion on the merits.  The UAW and the government filed responses posing merely procedural objections based on Bell's purported failure to timely

perfect her appeal to the Adjudications Officer.  Bell then filed three other motions essentially seeking the same relief.

II.

In considering whether to grant a motion for preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)).  Although courts describe the inquiry as a balancing test, *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), demonstration of a strong likelihood of success generally is a predominating factor, *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) ("the likelihood of success on the merits often will be the determinative factor.").

Ms. Bell's filings present little in the way of factual grounds or developed legal arguments. She asserts without elaboration that the Monitor's decision contravened the Consent Decree, which she says requires the Monitor to ensure that Union officials are selected by way of "free and fair elections." *See* Consent Decree § 45, ECF No. 10, PageID.126 ("[T]he Monitor or his or her representative shall ensure that the election of the members of the IEB of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and this decree."); *see also id.* § 13, PageID.112 ("[T]he Monitor, in consultation with the UAW, shall develop all election rules and methods for the election of members of the IEB during the period of oversight. Without regard to the method of election — delegate election or direct election —

- 7 -

nothing in this consent decree will eliminate or limit a union member's right to seek relief from the Secretary of Labor and OLMS pursuant to the LMRDA, 29 U.S.C. § 401, *et seq.*").

Both the Monitor and the Adjudications Officer issued written decisions in which they held that Bell was not nominated properly by any delegate during the nominating convention, and that the Chair's interpretation of Robert's Rules by which the initial nomination was refused was a reasonable construction of the rules governing floor procedure for nominations. The Union and the government raised collateral procedural objections, which are moot in light of the fact that the Adjudications Officer now has adjudicated Bell's appeal and rejected it on the merits.

The rule of decision embodied in the consent decree incorporates the deferential standard for review of executive agency decisions applied by federal courts under the APA. Under that familiar framework, the Court "must hold unlawful and set aside [any] findings, or conclusions that are . . . 'unsupported by substantial evidence.'" *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 310, 2022 WL 2081430 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023). "[S]ubstantial evidence [] is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* (quotations omitted). "When reviewing a union's interpretation of its own constitution, [the Court must] defer to that interpretation unless it is plainly unreasonable." *Conille v. Council 93, AFSCME*, 973 F.3d 1, 12 (1st Cir. 2020). In that undertaking, the Court "begin[s] with the constitution's text." *Ibid.* Acknowledging the highly deferential premise of judicial review in proceedings challenging a labor union's interpretation of its own constitution, the Sixth Circuit has "[o]n several occasions . . . stated [its] reluctance to substitute [the courts'] judgment for that of union officials in the interpretation of the union's constitution and [its] willingness to interfere only where the [union's] interpretation is not fair or reasonable." *Pearson v. SEIU Healthcare*

*Michigan*, 501 F. App'x 461, 467 (6th Cir. 2012) (citing *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971); *Babler v. Futhey*, 618 F.3d 514, 522-23 (6th Cir. 2010)).  And "[t]he Department of Labor's policy under the LMRDA is that '[t]he interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable.'"  *Riley v. Portland Maine Area Loc. No. 458 Am. Postal Workers Union AFL-CIO*, No. 15-37, 2016 WL 5816989, at *9 (D. Me. Oct. 5, 2016) (quoting 29 C.F.R. § 452.3).  As the First Circuit put it: "Conscious of the value of non-interference, we align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions. [Accordingly,] we will uphold the [union's] interpretation of its own governance documents unless that interpretation is patently unreasonable."  *Loc. No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am.*, 920 F.2d 1047, 1052 (1st Cir. 1990).

Analysis of Bell's motion for injunctive relief begins and ends with the merits of her legal position.  Courts describe the preliminary injunction analysis as a balancing test, *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), and it is often said that demonstration of a strong likelihood of success generally is a predominating factor, *Wilson*, 961 F.3d at 844; *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) ("the likelihood of success on the merits often will be the determinative factor.").  Furthermore, "[a] preliminary injunction is an extraordinary remedy," warranted only when the movant demonstrates that the circumstances clearly demand it.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  Bell has not justified such extraordinary relief here.

The Monitor is vested with the authority to prescribed election rules, and to observe Union elections and correct improprieties observed by him or brought to his attention by UAW members. It is undisputed that the Monitor promulgated election rules in advance of the recent nominating convention, and during the convention Robert's Rules of Order were adopted by the delegates to govern the proceedings. Bell has not raised any challenge to the propriety of the rules as promulgated by the Monitor, or the procedural framework which was adopted to govern the live nominations. Instead, she argues only that the refusal to include her name on the ballot was improper because she was "duly nominated" by a delegate. But the undisputed record of the proceeding shows otherwise. Moreover, as the Monitor and the Adjudications Officer observed, the delegate who tried to nominate Bell for the Office of Vice President initially proposed the names of four persons for an office in which only three vacancies were open.

During his investigation, the Monitor interviewed witnesses including the Chair of the convention, the Parliamentarian, and the delegate who tried to nominate Bell. The Chair stated that he believed the refusal of the nomination was correct on the ground that only one person could be nominated at a time by each delegate; although he conceded that his response may have been construed to mean that only one person could be nominated in total by each delegate. *See* Adjudications Officer's Decision, ECF No. 175, PageID.3712. However, the Chair pointed out that any delegate could at any time have raised a "point of order" to clarify the ruling; but that was not done. *Ibid.* (citing Robert's Rules § 6-17). The Chair also stated that delegates had received training before the convention, which included informing them that they could ask questions about the procedure while they were at the microphone, and he said that if any delegate who had nominated less than three persons for the office of Vice President had risen again to nominate one or two more, then he would have accepted the additional nominations. *Ibid.*

- 10 -

Delegate Amber Love also was interviewed by the Monitor, and she said that it was her initial intent to nominate three people for the office of Vice President, but she added Bell's name as a fourth because Bell asked Love during the convention to nominate her as well. *Id.* at PageID.3712. Love understood the Chair's response to mean she only could nominate one person in total, and so she nominated her first choice, Makisha [a/k/a Keisha] Richardson. Love followed up by saying that, even if she had understood that she was allowed to nominate three people, she would have nominated only the first three names she proposed, not including Bell.

Bell also solicited a nomination from a second delegate, Tamika Foster. Foster was interviewed and told the Monitor that, after hearing the response to Love's nomination, she also thought she only could nominate one person for Vice President, and so she named her first choice only, which was not Bell. However, Foster stated that she understood that she could have sought clarification of the nominating rules from the floor at any time, and she said that it was "on her" for not doing so. Foster also stated that she was informed on the following day that she still could nominate Bell, but she "never took any action to do so." *Id.* at PageID.3713.

The Monitor concluded that, even if the Chair's response was an "incomplete" construction of the nominating rules, it nevertheless was correct, and, moreover, if clarification of the rule had been sought or obtained, the result would not have changed because Love affirmed that, if she had a clearer understanding of the rules, she would not have nominated Bell in any event. Moreover, the second delegate attested that she could have sought clarification of the nominating rules and was told that she could nominate Bell on the following day, but she admitted that she made no effort to pursue either of those options while the floor still was open for nominations.

In light of the above undisputed record of the proceedings and unrebutted witness statements, the Monitor's decision is supported by substantial evidence demonstrating that the

nominations were not accompanied by any consequential violation of either the Election Rules or the UAW Constitution, and that there was nothing improper about Bell's exclusion from the ballot on the ground that she was not nominated properly by any delegate while the floor was open.  Bell has not presented any contrary evidence or cited any legal authority calling those conclusions into question.

III.

Because the decisions of the Monitor and the Adjudications Officer were supported by substantial evidence within the meaning of the Administrative Procedures Act and the Consent Decree, Bell has not demonstrated any likelihood of prevailing on the merits of any claim that the Monitor's oversight of the nominating process violated the terms of the Consent Decree or applicable federal laws or regulations.  Therefore, Bell has not established an entitlement to injunctive relief.

Accordingly, it is **ORDERED** that Sharon Bell's emergency motion for a preliminary injunction, her emergency motion for a temporary restraining order, and her motions to enforce the Consent Decree (ECF Nos. 161, 166, 167, 170) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 28, 2026